# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DAVID AND MARIANNE RIVERA,<br> individually and on behalf of<br> all those similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON MUTUAL, FSB,<br>COUNTRYWIDE HOME LOANS,<br>SHAPIRO & DIAZ, JOHN DOE<br>SERVICERS 1-100 AND JOHN DOE<br>LAW FIRMS 1-100<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:09-cv-00021-JEI-JS |

## DEFENDANT COUNTRYWIDE HOME LOANS, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Thomas M. Hefferon
Scott B. Nardi
Eric I. Goldberg
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC  20001

Martin C. Bryce, Jr.
Mariah Murphy
BALLARD SPAHR ANDREWS &
INGERSOLL, LLP
Plaza 1000 - Suite 500 Main Street
Voorhees, NJ  08043

Counsel to Defendant
Countrywide Home Loans, Inc.

## <u>Table of Contents</u>

<u>Page</u>

<u>SUMMARY OF ALLEGATIONS</u> ..................................................................4

<u>STANDARD OF REVIEW</u> .......................................................................9

<u>ARGUMENT</u> ..........................................................................................10

I.   **THE RIVERAS CANNOT DISPUTE IN THIS COURT FEES AND COSTS LEVIED DURING THEIR FORECLOSURE OR BANKRUPTCY CASES.** ...............................................................10

    A.   The Entire Controversy Doctrine Requires Dismissal Of The Riveras' Claims Concerning Foreclosure Related Fees And Costs. ...............................................................................11

    B.   The *Rooker-Feldman* Doctrine Prevents Federal Court Review of a State Court Foreclosure Judgment, and So Requires Dismissal of the Foreclosure Related Claims. ..................15

    C.   The Riveras Are Judicially Estopped From Raising Their Claims Because They Chose to Hide Them in Their Bankruptcy Filings. ............................................................................17

    D.   The Riveras' Claims Remain Property Of The Bankruptcy Trustee, Who Alone Has Standing To Pursue Them. .........................20

II.  **EACH INDIVIDUAL COUNT ALSO DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.** .......................22

    Aside from the above bars to recovery, each individual count alleged by the Riveras also fails to state a claim, and each must be dismissed. ...........................................................................22

    A.   The Riveras Do Not Allege Sufficient Facts To Support Their Contract-Related Claims. ...................................................22

        1.   **Plaintiffs Do Not Plead the Elements of Breach of Contract.** ....................................................................22

        2.   **The Riveras Have Not Pled A Negligence Claim.** ...............26

        3.   **The Riveras' Breach of Duty of Good Faith And Fair Dealing Claim Fails To State A Claim.** .................................28

        4.   **The Riveras Cannot State A Claim For Unjust Enrichment.** ..................................................................29

    B.   The Riveras Do Not State A Claim Under the New Jersey Consumer Fraud Act. .........................................................30

i

        **1.**    **The Riveras Do Not Plead Violations Of The Predicate Acts.** .........................................................................31

        **2.**    **The Riveras Do Not Plead Facts Sufficient To Establish The Remaining Elements Of The CFA Causes of Action.** ..................................................................34

    C.    The Riveras Have No Claim Under The Truth In Consumer Contract, Warranty & Notice Act. ......................................36

**III.**    **THE VOLUNTARY PAYMENT DOCTRINE BARS THE RIVERAS' CLAIMS.** ...................................................................37

**CONCLUSION**.................................................................................37

# TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE(S)**

*525 Main St. Corp. v. Eagle Roofing Co.*, 168 A.2d 33 (N.J. 1961) ......................27

*Akuma v. U.S. Bank, N.C.*, Civ. A. No. 08-3697 (NLH),
   2009 WL 151689 (D.N.J. Jan. 20, 2009)...................................................... 16-17

*Autos, Inc. v. Gowin*, 244 Fed. App'x 885 (10th Cir. 2007)............................. 19-20

*Ayres-Fountain v. Eastern Savs. Bank*, 153 Fed. App'x 91 (3d Cir. 2005) ...........17

*Barows v. Chase Manhattan Mortgage Corp.*, 465 F.Supp.2d 347
   (D.N.J. 2006)........................................................................................................36

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................... *passim.*

*Bosland v. Warnock Dodge, Inc.*, 2009 WL 414336 (N.J. Feb. 19, 2009)..............34

*Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civ. A. No. 06-5391,
   2007 WL 2406980 (D.N.J. Aug. 20, 2007) ........................................................27

*Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332
   (N.J. Super. Ct. App. Div. 1966) .........................................................................29

*Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*,
   662 A.2d 509 (N.J. 1995) ...................................................................................15

*Cohen v. Fair Lawn Dairies, Inc.,* 206 A.2d 585
   (N.J. Super. Ct. App. Div. 1965) ........................................................................31

*D.C. Ct. of Appeals v. Feldman,* 460 U.S. 462 (1983) ...........................................16

*DiTrolio v. Antiles*, 662 A.2d 494 (N.J. 1995)............................................12, 13, 14

*Donaldson v. Bernstein*, 104 F.3d 547 (3d Cir. 1997)............................................19

*Donato v. Metro. Life Ins. Co.,* 230 B.R. 418 (N.D. Cal.1999)........................ 18-19

*F. Bender, Inc. v. Jos. L. Muscarelle, Inc.*, 700 A.2d 374
   (N.J. Super. Ct. App. Div. 1997) ........................................................................29

*Fleming Cos. Inc. v. Thriftway Medford Lakes, Inc.*,
  913 F. Supp. 837 (D.N.J. 1995) ..........................................................................28

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ....................................23, 35

*Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01-cv-2272 (GBD),
  2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) ............................................................23

*Hutchins v. I.R.S.*, 67 F.3d 40 (3d Cir. 1995) ........................................................22

*In re 865 Centennial Ave. Assocs. L.P.*, 200 B.R. 800
  (Bankr. D.N.J. 1996)............................................................................................13

*In re Banks*, 223 Fed. App'x 149 (3d Cir. 2007)............................................ 20-21

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)..............24

*In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999)........................................18

*In re Crispino*, 160 B.R. 749 (Bankr. D.N.J. 1993)........................................ 13-14

*In re Lewison Bros.*, 162 B.R. 974 (Bankr. D.N.J. 1993)........................................13

*In re O'Dowd*, 233 F.3d 197 (3d Cir. 2000) ..........................................................20

*In re Resorts Int'l, Inc.*, 181 F.3d 505 (3d Cir. 1999)..............................................37

*In re Segerstrom*, 247 F.3d 218 (5th Cir. 2001) ....................................................18

*In re Slack*, 290 B.R. 282 (Bankr. D.N.J. 2003) ....................................................21

*In re Stamm*, 22 F.3d 216 (5th Cir. 2000)..............................................................21

*In re Truong*, No. 03-40283, 2006 WL 4452984
  (Bankr. D.N.J. May 3, 2006) ..............................................................................22

*Int'l Flavors & Fragrances, Inc. v. McCormick & Co.*,
  575 F.Supp.2d 654 (D.N.J. 2008)........................................................................26

*Integrated Solutions, Inc. v. Service Support Specialties, Inc.*,
  124 F.3d 487 (3d Cir. 1997) ................................................................................20

*Knapper v. Bankers Tr. Co.*, 407 F.3d 573 (3d Cir. 2005) ....................................16

*Krank v. Utica Mut. Ins. Co.*, 109 B.R. 668 (E.D. Pa. 1990) ................................22

*LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563
(N.J. Super. Ct. Ch. Div. Mar. 3, 2006)..............................................................13

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004)..........................................24

*Margulies v. Chase Manhattan Mortg. Corp.*, 2005 WL 2923580
(N.J. Super. Ct. App. Div. Nov. 7, 2005) ..................................................... 27-28

*Marran v. Marran,* 376 F.3d 143 (3d Cir. 2004)..................................................16

*McKinney v. Waterman S.S. Corp.*, 925 F.2d 1 (1st Cir. 1991) ...........................6

*Messner v. County of Union*, 167 A.2d 897 (N.J. 1961) ........................................37

*Moser v. Milner Hotels, Inc.*, 78 A.2d 393 (N.J. 1951)..........................................29

*Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 662 A.2d 523 (N.J. 1995)... 12, 14-15

*Nappier v. PriceWaterhouse Coopers LLP*, 227 F. Supp. 2d 263
(D.N.J. 2002).....................................................................................................10

*New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174
(N.J. Super. Ct. App. Div. 2003) ........................................................................35

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
267 F.3d 340 (3d Cir. 2001) ..............................................................................20

*Olds v. Donnelly*, 696 A.2d 633 (N.J. 1997) ...............................................12, 15

*Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414
(3d Cir. 1988)....................................................................................................19

*Paszek v. Froehlich*, Civ. No. 08-455 (WJM), 2008 WL 3887610
(D.N.J. Aug. 18, 2008)......................................................................................17

*Peduto v. City of N. Wildwood*, 878 F.2d 725 (3d Cir. 1989).................................11

*Petrillo v. Bachenberg*, 655 A.2d 1354 (N.J. 1995)..............................................27

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ...................... *passim.*

*Prevratil v. Mohr*, 678 A.2d 243 (N.J. 1996) .........................................................11

*Public Serv. Enter. Group, Inc. v. Phila. Elec. Co.*,

722 F. Supp. 184 (D.N.J. 1989) ........................................................................26

*Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923) ....................................................16

*Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*,
  81 F.3d 355 (3d Cir. 1996) .........................................................................17

*Ryno, Inc. v. First Nat'l Bank of S. Jersey*, 506 A.2d 762
  (N.J. Super. Ct. App. Div. 1986) ................................................................13

*Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268 (N.J. 2002) ..................................27

*Smith v. Red Top Taxicab Corp.*, 168 A. 796 (N.J. 1933) ..................................11

*Sokoloff v. General Nutrition Cos.*, No. Civ. 00-641 (JBS),
  2001 WL 536072 (D.N.J. May 21, 2001) ....................................................31

*Stevenson v. Carroll*, 495 F.3d 62 (3d Cir. 2007) ..........................................10, 31

*United Jersey Bank v. Kensey*, 704 A.2d 38 (N.J. Super. Ct. App. Div. 1997) ......27

*United States v. Philip Morris, Inc.*, 263 F. Supp. 2d 72 (D.D.C. 2003) ...............30

*Vanguard Sav. & Loan Ass'n v. Banks*, Civ. No. 93-CV-4627,
  1995 WL 555871 (E.D. Pa. Sept. 18, 1995) ...............................................24

*VW Credit, Inc. v. Coast Auto. Group, Ltd.,* 2005 WL 3750752
  (N.J. Super. Ct. App. Div. Feb. 14, 2006) ....................................................13

*Whittingham v. Am. Mortgage Elec. Registration Serv., Inc.*,
  Civ. No. 06-3016 (RBK), 2007 WL 1456196 (D.N.J. May 26, 2007)...............30

*Woods Corp. Assocs. v. Signet Star Holdings, Inc.*, 910 F. Supp. 1019
  (D.N.J. 1995)...........................................................................................28

*Woodward-Clyde Consultants v. Chem. & Pollution Scis., Inc.*
  523 A.2d 131 (N.J. 1987) ..........................................................................11

## RULES AND REGULATIONS:

Fed. R. Civ. P. 12(b)(6).............................................................................. 9

New Jersey Court Rule 4:30A ......................................................................11

New Jersey Court Rule 4:64-5 ................................................................13

New Jersey Court Rule 4:42-9(a)(4)........................................... *passim.*

New Jersey Court Rule 4:42-10(a) .............................................. *passim.*

## **STATUTES:**

11 U.S.C. § 348(a) ........................................................................21

11 U.S.C. § 521(a)(1)......................................................................17

11 U.S.C. § 541(a)(1).................................................................18, 20

11 U.S.C. § 1307 ...........................................................................18

Federal Trade Commission Act:

    15 U.S.C. § 45(a) ....................................................... *passim.*

N.J. Const. Art. IV, § 3 (1947)....................................................11

N.J. Const. Art. IV, § 14 (1947)..................................................11

New Jersey Fair Foreclosure Act:

    N.J. Stat. Ann. § 2A:50-57(b)(3) ........................................3, 30, 32

N.J. Stat. Ann. § 22A:2-10......................................................33

New Jersey Consumer Fraud Act:

    N.J. Stat. Ann. § 56:8-1, *et seq.* ................................ *passim.*

New Jersey Truth In Consumer Contract, Warranty & Notice Act:

    N.J. Stat. Ann. § 56:12-15 ............................................36

    N.J. Stat. Ann. § 56:12-18 .............................................4

This challenge to foreclosure and bankruptcy related fees charged to Plaintiffs David and Marianne Rivera ("Riveras") after their mortgage company incurred those costs in response to the Riveras' default on their home loan should be dismissed for three reasons.  First, the Riveras' suit is barred by, among other things, their failure to raise these claims in their previous foreclosure and bankruptcy proceedings.  Furthermore, even if not prohibited from asserting them, the Riveras' allegations do not state a claim for relief.  Third, the voluntary payment doctrine applies to the fees and costs at issue, such that the Riveras cannot challenge them here.

The Riveras may not sue in this Court to question the foreclosure and bankruptcy related fees at issue because any such challenge should have been brought earlier and elsewhere.  Under New Jersey's entire controversy doctrine, the Riveras were obligated to bring any claims germane to foreclosure as part of the foreclosure proceeding against their home, which was resolved in 2007.  The Riveras did not question the fees in that lawsuit, and the entire controversy doctrine bars them from challenging them here.  Similarly, the *Rooker-Feldman* doctrine prohibits the Riveras from raising here issues that were effectively dealt with in the foreclosure.

Plaintiffs independently failed to raise any dispute concerning those fees as part of their subsequent bankruptcy cases, and so they are judicially estopped from

assembling the fee disputes now.  The same holds true for the aspects of this suit that concern fees and costs incurred as part of those bankruptcies.  Independently, Plaintiffs lack standing to bring any lawsuit to challenge the subject fees, because any causes of action there may be (and, as noted below, there is nothing here to complain about) remain the property of their bankruptcy estate and the standing to bring suit lies with the bankruptcy trustee.

Each of these principles serves the laudatory goal of requiring litigants such as the Riveras to bring any and all disputes before the trial court that is tasked with resolution of their creditor's rights—whether a Superior Court handling a foreclosure or a federal bankruptcy judge.  The current lawsuit seeks to undermine these sensible requirements, and draws this Court into addressing aspects of the lawsuits and proceedings that should have settled long ago the issues the Riveras now raise.  This is clearly improper, as well as inefficient and unfair to all of the defendants.

Separately, each individual count fails to state a claim and warrants dismissal.  The common law counts, Counts I-IV, are each insufficient.  Plaintiffs' central breach of contract claim in Count I fails for lack of specificity and because the contract itself plainly obligates the Riveras to pay for fees and costs that their default caused (such as those now at issue).  Plaintiffs' claim in Count II for breach of the duty of good faith and fair dealing must be dismissed because the duty, if

applied as they envision, would violate the express terms of their mortgage. The negligence claim in Count III must be dismissed because it is inconsistent with the well-established economic loss rule and because a creditor has no extra-contractual, tort-like duty as to the issue of how the creditor seeks reimbursement for fees owed by the debtor. And the unjust enrichment cause of action in Count IV must be dismissed because there is a contract that addresses the fees issue.

The statutory claims in Counts V – VIII, all based on New Jersey's Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1, *et seq*., also lack merit. Count V alleges that the CFA was violated because the alleged conduct runs afoul of the Federal Trade Commission Act, 15 U.S.C. § 45(a) ("FTC Act"), but Plaintiffs do not allege facts sufficient to establish a violation of the FTC Act (for which there is no private right of action in any event). Count VI seeks a similar bootstrap form of relief, arguing that a violation of the New Jersey's Fair Foreclosure Act ("FFA"), N.J. Stat. Ann. § 2A:50-57(b)(3), violates the CFA, but the fees at issue do not, in fact, breach the FFA. Likewise, the attempt through Count VII to base the CFA claim on an asserted violation of New Jersey Court Rules 4:42-9(a)(4) and 4:24-10(a) (which deal with foreclosure fees and costs) is flatly inconsistent with the Rules themselves, as the Rules expressly permit the fees in the amounts collected. Aside from each of these failings, Plaintiffs fail to plead the other elements of the CFA claim. The final statutory claim, an alleged breach

of New Jersey's Truth In Consumer Contract, Warranty & Notice Act

("TCCWNA"), N.J. Stat. Ann. § 56:12-18, is easily disposed of, as that statute is

utterly inapplicable to foreclosure and bankruptcy related conduct.

Finally, because the Riveras' voluntarily agreed to pay the fees and costs at

issue, and because those sums were disclosed to the Riveras prior to payment, New

Jersey's voluntary payment doctrine bars the Riveras from now bringing a claim to

litigate the propriety of those fees.

For all of these reasons, this lawsuit should be dismissed.

## SUMMARY OF ALLEGATIONS

This suit seeks to recover attorneys' fees and other costs that the Riveras

were charged and paid in connection with their 2002 foreclosure case and 2004

bankruptcy case.  Am. Compl. ¶ 24.  The Riveras allege that they paid these fees in

July 2007.  *Id.* ¶ 22.  They have named as defendants Washington Mutual Bank

("Washington Mutual"), and Shapiro & Diaz, the law firm that initiated the

foreclosure proceeding on behalf of Washington Mutual and later filed a proof of

claim on behalf of Washington Mutual in the Riveras' bankruptcy.  *Id.* ¶¶ 3-4, 15,

21.  Countrywide is also a defendant, having succeeded Washington Mutual as the

loan servicer.  *See id.* ¶¶ 2, 44.

The Riveras have already been subject to three separate legal actions

involving the failure to pay the sums due (including the fees and costs) on their

mortgage loan.  The first of these actions, a foreclosure, started after Plaintiffs stopped making their monthly mortgage payments.  *Id.* ¶ 15.  After the Riveras defaulted on their obligations under the mortgage, Shapiro & Diaz filed a foreclosure proceeding on behalf of Washington Mutual, as successor to Fleet Mortgage Corporation.[1]  *Id.* ¶ 15; Am. Compl. Ex. A.  The judgment entered by the state court in the foreclosure case on June 4, 2002 included attorneys' fees of $1,597.42, (as well as other fees and costs, as part of a total judgment of $144,742.42.  *Id.* ¶ 16; Am. Compl. Ex. A.

Plaintiffs now allege that they were overcharged for (1) attorneys' fees and costs; (2) "the taxable cost for searches;" (3) recording fees; (4) service of process; and, (5) "obtaining a certificate of regularity" in connection with the foreclosure. *See id.* ¶ 24.  Plaintiffs do not specify what portion, if any, of the total foreclosure judgment forms the basis of their claims.

Since the foreclosure began in 2002, the Riveras twice filed for bankruptcy relief.  The first case, not mentioned in the Amended Complaint, began when the Riveras initiated a Chapter 13 bankruptcy on July 13, 2002.  Bankr. No. 02-16637-

---

[1]    Plaintiffs make no allegations about Fleet.  Based on their allegations concerning the loan at issue, Fleet and/or Washington Mutual had acquired or began servicing the loan Plaintiffs took out on or about January 31, 2000 from Shelter Mortgage, LLC d/b/a Guaranty Northeast Mortgage.  Am. Compl. ¶ 14.

JHW (*See* Docket, Ex. C.)[2]  Represented by a lawyer, and undoubtedly aware the foreclosure case had been filed and matured into the above-referenced judgment order, the Riveras disclosed no unliquidated or contingent claims on the schedule of assets filed with their petition.  (*See* Schedule of Assets, Ex. D.)  In due course, Washington Mutual filed a proof of claim in that bankruptcy listing as sums owing, among other items, $1550 in "foreclosure fees."  (*See* Am. Proof of Claim, Ex. E.)[3] The Riveras and their counsel did not object to the proof of claim submitted by Washington Mutual.  (*See* Docket, Ex. C.)  Months later, in March 2003, Washington Mutual filed a motion for relief from the automatic stay, seeking, among other forms of relief, an award of "counsel fees and other costs."  (*See* Motion, Ex. F.)  A consent order, in which the Riveras agreed to pay delinquent post-petition payments and <u>attorneys' fees</u> and <u>court costs</u>, resolved that motion. (*See* Consent Order, Ex. G.)  Ultimately, on March 19, 2004, the Bankruptcy Court dismissed the Riveras' first bankruptcy on a motion by the Trustee because the

---

[2]   All exhibits to this memorandum are attached as exhibits to the Certification of Mariah Murphy.  In considering this Motion to Dismiss, the Court may take judicial notice of documents filed in the District's bankruptcy court. *McKinney v. Waterman S.S. Corp.*, 925 F.2d 1, 5 (1st Cir. 1991) (allowing for judicial notice in district court of pleadings filed in plaintiff's bankruptcy proceedings).

[3]   Washington Mutual's Amended Proof of Claim reflected a reduction in the "accrued late charges" included in the arrearage.  It was otherwise identical to the original Proof of Claim in all relevant respects.

Riveras "failed to make a regular Chapter 13 Plan payment to the Trustee." (*See* Motion, Ex. H, and Order of Dismissal, Ex. I).

Plaintiffs filed a second Chapter 13 bankruptcy shortly after the dismissal of their first. Am. Compl. ¶ 18; (Docket, Ex. J). Again, the Riveras, represented by counsel, did not list any contingent or unliquidated claims in their asset schedules. (*See* Schedule of Assets, Ex. K.) Shapiro & Diaz filed a proof of claim on behalf of Washington Mutual in the second bankruptcy, seeking, *inter alia*, payment of the "foreclosure fees" of $1550. Am. Compl. ¶ 19, Ex. C. That sum was included in a total attorneys' fees of $1,925, which was in addition to prior foreclosure costs of $1,898.44, arrearages owed, and a total principal balance of $130,289.99 all listed on Washington Mutual's proof of claim. *Id.* ¶¶ 19, 21 (citing Am. Compl. Ex. C). Plaintiffs allege that they were overcharged for legal fees and costs through Washington Mutual's proof of claim filed in the second bankruptcy. *Id.* ¶ 24. They do not specify, however, which fees and costs on the proof of claim are being challenged.

In the second bankruptcy, like the first, Washington Mutual filed a motion for relief from the automatic stay because the Riveras failed to make certain payments. That motion sought "counsel fees and other costs." (*See* Motion, Ex. L.) Like the motion in their first bankruptcy, the Riveras ultimately settled the

7

motion by an agreement to make past due payments and to pay attorneys' fees and costs.  (Consent Order, Ex. M.)

The Riveras paid the fees at issue, in part, through their Chapter 13 bankruptcy plans, as secured claims evidenced by their proofs of claim.  Then, in July 2007, they paid the balance of the fees and costs when they refinanced their mortgage loan.  *Id.* ¶ 22.  The Riveras' state court foreclosure action was dismissed after they paid off their loan.  *Id.* ¶¶ 22-23.[4]

All of the Riveras' claims are premised on their contention that they were charged—and that they paid—improper sums that the Defendants charged as a result of the Riveras' foreclosure and their bankruptcy cases.  *Id.* ¶ 24. Specifically, the Riveras allege that Defendants "engaged in a uniform scheme and course of conduct . . . by charging and collecting various fees not authorized by the loan documents or applicable law."  *Id.* ¶ 24.  Such fees allegedly include attorneys' fees, sheriff's costs, recording fees, interest and other charges.  *Id.*  The fees at issue are precisely those listed in Am. Compl. Exhibits A and B (Final

---

[4]   While not alleged in the Amended Complaint, Plaintiffs converted their Chapter 13 bankruptcy to a Chapter 7 bankruptcy on December 12, 2007, after they had paid off their mortgage loan and paid all of the fees and costs at issue here.  (*See* Order Granting Motion to Convert to Chapter 7*, Ex. N). The Riveras' bankruptcy was discharged on March 14, 2008.  (*See* Discharge, Ex. O.)

Judgment For Foreclosure) and C (the Proof of Claim) to the Amended Complaint, as well as the proof of claim filed by Washington Mutual in the first bankruptcy.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Under *Twombly*, a plaintiff's blanket assertion of an entitlement to relief is not enough to withstand a Rule 12(b)(6) motion to dismiss. *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). Rather, the complaint must contain enough factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (quoting *Twombly*, 127 S. Ct. at 1964). A complaint containing mostly "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice to overcome a motion to dismiss. *Twombly*, 127 S.Ct. at 1964. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted).

In addition, on a Rule 12(b)(6) motion to dismiss, the Court need not accept conclusory recitations of law in determining whether the pleading is sufficient to

state a cause of action. *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007) (plaintiffs have an obligation to provide grounds for their entitlement to relief by presenting factual allegations sufficient to raise their right to relief above a speculative level); *Nappier v. PriceWaterhouse Coopers LLP*, 227 F. Supp. 2d 263, 272 (D.N.J. 2002); *see also Twombly*, 127 S. Ct. at 1959. Rather, "[a]fter *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Phillips*, 515 F.3d at 233 (quoting *Twombly*, 127 S. Ct. at 1969 n.8).

## ARGUMENT

## I. THE RIVERAS CANNOT DISPUTE IN THIS COURT FEES AND COSTS LEVIED DURING THEIR FORECLOSURE OR BANKRUPTCY CASES.

A number of principles absolutely bar the Riveras from suing in this Court about things that allegedly happened to them in other courts and which they could have—and ought to have—raised in those other courts. First, New Jersey's entire controversy doctrine forbids the Riveras from litigating causes of action about the foreclosure fees that they neglected to raise in the state court foreclosure case. Second, the *Rooker-Feldman* doctrine denies this Court jurisdiction to reconsider the claims concerning the propriety of fees and costs approved by the state foreclosure court. Both the foreclosure and the bankruptcy fee challenges are also unavailing as a result of two independent, bankruptcy related doctrines—judicial

estoppel bars the Riveras from asserting the claims because they never disclosed them in their bankruptcy cases and, in any event, only their bankruptcy trustee has standing to sue about them now.  Each doctrine is discussed in detail below.

### A.    The Entire Controversy Doctrine Requires Dismissal Of The Riveras' Claims Concerning Foreclosure Related Fees And Costs.

Under New Jersey's entire controversy doctrine, all parties to a lawsuit are absolutely required to raise all matters and claims that they have that are a related part of the controversy, and failure to do so prevents the party from raising those matters or claims in a subsequent proceeding.  *Peduto v. City of N. Wildwood*, 878 F.2d 725, 727 (3d Cir. 1989) (citing *Woodward-Clyde Consultants v. Chem. & Pollution Scis., Inc.*, 523 A.2d 131, 135 (N.J. 1987)); *Prevratil v. Mohr*, 678 A.2d 243, 246 (N.J. 1996) (the entire controversy doctrine "requires whenever possible all phases of a legal dispute to be adjudicated in one action.").[5]  The doctrine required the Riveras to contest the fees and charges at issue, if ever, during their

---

[5]    In New Jersey, "no principle of law is more firmly established than that a single or entire cause of action cannot be subdivided into several claims, and separate actions maintained thereon."  *Smith v. Red Top Taxicab Corp.*, 168 A. 796, 797 (N.J. 1933).  The entire controversy doctrine is so embedded in the New Jersey legal system that it is contained in the 1947 New Jersey Constitution (*see* N.J. Const. Art. IV, §§ 3, 14 ("[L]egal and equitable relief should be granted in any cause so that all matters in controversy between the parties may be completely determined")) and codified as New Jersey Court Rule 4:30A, which provides that:  "Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the conclusion of the omitted claims to the extent required by the entire controversy doctrine…."

foreclosure, for that state court proceeding dealt directly with the question of what amounts were due under the Riveras' mortgage loan.  Moreover, the subject fees and costs were specifically dealt with in the foreclosure judgment, leaving no room to doubt that they were part of the 'entire controversy.'  As the Riveras chose not to challenge any fees and costs imposed during their foreclosure case, the entire controversy doctrine prevents them from doing so now.

The entire controversy doctrine serves important goals, and those goals are only upheld by dismissal of any causes of action that concern foreclosure fees and costs.  The doctrine exists "to assure that all aspects of a legal dispute occur in a single lawsuit."  *Olds v. Donnelly*, 696 A.2d 633, 637 (N.J. 1997).  The New Jersey Supreme Court has identified three purposes behind the doctrine:  "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay."  *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995); *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 662 A.2d 523, 534 (N.J. 1995).  The Supreme Court has explained that where the parties are "likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions," all such rights and

liabilities "must be regarded as constituting an element of one mandatory unit of litigation" and be asserted in the original case. *DiTrolio*, 662 A.2d at 502.

With respect to foreclosures in particular, the entire controversy doctrine is enforced, in part, through New Jersey Court Rule 4:64-5. That Rule requires that counterclaims and cross-claims "germane" to the foreclosure proceeding be raised in that proceeding. "Germane" means "the counterclaim must be for a claim arising out of the mortgage foreclosed." *Ryno, Inc. v. First Nat'l Bank of S. Jersey*, 506 A.2d 762, 766 (N.J. Super. Ct. App. Div. 1986) (citation omitted). The types of matters germane in foreclosure actions include claims pertaining to "payment and discharge, incorrect computation of the amounts due, fraud, and, unjust enrich-ment." *LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563, at *2 (N.J. Super. Ct. Ch. Div. Mar. 3, 2006) (citation omitted).[6] By operation of the Rule and the entire controversy doctrine itself, "any claim . . . regarding the debt … is barred by the

---

[6]     *See also In re 865 Centennial Ave. Assocs. L.P.*, 200 B.R. 800, 815 (Bankr. D.N.J. 1996) (debtor's claim under the N.J. Banking Act was precluded under the doctrine where debtor failed to raise it in prior foreclosure proceedings, all claims related to the "negotiation, execution and perfor-mance of the credit agreement" should have been raised during the foreclosure); *In re Lewison Bros.*, 162 B.R. 974, 987 (Bankr. D.N.J. 1993) (the doctrine precluded relitigation of lender liability claims seeking avoidance of liens and disgorgement of funds where those claims were germane to prior foreclosure action); *VW Credit, Inc. v. Coast Auto. Group, Ltd.,* 2005 WL 3750752, at *6-7 (N.J. Super. Ct. App. Div. Feb. 14, 2006) (borrower's lawsuit seeking a declaration invalidating note was barred by the doctrine because it "would have been entirely germane" to a prior
(footnote cont'd.)

application of the entire controversy doctrine" if not raised as part of a state court collection or creditor enforcement action. *In re Crispino*, 160 B.R. 749, 756 (Bankr. D.N.J. 1993).

The Riveras' claims in this lawsuit concerning the foreclosure fees and costs were "germane" to their foreclosure proceeding, because they concern the "computation of the amounts due" under their loan. *See* Am. Compl. ¶ 24. The foreclosure proceeding was the correct time for the Riveras to complain about those fees and charges. Allowing the Riveras to sue here and now about events that occurred during that prior state court action would essentially be relitigation of what happened in the first case, and would eviscerate the entire controversy doctrine.

That the state court dismissed the Riveras' foreclosure case—after the Riveras voluntarily paid the sums due—does not avoid the entire controversy bar. In *DiTrolio*, the New Jersey Supreme Court held that as long as there is a fair opportunity to present the additional claims or defenses, the entire controversy doctrine applies even though the original action is ultimately dismissed without prejudice or pursuant to a settlement. 662 A.2d at 507-08; *see also Perskie & Nehmad*, 662 A.2d at 534 (holding that a "dismissal without prejudice is immaterial" because "it is the party's original compliance with the [entire

foreclosure action).

controversy] doctrine, rather than the absence of a conclusive determination of a claim, that ensures preservation of that claim.").

The Riveras also cannot avoid the entire controversy doctrine by arguing that their alleged causes of action arose during the pendency of the foreclosure action, and so were not ripe as part of the original 'entire controversy.' *See Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 662 A.2d 509, 513-15 (N.J. 1995) (requiring client to assert malpractice action during pendency of underlying action even where claim required waiver of attorney-client privilege), *abrogated on other grounds by, Olds v. Donnelly*, 696 A.2d 633 (N.J. 1997). The Riveras voluntarily paid the amounts due in 2007, while the foreclosure proceeding was still pending. If they wanted to contest the amounts due, they were required to do so when they were already involved in litigation regarding those fees and concerning their mortgage default generally. Because their claims arise directly *out of* the foreclosure proceeding, and they base their claims entirely on the very mortgage loan that was being enforced through that proceeding, there can be no dispute that the claims are *germane* to the foreclosure, and thus are barred here.

> **B.    The *Rooker-Feldman* Doctrine Prevents Federal Court Review of a State Court Foreclosure Judgment, and So Requires Dismissal of the Foreclosure Related Claims.**

The Riveras' attempt to undermine the state court foreclosure judgment, which awarded the foreclosure fees and costs, cannot proceed because the *Rooker-*

*Feldman* doctrine prevents litigants from using federal courts as the functional

equivalent of an appeal from state court judgments.  *Rooker v. Fid. Tr. Co.*, 263

U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman,* 460 U.S. 462 (1983).  "'A case is

the functional equivalent of an appeal from a state court judgment in two instances:

(1) when the claim was actually litigated before the state court; or (2) when the

claim is inextricably intertwined with the state adjudication.'"  *Akuma v. U.S.*

*Bank, N.C.*, Civ. A. No. 08-3697 (NLH), 2009 WL 151689, at *1-2 (D.N.J. Jan.

20, 2009) (quoting *Marran v. Marran,* 376 F.3d 143, 149 (3d Cir. 2004)).  A claim

is inextricably intertwined with the state court adjudication when "federal relief

can only be predicated upon a conviction that the state court was wrong" in what it

had done. *Marran,* 376 F.3d at 149 (citations omitted).

Here, the Riveras seek redress from the state court's judgment in the fore-

closure action because they think that fees charged during that action were

excessive or otherwise improper.  However, the judge in the foreclosure action

already determined, by entering the Final Judgment for Foreclosure, that those fees

and charges were valid.  Now, the Riveras seek to revisit that judgment by asking

this Court to review that proceeding.  This Court lacks jurisdiction to do so.

*Knapper v. Bankers Tr. Co.*, 407 F.3d 573, 581-82 (3d Cir. 2005) (federal court

lacks jurisdiction pursuant to *Rooker-Feldman* doctrine over federal claim seeking

to set aside state court judgment of foreclosure); *Akuma*, 2009 WL 151689 at *2

(plaintiff could not bring suit to enjoin foreclosure where a judgment was entered in a separate foreclosure action against plaintiff); *Paszek v. Froehlich*, Civ. No. 08-455 (WJM), 2008 WL 3887610, *2 (D.N.J. Aug. 18, 2008) (rejecting Plaintiffs' attempt to bring "an appeal of the state court's foreclosure judgment" in federal court).[7]  The *Rooker-Feldman* doctrine therefore bars this Court from exercising jurisdiction over the Riveras' claims.

### C. The Riveras Are Judicially Estopped From Raising Their Claims Because They Chose to Hide Them in Their Bankruptcy Filings.

Plaintiffs' failure to assert or list their current claims during their bankruptcy cases prevents them from litigating those claims now.  At the outset of both cases, the Riveras filed the requisite schedules of assets required by the Bankruptcy Code. 11 U.S.C. § 521(a)(1).  If the Riveras had a cause of action against Countrywide, that cause was an asset that they should have disclosed on their Schedule Bs as a "contingent or unliquidated claim."  *See Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); Schedule Bs (attached as Exs. D and K).  Nevertheless, the Riveras neither disclosed any claim against Countrywide (or

---

[7]  Likewise, to the extent the Riveras' claims were not actually litigated in the foreclosure proceeding, they are inextricably intertwined with the adjudications in that proceeding.  *Ayres-Fountain v. Eastern Savs. Bank*, 153 Fed. App'x 91, 92 (3d Cir. 2005) (applying *Rooker-Feldman* doctrine to dismiss mortgagor's action in federal court, alleging mortgagee's fraud and seeking rescission of mortgage note, because it was inextricably intertwined with state-court foreclosure adjudication).

anyone else) nor used any other method in their bankruptcies to complain about the allegedly excessive fees and costs that they now want to litigate.[8]

Plainly, the Riveras could have and should have listed their claims during their bankruptcies. They were required to list their claims related to foreclosure fees and costs at the outset of the litigation because those claims had already accrued. *See In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001); *see also* 11 U.S.C. §§ 541(a)(l), 1307. To the extent the Riveras' claims concern fees and costs that were disclosed <u>after</u> their bankruptcies were filed (such as on Washington Mutual's proofs of claim), they were required to amend their prior schedules to list the claims, as the duty to disclose potential causes of action is ongoing. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) ("The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action.") (internal quotations and citations omitted); *Donato v. Metro. Life Ins. Co.,* 230 B.R. 418, 421 (N.D. Cal.1999) ("… the debtor must amend those schedules when he or she becomes aware of the existence of the action because it is an asset of the bankruptcy

---

[8]   The Riveras also did not contemporaneously contest the fees on the proofs of claim through either an objection or litigation over the fees.

estate.").  As a result, all of the Riveras' claims should have been disclosed to the bankruptcy court.[9]

Judicial estoppel prevents a debtor from bringing suit outside of their bankruptcy to control, assert, or collect on an asset that was not previously disclosed.  When a debtor chooses not to list a cause of action, and thereby reveal it to the bankruptcy court, the trustee, and his creditors, judicial estoppel bars him from raising the claim outside of bankruptcy.  *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (debtors' "failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect").  Here, judicial estoppel prevents the Riveras' from pursuing their claims because the Riveras chose to hide this lawsuit by omitting it from their schedules.  *Donaldson v. Bernstein*, 104 F.3d 547, 555-56 (3d Cir. 1997) Applying judicial estoppel where plaintiff did not inform bankruptcy court of her resignation as a principal of company prior to confirmation proceedings); *see also Autos, Inc. v. Gowin*, 244 Fed. App'x 885, 891 (10th Cir. 2007) (applying judicial estoppel and holding that debtor's failure to list post-petition claim on amended bankruptcy schedule barred

---

[9]     Plaintiffs paid the fees at issue no later than when they paid off their mortgage loan in July 2007, six months before their Chapter 13 bankruptcy ended with conversion to Chapter 7.  *See* Ex. N.

claim because defendant "could have proposed any number of compromise solutions to bypass this multi-year morass in the federal courts").

### D. The Riveras' Claims Remain Property Of The Bankruptcy Trustee, Who Alone Has Standing To Pursue Them.

As part of each filing for bankruptcy, the Riveras relinquished to the bankruptcy trustee the right to pursue any claim they had at that time.  The Riveras have no standing to bring those claims now through this lawsuit.

The Bankruptcy Code provides that when the bankruptcy estate is created, all legal interests become property of the estate and pass out of the hands of the debtor.  Section 541(a)(l) of Title 11 of the U.S. Code provides:

> The commencement of a case [in bankruptcy] creates an estate. Such estate is comprised of . . . all legal or equitable interests of the debtor as of the commencement of the case.

*See also Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356 (3d Cir. 2001); *In re O'Dowd*, 233 F.3d 197 (3d Cir. 2000).  Among the property transferred to their estate were any causes of action possessed by the Riveras.  *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 491 (3d Cir. 1997) (noting that the Third Circuit has held that § 541 "includes 'causes of action' as property interests included in the [bankruptcy] estate").  And, as part of the bankruptcy estate, only the bankruptcy trustee has standing to pursue such a claim.  *In re Banks*, 223 Fed. App'x 149, 151 (3d Cir. 2007) ("[T]o the

extent that banks' claims arose before he filed for bankruptcy, the Bankruptcy Court properly dismissed Banks' suit [because] Banks did not have standing to pursue his claims.").

When the Riveras filed their first bankruptcy, which occurred after the foreclosure was filed and the judgment entered, their right to sue Defendants about the foreclosure fees and costs passed to their trustee. When they filed their second bankruptcy, the trustee for that case came into sole possession of the foreclosure related claims as well as the right to sue about bankruptcy fees that had been incurred in the first bankruptcy case. Thereafter, in December 2007—after they paid all of the fees and costs they now sue about—when the Riveras converted their Chapter 13 bankruptcy to a Chapter 7 bankruptcy, their Chapter 7 trustee succeeded to their rights. *See In re Stamm*, 22 F.3d 216 (5th Cir. 2000); 11 U.S.C. § 348(a); *In re Slack*, 290 B.R. 282, 287 (Bankr. D.N.J. 2003). Those rights included all of their claims based on the fees and costs sought during the foreclosure and the fees and costs sought during their first bankruptcy—which are the fees and costs at the heart of this case. *See* Am. Compl. ¶¶ 16-17.[10]

---

[10] The Riveras do not precisely identify which fees and costs are at issue with respect to either or both bankruptcy cases. Since the Amended Complaint only references two itemizations of fees—the items listed on their foreclosure judgment and the items on the proof of claim in the second bankruptcy—the Riveras appear not to contest any fees assessed during the second bankruptcy. *See, e.g.,* Am. Compl. ¶ 24; Am. Comp. Exs. A-C.

"'Once a cause of action becomes the property of the [Chapter 7] estate, the debtor may not bring suit on that action ....'" *In re Truong*, No. 03-40283, 2006 WL 4452984, at *4 (Bankr. D.N.J. May 3, 2006) (quoting *Krank v. Utica Mut. Ins. Co.*, 109 B.R. 668, 669 (E.D. Pa. 1990)).[11]  That principle is dispositive, and requires the dismissal of this case.  Only the bankruptcy trustee—not the Riveras— has standing to assert any of the rights, claims, or causes of action in this lawsuit. Accordingly, the Court must dismiss the Riveras' Amended Complaint.

## II.   EACH INDIVIDUAL COUNT ALSO DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Aside from the above bars to recovery, each individual count alleged by the Riveras also fails to state a claim, and each must be dismissed.

### A.   The Riveras Do Not Allege Sufficient Facts To Support Their Contract-Related Claims.

#### 1.   Plaintiffs Do Not Plead the Elements of Breach of Contract.

Count I—Breach of Contract—fails to state a claim against Countrywide because the Riveras do not allege facts establishing the necessary elements of a

---

[11]   While property of the debtor not distributed through the completion of a Chapter 7 normally reverts to the debtor at the close of the bankruptcy, unscheduled claims do not revert but remain the property of the bankruptcy estate.  *Hutchins v. I.R.S.*, 67 F.3d 40, 43 (3d Cir. 1995) ("It is clear that an asset must be properly scheduled in order to pass to the debtor through abandonment").  The Riveras failed to list any cause of action as a scheduled asset in their bankruptcy petition, or any amended Plan schedules.  (*See* Petition (attached as Ex. K).).  The claims, therefore, remain part of their Chapter 7 estate.

contract claim.  To plead a breach of contract claim, a plaintiff must allege:  "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).  The Riveras have not established these basic elements.  In particular, the contract claim cannot survive because the Riveras fail to allege what contractual provisions they contend Countrywide breached, and to otherwise put Countrywide on notice of the specific charges that the Plaintiffs contend broke the parties' agreement.  *See*, *e.g.*, *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01-cv-2272 (GBD), 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004).

The Amended Complaint only alleges that Countrywide (and Washington Mutual) "have breached its [sic] contracts with Plaintiffs and members of the class," (Am. Compl. ¶ 49) but it does not allege any particular contractual provisions Countrywide supposedly breached.  The Riveras simply must be more specific in order to state a claim:  which provisions within those "contracts" Countrywide breached?  What fees are at issue (*i.e.*, whether it is all foreclosure-related fees, only some of them, or other fees)?  More specificity is necessary to put Countrywide on notice and to plead properly a breach of contract claim.[12]

---

[12]     Notably, the Riveras breached the mortgage and note in their own right by failing to pay their mortgage as required.  *See* Am. Compl. ¶¶ 14-22.  The
(footnote cont'd.)

That failing is glaring in light of the express terms of the mortgage contract, which flatly contradict the Riveras' assertion that the assessment of the fees and costs at issue constitute a breach of the agreement.  Paragraph 7 of their mortgage expressly allows the collection of necessary fees and costs in the event the Riveras default:

> If Borrower fails to make the[ required] payments … the Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property…. Any amounts disbursed by the Lender under this paragraph shall become an additional debt of Borrower and be secured by this Instrument [and] shall be immediately due and payable.

Mortgage, Ex. B ¶ 7.[13]  Paragraph 18 of the mortgage further provides that when the borrower defaults, causing a foreclosure proceeding, the mortgagee "shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title

---

Riveras' own breach precludes them from recovering here.

[13]   Reliance on the mortgage documents is appropriate here.  In considering a motion to dismiss, the Court may consider the "allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim . . . A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, the contract was "explicitly relied upon" in the Amended Complaint because Plaintiffs refer to it as the basis of their claims in several places. Am. Compl. ¶¶ 14, 45, 46.  In addition, Plaintiffs' mortgage is matter of public record of which this Court may take judicial notice.  *Vanguard Sav. & Loan Ass'n v. Banks*, Civ. No. 93-CV-4627, 1995 WL 555871, at *3 (E.D.
(footnote cont'd.)

evidence." *Id.* ¶ 18.  The Riveras also signed a Note, which states that when a lender demands full payment, such as during foreclosure:  "Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees…."  (Note, Ex. A ¶ 6(c)).  The Riveras' breach of contract claim plainly cannot stand, in light of the express authorization to collect the very fees and costs at issue here, without more being alleged.[14]

The Riveras' allegation that Washington Mutual and Countrywide "failed to disclose in advance to the Riveras the amount of any fees or costs which may be charged to their [sic] in connection with their mortgage" does not state a claim either.  Am. Compl. ¶ 48.  They not only fail to cite to a provision in their contract that would require such a disclosure, there is no such notice requirement.  *See generally* Ex. B.  Even if such disclosures were required, however, the Riveras' claim would fail because the fees were disclosed in the state court proceeding (as part of the foreclosure judgment) and on the proofs of claim filed in both of their bankruptcies.

---

Pa. Sept. 18, 1995) ("[M]ortgages . . . are a matter of public record.").

[14]   Plaintiffs' assertion that Defendants improperly collected "interest" (*see* Am. Compl. ¶ 47) is even more troublesome.  The very nature of the mortgage relationship is that Plaintiffs will pay interest under the terms of the Note.  (*See* Note, Ex. A ¶ 1.)  The Riveras do not attempt to explain how the collection of interest can be a breach.

Accordingly, the Riveras do not allege sufficient facts to establish any breach of contract and Count I must be dismissed.

### 2.   The Riveras Have Not Pled A Negligence Claim.

#### (a)   The Economic Loss Doctrine Bars The Riveras' Negligence Claim.

New Jersey's economic loss doctrine prevents the Riveras from asserting a negligence claim because they seek to recover a "purely monetary loss."  The economic loss doctrine prevents "a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property."  *Public Serv. Enter. Group, Inc. v. Phila. Elec. Co.*, 722 F. Supp. 184, 193 (D.N.J. 1989).  Put another way, to sue in tort, a plaintiff must have a "physical injury or property damage caused by the defendant" and cannot sue "to recover for purely monetary loss."  *Int'l Flavors & Fragrances, Inc. v. McCormick & Co.*, 575 F.Supp.2d 654, 656 (D.N.J. 2008).  Here, the Riveras do not claim (nor could they) that Defendants caused any harm other than the alleged collection of money that the contract did not allow.  This is the very essence of a purely monetary loss that is insufficient to support a negligence claim.

#### (b)   The Negligence Claim Cannot Stand In Light Of The Fact that the Contract Addresses the Parties' Rights After the Riveras' Default.

The Riveras' negligence claim also must be dismissed because there can be no tort claim where a contract exists that addresses the conduct at issue. To prevail on a claim of negligence, a plaintiff must establish that the defendant breached an established duty which exists independent of a contract. *Petrillo v. Bachenberg*, 655 A.2d 1354, 1356 (N.J. 1995). *See Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 316 (N.J. 2002). Where a "[p]laintiff's allegations are essentially contractual in nature," she cannot bring a tort claim, including a claim for negligence. *Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civ. A. No. 06-5391, 2007 WL 2406980, at *10 (D.N.J. Aug. 20, 2007).

Here, the only duty the Riveras attempt to assert is a "duty of care with respect to servicing their mortgage loans." Am. Compl. ¶¶ 52-54. But the duty to service the Riveras' mortgage loan is a contractual one, and, in particular, the mortgage documents contain detailed rights and remedies that would become available if the Riveras might default. If, as they contend, some one of the Defendants breached those provisions, the remedy is in contract, for there is no tort duty to perform a contract. *525 Main St. Corp. v. Eagle Roofing Co.*, 168 A.2d 33 (N.J. 1961).

The Riveras cannot point to anything outside the contract as creating some special duty of care. Under well-settled New Jersey law, there is no special relationship that gives rise to any tort duty of due care between a mortgagee and a

mortgagor.  *United Jersey Bank v. Kensey*, 704 A.2d 38, 45 (N.J. Super. Ct. App.

Div. 1997); *Margulies v. Chase Manhattan Mortg. Corp.*, 2005 WL 2923580, at *3

(N.J. Super. Ct. App. Div. Nov. 7, 2005).  Accordingly, the negligence claim

asserted in Count II must be dismissed.

### 3.   The Riveras' Breach of Duty of Good Faith And Fair Dealing Claim Fails To State A Claim.

The Riveras next allege (in Count III) that "New Jersey recognizes a duty of

good faith and fair dealing" and that Defendants' "conduct breached said duty" by

charging and collecting allegedly-excessive fees and costs.  Am. Compl. ¶¶ 57, 60.

The cause of action is insufficiently specific because the Riveras have not alleged

facts establishing any implied covenant, or why it was breached.  As noted, the

Riveras' mortgage specifically authorized the collection of the fees and costs at

issue.  (*See supra* at II, A1.)  Where, as here, a contract expressly authorizes

something, the implied covenant of good faith and fair dealing cannot be cited as a

basis to alter the parties' agreement.  *Fleming Cos. Inc. v. Thriftway Medford

Lakes, Inc.*, 913 F. Supp. 837, 846 (D.N.J. 1995); *see also Woods Corp. Assocs. v.

Signet Star Holdings, Inc.*, 910 F. Supp. 1019, 1034 (D.N.J. 1995) (lender did not

breach this duty where it "did nothing more than exercise its contractual

relationship to protect its interest in the security.").  Without more, the Riveras'

attempt to bootstrap a claim for breach of the covenant of good faith and fair

dealing should be dismissed.

### 4.      The Riveras Cannot State A Claim For Unjust Enrichment.

The Riveras' claim in Count IV for "unjust enrichment" must be dismissed because of the alleged contractual basis for their claims.  Under New Jersey law, unjust enrichment exists only "to provide a remedy where none existed."  *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 335 (N.J. Super. Ct. App. Div. 1966) (unjust enrichment should be asserted "with caution").  *See also F. Bender, Inc. v. Jos. L. Muscarelle, Inc.*, 700 A.2d 374, 376 (N.J. Super. Ct. App. Div. 1997) (unjust enrichment claim appropriate only where no other remedy exists).  Unjust enrichment is thus a quasi-contractual claim that the Riveras cannot plead alongside an express contract.  *Moser v. Milner Hotels, Inc.*, 78 A.2d 393, 394 (N.J. 1951) ("Having pleaded an express contract, the plaintiff cannot … recover on quasi-contract.  It is a well settled rule that an express contract excludes an implied one.").

The Riveras allege that their claims ultimately flow from the contractual relationship created by their mortgage.  *See, e.g.*, Am. Compl. ¶¶ 14, 24, 45.  Indeed, in Count IV they allege that Defendants were unjustly enriched because they "collected monies that are not due and owing *under applicable contract law, because the contract* or other applicable law does not permit Defendants to collect such fees and charges."  *Id.* ¶ 64 (emphasis added).  Since the mortgage and its alleged breach are at the heart of the Riveras' claims, and because the mortgage

29

expressly addresses the charging and collection of fees and costs, the Riveras'

unjust enrichment claim is improperly brought, and the Court should dismiss it.

**B.    The Riveras Do Not State A Claim Under the New Jersey Consumer Fraud Act.**

Counts V through VIII of the Amended Complaint, though stated as separate

causes of action, properly are read as a single alleged cause of action based on the

Consumer Fraud Act.  In each of Counts V through VII, the Riveras allege viola-

tions of the FTC Act, New Jersey's Fair Foreclosure Act, and New Jersey Court

Rules, respectfully, as predicate acts that establish their right to recover under the

CFA.[15]  Count VIII attempts to bring those predicate acts together to plead a

violation of the CFA.  But the Riveras' allegations, even taken together, do not

state a claim under the CFA.

---

[15]    All three counts conclude with an allegation that a violation of the predicate provision "constitutes a violation of the New Jersey Consumer Fraud Act and [is] therefore actionable by the Plaintiff."  Am. Compl.  ¶¶ 73, 77, 81. Indeed, even if Plaintiffs wanted to assert them as standalone claims, none of the predicate acts allow for a private right of action that would allow the Riveras to sue for such violations in their own right.  First, "the FTC Act [Count V] is enforced exclusively by the FTC; there is no private right of action under the statute."  *United States v. Philip Morris, Inc.*, 263 F. Supp. 2d 72, 78 (D.D.C. 2003) ("Private parties such as the Plaintiffs cannot assert a claim for violation of the FTC Act…").  Second, neither the FFA nor any New Jersey Court Rules provide a private right of action. *See Whittingham v. Am. Mortgage Elec. Registration Serv., Inc.*, Civ. No. 06-3016 (RBK), 2007 WL 1456196, at *6 (D.N.J. May 26, 2007). *Whittingham*, a similar case brought by Plaintiffs' counsel, dismissed FFA and New Jersey Court Rule claims because there was no private right of action available.

1.     **The Riveras Do Not Plead Violations Of The Predicate Acts.**

As Counts V-VII serve as predicate acts, Plaintiffs must plead facts sufficient to establish violations of each of the provisions cited in order to state a claim under the CFA.  Their failure to do so is fatal to those claims.

        (a)    **Plaintiffs Have Not Outlined Anything That Would Have Violated The FTC Act.**

In Count V, the Riveras allege that defendants engaged in "unfair and deceptive assessment and collection of fees," as a predicate for recovery under the CFA. Somewhat more specifically, they contend (in ¶ 71) that "the fees assessed and collected by WASHINGTON MUTUAL and COUNTRYWIDE were (a) not allowed under the mortgage contract or (b) permitted by law."  But, the Court need not accept such conclusory statements in determining whether the pleading is sufficient to state a cause of action.  *Stevenson*, 495 F.3d at 66; *see also Twombly*, 127 S. Ct. at 1964.

As noted throughout this brief, the Riveras do not allege facts showing how the fees they paid violated either the contract or any law.  Instead, the mortgage contract expressly authorized the fees and costs at issue, and there is ample legal authority that supports such fee-shifting agreements.  *See Cohen v. Fair Lawn Dairies, Inc.,* 206 A.2d 585, 590 (N.J. Super. Ct. App. Div. 1965); *Sokoloff v. General Nutrition Cos.*, No. Civ. 00-641 (JBS), 2001 WL 536072, at *8 (D.N.J. May 21, 2001).  This leaves nothing in the Amended Complaint that explains how

Countywide violated the FTC Act and how it could serve as a basis for the
Riveras' CFA claim.

### (b)    The Fees And Costs At Issue Do Not Violate the FFA or New Jersey Court Rules.

The Riveras also fail to plead facts sufficient to show a violation of either
the FFA in Count VI or New Jersey Court Rules 4:42-9(a)(4) and 4:42-10(a) in
Count VII.  In both Counts, Plaintiffs allege that Defendants charged fees and costs
in excess of those allowed under Rules 4:42-9(a)(4) (limiting counsel fees in a
foreclosure action) and 4:42-9(a)10(a) (limiting search costs).  *See* Am. Compl.
¶¶ 76, 80.  Although the Riveras never specify which fees run afoul of these
provisions, a review of the facts alleged demonstrates that neither of the cited
Rules was violated in connection with Plaintiffs' foreclosure.

New Jersey Court Rule 4:42-9(a)(4) sets forth a specific calculation for the
determination of attorneys' fees in a foreclosure action:

> In an action for the foreclosure of a mortgage, the allowance
> shall be calculated as follows: on all sums adjudged to be paid
> the plaintiff amounting to $5,000 or less, at the rate of 3.5%,
> provided, however, that in any action a minimum fee of $75
> shall be allowed; upon the excess over $5,000 and up to
> $10,000 at the rate of 1.5%; and upon the excess over $10,000
> at the rate of 1%, provided that the allowance shall not exceed
> $7,500.  …  In no case shall the fee allowance exceed the
> limitations of this rule.

In the foreclosure action, "all sums adjudged to be paid to plaintiff" amounted to
$144,744.42.  *See* Am. Compl. ¶ 16; Am. Comp. Exs. A, B.  The rule allows for

(1) fees of 3.5% of the first $5,000 adjudged to be paid, or $175; (2) fees of 1.5% of the amount adjudged to be paid from $5,001 to $10,000 (or 1.5% of $4999), which equals $74.99; and, (3) fees of 1.0% of the remaining $134,742.42 adjudged to be paid, which equals $1347.42.  These three sums total $1597.42.  In the foreclosure action, Plaintiffs claim that they were charged the exact same amount—$1597.42.  Am. Compl. ¶ 16; Ex. B.[16]  As the Rule allows the precise amount of attorneys' fees that Plaintiffs claim to have been charged, their assertion that Rule 4:42-9(a)(4) was violated must fail.[17]

Similarly, the Riveras admit that there is no violation of Rule 4:42-10(a). That Rule provides:

> (a) Fees Allowable. In an action for the foreclosure of a mortgage … the court or the clerk may, as a matter of discretion, tax … reasonable charges necessarily paid or incurred in procuring searches relative to the title of the subject premises, provided that the minimum fee shall be $75 and the maximum fee shall be $500.  If, however, 1% of the amount found due plaintiff is more than $75 and less than $500, such 1% shall be the maximum fee. …

---

[16]  In fact, the proofs of claim filed by Washington Mutual in the Riveras' bankruptcies each listed only $1500.00 in "Foreclosure Fees"—less than the amount allowed by the FFA.  *See* Ex. E; Am. Compl. Ex. C.

[17]  Plaintiffs were charged a separate $50 fee, which is allowed for costs of foreclosure in addition to other fees levied pursuant to N.J. Stat. Ann. § 22A:2-10.  *See* Am. Compl. Ex. B.

Here, Plaintiffs were assessed $345.00 for "SEARCH COSTS ALLOWED

UNDER R.4:42-10." *See* Ex. A.[18]  This amount is plainly less than the statutory

maximum of $500.  In addition, it does not exceed the 1% alternative maximum

because 1% of the amount due, $144,744.42, is $1,442.44, which exceeds both

$500 and the amount Plaintiffs were actually charged.  Thus, the search charges

levied do not violate Rule 4:42-10(a).  The Riveras themselves admit that "the

amount allowed [here, under this Rule] would be $500."  Am. Compl. ¶ 24.

Because neither the fees nor costs the Riveras alleged violate the cited

provisions of New Jersey law, Counts VI and VII cannot serve as predicate acts for

their CFA claim.

> **2.**    **The Riveras Do Not Plead Facts Sufficient To Establish The Remaining Elements Of The CFA Causes of Action.**

To state a claim under the CFA, a plaintiff must plead "(1) unlawful conduct

by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship

between the unlawful conduct and the ascertainable loss."  *Bosland v. Warnock*

*Dodge, Inc.*, 2009 WL 414336 (N.J. Feb. 19, 2009).  Even if the Riveras had

alleged violations of the predicate acts, and therefore met the first element for a

CFA claim, they failed to plead sufficiently facts supporting the rest of their CFA

claim.  *Phillips*, 515 F.3d at 233 ("After *Twombly*, it is no longer sufficient to

---

[18]    Once again, the only specificity concerning such fees is Plaintiffs' citation to
(footnote cont'd.)

allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'") (quoting *Twombly*, 127 S. Ct. at 1969 n.8).

To plead a CFA claim, the Riveras must set forth "the grounds for and contours of the alleged unlawful practice." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). In *Frederico*, the Third Circuit held that the plaintiff's allegations were "unclear" because the defendant was "not placed on notice that the particular practice complained of." *Id*. The same is true here. The Riveras have not set forth allegations that make clear how they claim Countrywide violated the CFA.

The Riveras also make no effort to allege a "causal link" between the unlawful conduct and whatever ascertainable loss they suffered. *New Jersey Citizen Action v. Schering-Plough Corp*., 842 A.2d 174, 178 (N.J. Super. Ct. App. Div. 2003) ("plaintiffs must nonetheless plead and prove a causal nexus between the alleged act of consumer fraud and the damages sustained"). The Riveras' conclusory statement that "[t]he actions of Defendants have caused and are likely to cause substantial injuries to consumers…." (Am. Compl. ¶ 72) is not enough. The Riveras have thus failed to state a claim under the CFA.

---

the foreclosure documents attached to their Amended Complaint.

**C.    The Riveras Have No Claim Under The Truth In Consumer Contract, Warranty & Notice Act.**

The Riveras' final claim, that Defendants violated New Jersey's Truth In Consumer Contract, Warranty & Notice Act, is plainly frivolous.  The purpose of the TCCWNA is to make consumer contracts clearly written and understandable. *Barows v. Chase Manhattan Mortgage Corp.*, 465 F.Supp.2d 347, 361 (D.N.J. 2006).  Nothing in the Riveras' allegations implicates a supposedly unclear consumer contract.  Indeed, the Amended Complaint is devoid of any allegations addressing either requirement of a TCCWNA claim:  (1) the existence of a "written consumer contract or give or display any consumer warranty notice or sign" that (2) includes "any provision that violates any *clearly established legal right* of a consumer or responsibility of a seller, lessor, creditor or bailee as established by State or Federal Law."  N.J. Stat. Ann. § 56:12-15.  The Amended Complaint is devoid of allegations addressing either requirement. The Riveras' failure to plead the necessary elements of a TCCWNA claim mandates the dismissal of Count IX. *See Barows*, 465 F.Supp.2d at 362 ("Plaintiffs' Complaint does not contend that her note or mortgage contained provisions that violate state or federal law.").[19]

---

[19]    Plaintiffs plead the remaining Count, Count X, only against "John Doe defendants" and thus it cannot prevent this Court from dismissing all claims pending against Countrywide.

### III.   THE VOLUNTARY PAYMENT DOCTRINE BARS THE RIVERAS' CLAIMS.

New Jersey's well-recognized voluntary payment doctrine also defeats the Riveras' claims.  The voluntary payment doctrine applies when a party voluntarily agrees to pay a sum that had been disclosed in advance.  *Messner v. County of Union*, 167 A.2d 897, 898 (N.J. 1961) ("where an individual under a mistake of law, but with full knowledge of the facts, voluntarily pays money on a demand not legally enforceable against him, he cannot recover it in the absence of unjust enrichment, fraud, duress or improper conduct on the part of the payee"); *see also In re Resorts Int'l, Inc.*, 181 F.3d 505, 511 (3d Cir. 1999).

Here, the Riveras' allegations show that they voluntarily paid the fees when they paid off their loan.  *See* Am. Compl. ¶ 22.  The Riveras do not allege that anyone coerced them into making the payments at issue.  Finally, as demonstrated above, the Riveras cannot establish the existence of unjust enrichment (since the mortgage contract allowed the collection of the allegedly improper fees) or fraud (since Plaintiffs do not establish the basic elements of fraud).  Thus, the voluntary payment doctrine bars all of the Riveras' claims.

### CONCLUSION

For the reasons stated herein, all claims and causes of action in Plaintiffs' Amended Complaint against Countrywide should be dismissed.

COUNTRYWIDE HOME LOANS, INC.

By its attorneys,

 /s/ Mariah Murphy
Martin C. Bryce, Jr.
Mariah Murphy
BALLARD SPAHR ANDREWS &
INGERSOLL, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ  08043
(856) 761-3400

Of Counsel:

Thomas M. Hefferon
Scott B. Nardi
Eric I. Goldberg
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC  20001
(202) 346-4000

DATED:     March 30, 2009

LIBW/1704885.2