# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### (CAMDEN VICINAGE)

| | |
|---|---|
| **David A. and Marianne M. Rivera**<br>**Individually and as a class representative**<br>**On behalf of others similarly situated**<br>**Plaintiff**<br><br><br>        **vs.**<br><br>**WASHINGTON MUTUAL BANK**<br>**COUNTRYWIDE HOME LOANS,**<br>**SHAPIRO & DIAZ,**<br>**AND JOHN DOE SERVICERS 1-100**<br>**AND JOHN DOE  LAW FIRMS 1-10**<br>**Defendant.** | **CASE NO.**<br>      **1:09-cv-0021 (JEI)(JS)**<br><br>  <u>Civil Action</u><br><br><br>**Affidavit pursuant to  Rule 56(f)** |

BRIEF OF PLAINTIFF IN OPPOSITION TO THE MOTION TO DISMISS BY THE
DEFENDANT COUNTRYWIDE HOME LOANS, Inc..

Attorney for Plaintiff
Law Office of Roger C. Mattson
26 Newton Avenue
Woodbury, NJ 08096
(856) 848-4050

Lewis G. Adler, Esquire
Roger C. Mattson, Esquire
On the Brief

Lewis G. Adler, Esq.
Roger C. Mattson, Esq.

## TABLE OF CONTENTS

**Page**

A.    Statement of Facts

B.    Legal Argument

I.      Motion to Dismiss Standard                                          1

II.     Motion is Premature                                              2

III.(a) Defendant's Actions are Prohibited by Law                  2

   (b) Costs of suit charged are in Violation of N.J. Law         5

   (c) The amounts demanded violate FHA regulations            7

   (d) The amount demanded was in excess of the final
        judgment of foreclosure                                       8

IV.     Defendant's reliance upon entire controversy
        Is Flawed                                                       9

V.      The Rooker-Feldman doctrine is inapplicable to this case   12

VI.     The Plaintiffs' claims are not judicially estopped for failing to
        raise their claims in the Bankruptcy                         14

VII.    The Plaintiffs claims were abandoned by the Bankruptcy
        Trustee                                                        16

VIII.    Defendant's Motion to Dismiss Count I
        should be Denied                                              17

IX.      The Economic Loss doctrine does not bar the Plaintiff's claim  17

X.      Plaintiff has pled cause of action for Breach
        of Good Faith and Fair Dealing                               19

XI.     Defendant's motion to dismiss Count VI for
        Unjust enrichment should be denied                          20

ii

**XII.**    **Plaintiff has pled cause of action for violation of the
New Jersey Consumer Fraud Act.**                                     **22**


**XIII.**    **Defendant's motion for Dismissal of Count XI of
the complaint for violations of the Truth-In-Consumer,
warranty and Notice Act should be denied**                          **24**

**XIV.**    **The voluntary doctrine does not apply to the Plaintiffs**    **27**


**XV.  Any Dismissal by the Court should be without Prejudice**          **34**


**Conclusion**                                                         **35**

## TABLE OF AUTHORITIES

**Page**

Aetna Ins. Co. v. Gilchrist Brothers, Inc.
    85 NJ 550, 556 (1981)           11

Alcoa Edgewater Nol Fed. Credit Union
    44 NJ 442, 210 A.2d 68, 71 (N.J. 1965)        4

A&P Diversified Techologies Realty
    006 U.S. App. LEXIS 1179, No. 04-3622 (3rd Cir. 2006)    4

Ass'n Group Life, Inc. v. Catholic War Vets
    61 NJ 150, 153 (1972)           19

Atlas Corp. v. U.S.
    895 F.2d 745, 754-55 (Fed. Cir. 1990)        21

Baer v. Chase
    392 F.3d. 609, 617 (3rd Cir 2004)         21

Bak-A-Lum Corp. v. Alcoa
    69 NJ 123, 129-30 (1976)          19

Barrows v. Chase Manhattan Mortgage Corp.
    465 F. Supp 2d. 347, 366 (DNJ 2006)       19,20

Bosland v. Warnock Dodge
    396 NJ Super 267 (App. Div. 2007)        26

Bosland v. Warnock Dodge
    (A-97-07)               30

Chase Manhattan Bank v. Iridium Africa Corp.
    235 F. Supp. 2d 402, 409 (D. Del. 2002)      21

Coastal Bank v. Colonial Wood Products
    172 NJ Super 320 (App. Div. 1980)        3

Delta Funding v. Harris
    189 NJ 28, 49 (2006)            11

Dillon v. U-A Columbia Cablevision
    740 NY 52d 396 (2d 2002)         28

In re:  Resorts, Inc.
    181 F.3d 505, 511 (3d Cir. 2006)      28,33

iv

**Mardini v. Viking Freight, Inc.**
     92 F. Supp. 2d 378, 385 (D.N.J. 1999)        1

**Metlife v. Washington Ave Assoc.**
     159 NJ 484(1999)        20

**National City Mortgage v. Smith**
     324 N.J. Super 509 (Ch Div. 1999)        5

**NCP Litigation Trust v. KPMG, LLP**
     187 NJ 353 (2004)        18

**Onderdankin v. Presbyterian Homes**
     85 NJ 171, 182 (1981)        19

**Pickett v. Lloyd's**
     131 NJ 457, 467 (1993)        19

**Regency Savings v. Morristown Mews**
     363 NJ Super. 363 (App. Div. 2003)        3

**R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.**
     168 NJ 255, 276(2001)        19

**Ryno, Inc. v. First National Bank of S.J.**
     208 N.J. Super. 562 at 570 (App. Div. 1986)        10

**Shane v. Fauver**
     213 F.3d. 113 (3rd Cir. 2000)        34

**Smerling v. Harrah's**
     389 N.J. Super. 181 (App. Div. 2006)        26

**Stewart Title Guar. Co. v. Lewis**
     347 NJ Super. 127 (Ch. Div. 2001)        4, 17, 25

**VRG Corp. v. GKN Realty Corp.**
     641 A2d 519, 526 (N.J. 1994)        20

**Whittingham v. MERS**
     2007 U.S. Dist. LEXIS 33476, 16 (D.N.J. 2007)        20,22

## STATUTES

|  | Page |
|---|---|
| N.J.S.A. 2A:15-13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| N.J.S.A. 2A:32-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 30 |
| N.J.S.A. 2A:50-53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| N.J.S.A. 2A:50-57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| N.J.S.A. 2A:50-61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |
| N.J.S.A. 2A:50-67 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |
| N.J.S.A. 22A:2-8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| N.J.S.A. 22A:2-10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| N.J.S.A. 56:8-19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| N.J.S.A 56:12-15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| N.J.S.A. 56:12-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 29 |

## REGULATIONS

| **24 CFR 203.552(B)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7,23 |

### Other Authorities

| **Black's Law Dictionary 4th Ed (1968)** . . . . . . . . . . . . . . . . . . . . | 25 |

## **RULES**

|  |  | Page |
|---|---|---|
| **Fed R. Civ. P. 12(b)(6)** | . . . . . . . . . . . . . . . . . . . . . . . . . . | **1** |
| **Fed R. Civ. P. 56(f )** | . . . . . . . . . . . . . . . . . . . . . . . . . . | **2** |
| **N.J.  C.R.   4:42-9(a)(4)** | . . . . . . . . . . . . . . . . . . . . . . . . . . | **2, 4, 8** |
| **N.J.  C.R.   4:42-10(a)** | . . . . . . . . . . . . . . . . . . . . . . . . . . | **6** |
| **N.J.  C.R.   4:64-5** | . . . . . . . . . . . . . . . . . . . . . . . . . . | **9, 10** |
| **N.J.  C.R.   4:64-1** | . . . . . . . . . . . . . . . . . . . . . . . . . . | **10** |

## FACTS

The Statement of facts for purposes of this motion is outlined in the Plaintiff's complaint which is incorporated by reference herein.

## ARGUMENT

The Defendant's motion to dismiss  must be denied in full. The issues raised by the Defendant are in most cases based upon gross distortions of the law and facts.  The Defendant does not deny the essential facts that they took money from Mr. & Mrs. Rivera that they were not entitled to.  The arguments instead seek to allege equitable defenses as a shield for inequitable, illegal and disreputable conduct.  The court must as a matter of law, deny the Defendant's motion.

### I.        Standard for Determination of a motion under FR 12(b)(6).

The Court in the case of *Mardini v. Viking Freight, Inc*., 92 F. Supp. 2d 378, 385 (D.N.J. 1999) articulated the standard the Court must use in a motion to dismiss under Rule 12(b)(6).

> Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.  *Neitzke v. Williams*, 490 U.S. 319, 326, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)); *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). In disposing of a motion to dismiss, the court must operate on the assumption that the factual allegations in the complaint or counterclaim are true. *Neitzke*, 490 U.S. at 326-27. A motion to dismiss may be granted if the opposing party would not be entitled to relief under any set of facts consistent with the allegations in the complaint or counterclaim. As the Supreme Court stated in *Neitzke*:
>> "nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon,* supra at 73, 104 S. Ct. 2229, a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.

> What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations. (490 U.S. at 327)". <u>Id at 381, 382</u>

In the instant case, the Court must accept as true the allegations of the complaint.

## II.    The motion is premature as discovery has not been completed.

Countrywide has filed the within motion while discovery is still pending. Many key facts still have not been developed. This is especially true of an itemization of the attorneys fees and court costs charged to Mr. & Mrs. Rivera.  This information is in the sole possession of Countrywide. Without those figures it is difficult to give exact calculations of the extent of the violations of the act or Mr. & Mrs. Rivera's damages. To this end the Plaintiffs haver filed a certification pursuant to R56(f) requesting the decision on those issues be stayed pending the completion of discovery.


## III.    THE DEFENDANT'S ACTIONS ARE PROHIBITED

###       UNDER THE LAW.


### a )  The attorney fees charged by the Defendant are in violation of the New Jersey Court Rules.


In a foreclosure action in New Jersey, the Rules of Court limit the amount  a mortgagee can charge to the borrower to recoup the attorney's fees and costs of suit in the action. Attorney's fees are limited by *R 4:42-9(a)(4)*  which states:

> In an action for foreclosure of a mortgage, the allowance shall be calculated as follows: on all sums adjudged to be paid to the plaintiff amounting to $5000 or less, at the rate of 3.5%, provided however, that in any action a minimum fee of $75 shall be allowed; upon the excess over

$5000 and up to $10,000 a the rate of 1.5%; and upon the excess over $10,000 a the rate of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services. In no case shall the fee allowance exceed the limitation of this rule.

The total amount due Countrywide pursuant to the final judgment entered June 4, 2002 was $144,742.42. Under the Court Rule, Countrywide was limited to a total of $1597.42.00 in attorneys' fees plus the statutory fee of $50.00. The Court rule is clear "**in no case shall the fee allowance exceed the limitation of this rule"**. As a matter of law the Defendant Countrywide violated the rules of court. Countrywide demanded attorneys' fees of $1925 and costs of $1898.44. As the amounts are not itemized and known only to the Defendant, it would be premature to make any assumptions until discovery is complete. Countrywide knew or should have known that it was demanding excess fees in its payoff statements. Countrywide had an obligation to advise the Plaintiff as to what attorneys fees and other costs of suit are properly recoverable under New Jersey law.

The limitations of this rule are absolute. The Courts have held that where a mortgage debt is secured by a note providing for an attorney's fee for collection and the mortgagee proceeds to foreclose the mortgage his attorney's fees are governed by the rule rather than the note. *Coastal Bank v. Colonial Wood Products, Inc.*, 172 NJ Super 320 (App. Div. 1980) An attorney fee provision in a promissory note accompanying a mortgage will not be construed to include fees for post-judgment collection costs. *Regency Savings v. Morristown Mews*, 363 NJ Super. 363 (App. Div. 2003). The courts have also included the fees incurred in a bankruptcy proceeding during the pendency of

the foreclosure as being included in this cap. I*n re: A&P Diversified Technologies Realty, Inc, Youngman v. Fleet Bank, NA*, 006 U.S. App. LEXIS 1179, No. 04-3622 (3rd Cir. 2006); *Stewart Title Guar. Co. v. Lewis,* 347 NJ Super. 127 (Ch Div 2001); *In re: John Hatala*, 295 BR 62 (2003).

The Third Circuit case of *In re: A&P Diversified Technologies Realty, Inc, Youngman v. Fleet Bank, NA*, 006 U.S. App. LEXIS 1179, No. 04-3622 (3rd Cir. 2006) is directly on point. In *A&P*, the Court held:

> We also disagree with Fleet's assertion that New Jersey's limitation on attorneys' fees in Rule 4:42-9(a)(4) somehow renders the merger doctrine inapplicable and allows creditors to recover attorneys' fees post-judgment. In this regard Fleet contends that cases from other jurisdictions which hold "that a secured party cannot receive a section 506(b) award after its mortgage is satisfied are inappropriate and emanate from jurisdictions outside New Jersey where unlike New Jersey, a party may seek all of its legal fees and costs in the context of a state court foreclosure action." Appellee's Br. at 19. Rule 4:42-9(a)(4) does not render the merger doctrine inapplicable; nor does it allow a mortgage agreement to survive a judgment of foreclosure. Indeed, it does not even address these matters. Rather, it limits the award of attorneys' fees allowable under state law as it provides, after setting forth the allowable fees, that "in no case shall the fee allowance exceed the limitations of this rule." The Supreme Court of New Jersey has made it clear that the parties to a mortgage cannot by contract override the limitations of the rule. *Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll,* 44 N.J. 442, 210 A.2d 68, 71 (N.J. 1965).

> In reaching our result we emphasize the following. While it is true that the debtor agreed to pay Fleet's "reasonable" attorneys' fees in a foreclosure action and arguably waived the benefit of certain laws limiting the amount of fees Fleet could recover, certainly in the absence of a bankruptcy proceeding these provisions would not have rendered the limitations of Rule 4:42-9(a)(4) ineffective. Id. Furthermore, we point out that inasmuch as mortgagees ordinarily prepare the mortgage documents, if such provisions superceded Rule 4:42-9(a)(4) in foreclosure actions, the rule soon would become meaningless.

> The question, then, is whether section 506(b) should require a different result in a bankruptcy context. We do not see why it should in the absence of clear language in the loan documents preserving the claim for attorneys' fees after a foreclosure judgment. In this regard we observe that

the debtor's waiver in the mortgage of the "benefit" of certain laws hardly
can assist Fleet with respect to section 506(b) as that section in allowing a
creditor to obtain attorneys' fees in excess of those it otherwise could
recover surely is not a law enacted for the benefit of a mortgagor. Thus,
Fleet, is limited to recovering its "reasonable" attorneys' fees, which were
determined through the application of the state court rule in the state court
proceedings, as the mortgage or other documents simply do not provide
that the provision for reasonable fees in the mortgage renders inapplicable
the ordinary application of the merger doctrine. Id at ____.

The rule applies to all fees incurred by the mortgagee during the pendency of the
foreclosure. The result is the same in cases where the mortgage is cured or paid off prior
to the entry of the final judgment. *National City Mortgage v. Smith*, 324 NJ Super 509
(Ch Div 1999). The New Jersey Fair Foreclosure Act *NJSA 2A:50-53* provides that in the
event of a default the amount of attorneys fees and costs to be charged to the borrower to
cure the default are limited by the court rule. *NJSA 2a:50-57* states:

> (3) pay or tender court costs, if any, and attorneys' fees in an amount
> which shall not exceed the amount permitted under the Rules Governing
> the Courts of the State of New Jersey;

The law in New Jersey is clear. The Court rules are an absolute cap to the amount
a lender can charge to the borrower for attorney's fees and costs in a defaulting mortgage.
The Court rule is clear "**in no case shall the fee allowance exceed the limitation of this
rule"**. As a matter of law the Defendant Countrywide has violated the rules of court.

**b) The costs of suit charged by the Defendant are in violation of the**

**New Jersey Law.**

In a foreclosure action in New Jersey, the Statutes and  Rules of Court limit the
amount a mortgagee can charge to the borrower to recoup the attorney's fees and costs of

suit in the action. Search fees are limited in the New Jersey Court Rules by *R 4:42-10(a)* which states:

> (a)  Fees Allowable: In an action for the foreclosure of a mortgage or tax certificate or for partition and sale of realty, the court or the clerk may, as a matter of discretion, tax as part of the taxable costs all legal fees and reasonable charges necessarily paid or incurred in procuring searches relative to title of the subject premises, provided that the minimum fee shall be $75 and the maximum fee shall be $500, If however, 1% of the amount found due plaintiff is more than $75 and less than $500, such 1% shall be the maximum fee.

The Defendant's charges for costs  were in excess of the amount allowed pursuant to New Jersey Statutes including but not limited to

a)      *NJSA 22A:2-10* which allows costs of an attorney fee in a foreclosure of $50.00;

b)      *NJSA 22A:2-10* which allows costs for a writ of execution of $10.00;

c)      *NJSA 22A:2-8* which allows the filing fee of $200;

d)      *NJSA 2A:15-13* which allows a maximum of $50 for the filing of the  lis pendens;

e)      *NJSA 22A:2-8* which allows a maximum of $35 for service of process per defendant;

f)      *NJSA 22A:2-8* which allows for the actual costs of service of process by publication;

g)      *NJSA 22A:2-8* which allows for the actual costs of service of process by mail;

In the instant case, the Defendant has sought and was paid by the Plaintiff for search fees in excess of that amount and fees to which they were not entitled. The final

judgment allowed a total of $2181.42 in costs and attorneys' fees. Countrywide

demanded and was paid attorneys' fees and costs of $3823.44.

### c. The amounts demanded are in violation of the FHA regulations.

The mortgage is a FHA mortgage subject to the regulations of the Secretary. The

note and mortgage both provide language which limit the amount of attorneys fees and

costs the Lender may require a Borrower to pay.  In the instant case, the mortgage note

provides in paragraph 7(C)" If Lender has required immediate payment in full, as

described above, Lender may require Borrower to pay costs and expenses including

reasonable and customary attorneys' fees for enforcing this note to the extent not

prohibited by applicable law."

The mortgage provides in paragraph 10 that "Borrower has a right to be reinstated

if Lender has required immediate payment in full because of Borrower's failure to pay an

amount due under the Note or this Security Instrument. This right applies even after

foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower

shall tender in a lump sum all amounts required to bring Borrower's account current

including, to the extent they are obligations of Borrower under this Security Instrument,

foreclosure costs and reasonable and customary attorneys' fees and expenses properly

associated with the foreclosure proceeding."

The FHA regulations *24 CFR 203.552(b)* provides that "*reasonable and

customary* fees must be predicated upon the actual cost of work performed including out-

of-pocket expenses. Directors of HUD Area and Insuring Offices are authorized to

establish maximum fees and charges which are reasonable and customary in their areas.

Except as provided in this part, no fee or charge shall be based on a percentage of either the face amount of the mortgage or the unpaid principal balance due on the mortgage."

The Secretary by regulation effective December 1, 1998 defined reasonable and customary attorneys' fees in New Jersey to be capped at $1000.00. The figure was increased to $1300 effective October 1, 2001. The figure was last increased to $1350 effective September 1, 2005.

In the final judgment of foreclosure dated June 4, 2002, there was requested a total fee of $1597.42; $1547.52 based upon a percentage of the unpaid principal balance due on the mortgage plus the statutory minimum of $50. This fee was in $297.42 in excess of the amount allowed under the applicable FHA regulations.

**d) The amount demanded was in excess of the amount in the final**

   **judgment of foreclosure.**

On or about June 4, 2002, an uncontested final judgment was entered in favor of the Defendant, Washington Mutual. (Exhibit A &B) The judgment provided for total costs of $2189.42 itemized as follows:

| | | |
|---|---|---|
| i) | Attorney's allowance by statute | $ 50.00 |
| ii) | Filing fees paid to clerk | $ 175.00 |
| iii) | Counsel fee allowed under R.4:42-9 | $1597.42 |
| iv) | Sheriff's fees for service | $ 0.00 |
| v) | Search costs allowed under R.4:42-10 | $ 345.00 |
| vi) | Cost of filing Lis Pendens | $ 3.00 |
| vii) | Other | $ 12.00 |

With the entry of the final judgment of foreclosure, the amount of attorneys' fees and costs become res judicata. "Upon judgment of foreclosure, the debt instrument and the mortgage instrument merge, which finalizes the amount of the debt and precludes any claim by the mortgagee for the collection of more than is due on a single instrument." *Liberty Mutual Fire Ins. Co. v. Alexander,* 374 N.J. Super. 340, 354 (App. Div. 2004) quoting *Deshler v. Holmes*, 44 N.J. Eq. 581, 584-88, 18 A. 75 (E. & A.1888).  The court must hold as a matter of law that the Defendants  were entitled to only $2189.42 in attorneys' fees and costs and that the Defendants are precluded from requesting additional monies absent an amendment to the foreclosure judgment.


**IV.     The Defendant's reliance upon the entire controversy doctrine is flawed.**

The Defendant argues that the Plaintiffs' claim must be dismissed as they were not raised during the  foreclosure proceeding.  The whole argument is legally and factually flawed.  First, the doctrine does not apply to foreclosure actions; second, the cause of action arose after the entry of the 2002 foreclosure judgment; third the Defendant's continuing course of conduct from 2002 through 2007 provides an independent basis for suit.

The entire controversy doctrine as it applies to foreclosure actions is codified in *R:4:64-5*, which states:

> "Unless the court otherwise orders on notice and for good cause shown, claims for foreclosure of mortgages shall not be joined with non-germane claims against the mortgagor or other persons liable on the debt.  Only germane counterclaims and crossclaims may be pleaded in foreclosure actions without leave of the court."

The key to the entire controversy doctrine is that the cause of action be known at the time of the institution of the foreclosure proceeding.  This concept is clearly stated by the court in the case relied upon by the Defendant, *Ryno, Inc. vs. First National Bank of South Jersey,* 208 N.J. Super. 562 at 570 (App. Div. 1986).

> "We think it clear that any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in foreclosure."

*Ryno* was decided prior to the change in R 4:64-5, which added the requirement that a counterclaim must be "germane" to be plead without leave of the court.  The rule defines non-germane claims as follows:

> "Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees."

In the instant case, there was one foreclosure action. The issue of overcharges occurred after the filing of the action for foreclosure.  Of the utmost importance is the Defendant's actions following the 2002 foreclosure judgment.  The final judgment in the foreclosure was entered on August 1, 2002. (Exhibit A)  The reinstatement quotes were provided in 2006, ( Exhibits B & C), over four full years later.  There can be no question that the issues raised by the Defendant's actions in 2006 could not have been brought as a counterclaim to foreclosure in which a final judgment had been entered in 2002.

In fact *R:4:64-1* states that an action for foreclosure shall be deemed uncontested if none of the pleadings contest the validity or priority of the mortgage or create an issue with respect to Plaintiff's right to foreclose.  Mr. & Mrs. Rivera only had a meritorious

germane defense if she could show that but for the overcharges, she would be current otherwise it is irrelevant.

The purpose of the entire controversy doctrine is to avoid delay, avoid harassment and wasted time of the parties, avoid clogging the courts and to promote fundamental fairness. *Aetna Insurance Co. v. Gilchrist Brothers, Inc.*, 85 NJ 550, 556 (1981). There is no question that the Defendant's actions in 2007 are properly before the court. It is also clear that the actions of the Defendant represent a continuing course of conduct with the Plaintiff from 2002 through 2007. The entire controversy doctrine would require that all of these issues are now properly before the court.

The New Jersey Supreme Court in the case of *Delta Funding v. Harris*, 189 NJ 28, 49 (2006) specifically held that when a consumer must defend a foreclosure action and bring a separate action for damages under the New Jersey Consumer Fraud Act, the attorneys fees and costs incurred in defending the foreclosure action are damages to be included in the Consumer Fraud case.

> Because of the arbitration clause, Harris is compelled to litigate essentially identical CFA claims in court and in arbitration. In that circumstance, Harris should, under *N.J.S.A.* 56:8-19, be eligible for attorney's fees and costs related to the foreclosure proceeding if she successfully asserts defenses based on the CFA in that proceeding. Id at 49

The entire controversy doctrine is an equitable doctrine. Those that seek equity must do equity.

The Defendant, in support of this argument, cites several cases, *LaSalle National Bank v. Johnson, 2006,* WL 55 1563 (Ch.Div. March 3, 2006); *In re Crispino*, 160 BR 749 (D.N.J. Bkrtcy 1993) and *DiTrolio v. Antiles,* 142 NJ 253 (1995). None of these cases apply to the instant case.

In *LaSalle,* the issue by the court was if the answer filed by the Defendant should be stricken.  The answer alleged that the mortgage holder could not proceed with the foreclosure for violating HUD regulations.  The court did not strike the answer as the allegation if true, would defeat the Plaintiff's right to foreclose.  This simply is not the instant case.

*Crispino* does not apply.  The issue in *Crispino* concerned a collateral attack on a default judgment on a secured note in a bankruptcy filing.  Unlike the foreclosure in the instant case, the action in *Crispino* was filed and heard in the Law Division, an action without the limitations of *R.4:64-5*.

In *DiTrolio*, the Plaintiff sought to bring a second action after the first action had been tried to a conclusion. This was the key factor considered by the court. "Crucial to our holding were the facts that the first action, which involved numerous parties, attorneys, and witnesses was vigorously litigated and involved a year of extensive discovery." *DiTrolio*, *supra*, 142 N.J. at 278. In the instant case, the issue as admitted by the Defendant was never litigated.

As a matter of law the Defendant's motion to dismiss must be denied.


**V.    The *Rooker-Feldman Doctrine is inapplicable to the instant case.***


The Honorable Jose L. Linares summarized the law of the Rooker-Feldman doctrine in the recent case of *Zahl v. NJ Dept. of Law and Pubic Safety,* 2008 U.S. Dist. Lexis 24022,  Civil Action No. 06-3749:

The *Rooker-Feldman* doctrine, so named due to its arising out of the cases *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), serves as a jurisdictional bar to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). The doctrine recognizes that the Supreme Court of the United States alone has received a Congressional grant of authority under 28 U.S.C. 1257 to hear appeals from state courts, and that lower federal courts lack the power to undo state court judgments. *Exxon Mobil Corp*., 544 U.S. at 292.

A federal district court, however, is not divested of jurisdiction merely because a litigant brings a claim in federal court that relies on the same facts as a concurrent or previous state case. Id. In parallel or concurrent proceedings, the Supreme Court has held that the *Rooker-Feldman* doctrine does not replace the application of preclusion or abstention principles in cases where a litigant has some claim independent of those decided in the state court ruling. Id. at 284, 292-293. See also *Lance v. Dennis*, 546 U.S. 459, 466, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (2006) (warning against conflation of preclusion principles with Rooker-Feldman). The doctrine only applies where the subsequent federal case seeks redress of injuries caused by the state court judgment. *Exxon Mobil Corp*., 544 U.S. at 283; *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006). Furthermore, Rooker-Feldman is in general only applicable against the same parties present in the state court litigation. *Lance*, 546 U.S. at 466; *Three Keys, Ltd. v. SR Utility Holding Co.*, 464 F. Supp 2d 388, 395 (D.N.J. Dec. 8, 2006).

This Circuit has described the claims falling under the *Rooker-Feldman* bar as those "actually litigated or 'inextricably intertwined' with adjudication by a state court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006). "[A] federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under Feldman, [w]here federal relief can only be predicated upon a conviction that the state court was wrong." *Taliaferro*, 458 F.3d at 192 (internal quotations omitted). A claim may be "inextricably intertwined" with a state court judgment "even if it was not raised in the state court." Id. at 193.

The Defendant argues at great length that the *Rooker-Feldman* doctrine

prevents the court from reviewing a state court judgment.  The argument is

specious at best. First, as noted previously there have been no adjudications of the

amounts due. Second, the proof of claims and subsequent payoff demanded by the

Defendant were in excess of the amount due pursuant to the foreclosure judgment.

Third, the Plaintiffs' injuries arose after the entry of the foreclosure judgment.

The Court does not have to disturb the state court finding in order to proceed with the instant litigation. The foreclosure judgment speaks for itself. " When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court.  See, *e.g.,  McClellan* v. *Carland*, 217 U.S. 268, 282, 54 L. Ed. 762, 30 S. Ct. 501 .

   As a matter of law, the Defendant's motion to dismiss must be denied.


**VI.     The Plaintiffs' claims are not judicially estopped for failing to raise their claims in the Bankruptcy.**

   Defendants seek dismissal of Plaintiff's complaint, arguing that because they did not reveal the existence of this  claim in their bankruptcy filings they are estopped from pursuing it. Judicial estoppel is intended to prevent a litigant from asserting a position inconsistent with one that it has previously asserted in the same or in a previous proceeding. In re Chambers Dev. Co., Inc., 148 F.3d 214, 229 (3d Cir. 1998). "It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts." Id. Three elements comprise the doctrine of judicial estoppel: (1) "the party to be estopped must have taken two positions that are irreconcilably inconsistent"; (2) the party took the inconsistent positions "in bad faith-i.e., with intent to play fast and loose with the court"; and (3) application of the doctrine is "tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 319-20 (3d Cir. 2003) (internal citations omitted). In the Third Circuit, a rebuttable

inference of bad faith arises when the plaintiff had knowledge of the claim and "a motive

to conceal the claim in the face of an affirmative duty to disclose." Id. (citing Oneida

Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416-18 (3d Cir. 1988)); see also

Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 363 (3d Cir. 1996).

The Third Circuit addressed the issue in the case of *Montrose Med. Group*

*Participating Sav. Plan v. Bulger et al.*, 243 F.3d 773, 780 (3d Cir. 2001)  Judicial

estoppel may be imposed only if: (1) the party to be estopped is asserting a position that

is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the

party changed his or her position in bad faith, i.e., in a culpable manner threatening to the

court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the

affront to the court's authority or integrity. *Montrose*, 243 F.3d at 777-78. A district court

may not invoke judicial estoppel without conducting these three inquiries. Id. at 780 n.4

(discussing third element). In *Montrose*, the court also held that "a party has not

displayed bad faith for judicial estoppel purposes if the initial claim was never accepted

or adopted by a court or agency." Id. at 778. The court further elaborated on the bad faith

requirement and explained that a specific finding of bad faith must be made:

Inconsistencies are not sanctionable unless a litigant has taken one or both positions "in

bad faith--i.e., with intent to play fast and loose with the court." *Ryan Operations G.P. v.

Santiam-Midwest Lumber Co*., 81 F.3d 355, 361 (3d Cir.1996). A finding of bad faith

"must be based on more than" the existence of an inconsistency,

In the instant case, the cause of action arose after the filing of the Bankruptcy

petition. The amount in controversy as to the instant Plaintiffs is $ 1,642.02 which

represents the amount of the overcharge. As is often the problem in consumer

cases, the amount of the individual damages are too small to allow for individual adjudication.  Even with treble damages, the Plaintiffs individual claims would be less than their statutory exemption. As noted previously, there has been no adjudication of the claims at issue. The Plaintiffs have taken no position in bad faith as the court held in *Montrose*, the initial claim has never been adopted or accepted by any court. There is a question if the Plaintiffs were even aware that a cause of action existed for the Defendant's action prior to consultation with current counsel. Frankly, it is the Defendant who has been playing "fast and loose with the court." The Defendant seeks and receives a final judgment of foreclosure in the state court for an amount certain and then in the subsequent bankruptcy proceeding seeks amount in excess of that already determined in the state court. The court should not allow the Defendant to benefit from its clearly illegal conduct. Judicial estoppel should not be allowed to be used to shield such behavior.

   As a matter of law, the Defendant's motion to dismiss must be denied.

**VII.    The Plaintiffs claims were abandoned by the Bankruptcy Trustee.**

   The Defendant has argued that the Plaintiffs claims can only be prosecuted by the Trustee. As reflected in the PACER docket report, the Trustee abandoned his interest in the Plaintiffs home including the mortgage and any equity on February 29, 2008. (See Defendants Exhibit J). To the extent that the estate maintains an interest in this litigation the proceeds less any applicable exemption can be paid to the estate.  Based on the allegations of the complaint the Plaintiffs' sole claim is less than $10,000.00.

**VIII.   The Defendants motion to dismiss Count I the breach of contract claim should be denied.**

The Defendant argues that the Plaintiffs have failed to plead the specific contractual provisions which were breached. The parties entered into a loan contract in the form of a mortgage and note. It is well settled that the basis for a lender to be reimbursed its attorneys fees and costs emanates from the terms of the contract.

> . It should be noted that the right to a fee in a foreclosure action "emanates from the fact that mortgage loans, as a matter of course, place specific contractual obligations on the mortgagor to bear the fees incurred by the mortgagee upon the need to foreclose or collect." *Stewart Title Guaranty Company v. Lewis,* 347 N.J. Super. 127, 788 A.2d 941, 945 n.8 (Super. Ct. Ch. Div. 2001)

In the instant case, the loan documents provide the contract. The fact that the Defendant overcharged the Plaintiff is a breach of the contract. As noted above, the amount of the fees to be allowed is capped by court rule.

As a matter of law , the Defendants motion to dismiss Count I of the compliant must be denied.

**IX.   The Economic Loss doctrine does not bar the Plaintiff's claim.**

The Defendant argues that Mr. & Mrs. Rivera can not maintain a cause of action for negligence and contract. The Defendant has argued that the courts have held that tort claims are barred as a matter of law where a contract between the parties exists, and where the plaintiff's alleged damages are limited to economic loss springing from that contract.

The instant case is more than about the loan. The impact to Mr. & Mrs. Rivera concerns their credit worthiness, the emotional upset from the Defendant's

egregious actions and possible loss of their home in the foreclosure in addition to any contract damages.

The New Jersey Supreme Court addressed a similar issue in the case of *NCP Litigation Trust v. KPMG, LLP*., 187 NJ 353 (2004). This was a case concerning accounting irregularities. The complaint alleged causes of action for breach of contract, and negligence among others against the accountants, KPMG.. The court allowed the case to go forward on both theories.  As the court noted:

> At the outset, we observe that this matter is before us on a *Rule* 4:6-2(e) motion to dismiss. On such motions, a trial court should grant a dismissal "in only the rarest of instances." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 772 (1989) . A court's review of a complaint is to be "undertaken with a generous and hospitable approach," *id.* at 746, and the court should assume that the nonmovant's allegations are true and give that party the benefit of all reasonable inferences, *Smith v. SBC Communications Inc.*, 178 N.J. 265, 282 (2004) . If "the fundament of a cause of action may be gleaned even from an obscure statement of claim," then the complaint should survive this preliminary stage. *Craig v. Suburban Cablevision, Inc.*, 140 N.J. 623, 626 (1995) (citation omitted).

The Plaintiffs' Count II alleges that the Defendant, Countrywide, was negligent in the servicing of the Plaintiffs' mortgage.  The Defendant argues that this is an imposition of an extra-contractual duty.  The Plaintiffs' position is that Countrywide had a duty to provide accurate statements in accordance with the law.   The scope of the duty is reflected in the FHA  regulations which limit reimbursement of attorneys fees and requires that the charges be actually incurred; as well as the various New Jersey statutes and court rules noted previously.

As a matter of law, the Defendant's motion must be dismissed and judgment entered against the Defendant in favor of the Plaintiffs.

**X.     The Plaintiffs have pled a cause of action for breach of the duty of good faith and fair dealing  by Chase.**

Countrywide argues that the Plaintiffs have failed to adequately plead an action for the breach of the contractual duty of good faith and fair dealing.  Chase made this same exact argument which this court rejected in its decision in the case of *Barrows v. Chase Manhattan Mrtg. Corp,* 465 F. Supp. 2d 347, 366 (DNJ 2006).

> MERS and Chase's motion to dismiss for lack of standing must be denied because Plaintiff has alleged that they had an implied duty to insure that proper attorneys fees were collected or *attempted* to be collected. Plaintiff's contention that Defendants had a duty to insure the propriety of any attempt to collect attorneys fees negates Defendants' argument that Plaintiff needed to have actually paid such fees. Therefore, to the extent that such an implied duty can be read into the contract, Plaintiff has asserted an injury sufficient to confer standing.

Unlike the Plaintiff in *Barrows,* Mr & Mrs. Rivera have paid the sums demanded by Countrywide in full.

"Every contract in New Jersey contains an implied covenant of good faith and fair dealing." *R.J. Gaydos Insurance Agency, Inc. v. National Consumer Insurance Co.*, 168 NJ 255, 276 (2001).  See *Pickett v. Lloyd's*, 131 NJ 457, 467 (1993); *Onderdankm v. Presbyterian Homes of New Jersey*, 85 NJ 171, 182 (1981); *Bak-A-Lum Corp. v. Alcoa Bldg. Prods., Inc.*, 69 NJ 123, 129-30 (1976).  This covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Ass'n Group Life, Inc. v. Catholic War Veterans of the U.S.*, 61 NJ 150, 153 (1972).

> "The standard of conduct contemplated by the unconscionability clause is 'good faith, honesty in fact and observance in fair dealing' and the need for application of that standard 'is most acute when the professional seller is seeking the trade of those most subject to exploitation, the uneducated, the inexperienced and the people of low incomes.'" *Associates* at 278.

In the instant case, the Defendant seeks funds to which they were not otherwise entitled.  It is axiomatic that to seek money to which they are not legally entitled is a violation of the covenant of good faith and fair dealing. See *Whittingham I* and *Barrows*.

In support of its position the Defendant relies on the unreported case of *Marguiles v. Chase Manhattan Mortgage Corp*., 2005 WL 2923580, (App. Div. Nov. 7, 2005). *Marguiles* concerned a misapplication of payments by Chase.  Unlike the instant case where Countrywide is seeking funds they were not otherwise entitled. This holding is directly at odds with the New Jersey Supreme Court holding in *Metlife v. Washington Ave. Assoc.,* 159 NJ 484 (1999) where the court held that the failure to properly account and apply payments to a mortgage balance does violate the covenant of good faith and fair dealing.

> The final issue in this appeal involves an accounting for the rents collected directly from the tenant by MetLife. The Appellate Division held that MetLife's failure immediately to apply the rents to the principal balance due or to credit Washington Avenue for interest accrued on those rents violated the implied covenant of good faith and fair dealing. The court remanded for a determination of any credit due to Washington Avenue. We agree with that conclusion.  *Id. at* 502.

As a matter of law Countrywide's motion to dismiss count III must be denied and judgment entered.

**XI  The Defendant's motion to dismiss count IV for unjust enrichment should be denied.**

Under New Jersey law, there are two basic elements to a claim for unjust enrichment. First, the plaintiff must demonstrate "both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.,* 641 A.2d 519, 526 (N.J. 1994). To establish the injustice, the plaintiff must

further demonstrate "that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id.

Countrywide was unjustly enriched when the Plaintiffs and other foreclosure debtors are overcharged for attorneys fees and costs. The Defendant has engaged in a scheme to engage in unfair and deceptive acts. Due to the fact that any individual claim is relatively small, individual redress is difficult, if not impossible. To the extent of any excess fees and costs, Countrywide benefits. In this case the overcharges are in clear violation of New Jersey law  and FHA regulations. All defendants have been unjustly enriched.

The Defendant argues that as the parties have a contract and therefore an action for unjust enrichment cannot proceed. The argument is flawed. First, the Plaintiff may plead in the alternative. Either the Defendant violated the contract (which is denied by the Defendant) or the Defendant's action were a violation in quasi contract. In order to dismiss this count the court must hold as a matter of law that the violations are a breach of contract. It is submitted that such a holding may be premature until discovery is complete.

Second, the parties may have both an implied contract and an express contract both of which are actionable. "The existence of an express contract, however, does not preclude the existence of an implied contract if the implied contract is distinct from the express contract." *Baer v Chase,* 392 F.3d. 609, 617 (3rd Cir 2004) quoting *Atlas Corp. v. United States*, 895 F.2d 745, 754-55 (Fed. Cir. 1990) ; *see  Chase Manhattan Bank v. Iridium Africa Corp.*, 239 F. Supp. 2d 402, 409 (D. Del. 2002)

As a matter of law the Defendant's motion to dismiss Count  IV should be denied.

**XII.    The Plaintiff has pled a cause of action for violation of the New Jersey Consumer Fraud Act.**

The Defendant argues that the Plaintiffs have failed to adequately plead a cause of action under the New Jersey Consumer Fraud Act. The motion must as a matter of law be denied. The District Court in *Whittingham I* based on a similar pleading rejected this argument.

> Plaintiff alleges "unconscionable conduct" and "fraud" in her complaint. Moreover, Plaintiff alleges that this conduct was in connection with MERS's and HSBC's subsequent performance of the contract related to the mortgage (i.e., sale of real estate). <u>See</u> *Weiss v. First Unum Life Ins. Co.*, No. 05-5428, 2007 U.S. App. LEXIS 7613, at *34 (3d Cir. Apr. 3, 2007) ("CFA covers fraud both in the initial sale (where the seller never intends to pay), and fraud in the subsequent performance (where the seller at some point elects not to fulfill its obligations) .") . Therefore, the Court finds that Plaintiff adequately stated a cause of action under the CFA, and the Court accordingly denies MERS's and HSBC's motion to dismiss count XIII.

The elements of a claim for Consumer Fraud are as follows:

> "To state a claim under the NJCFA, a plaintiff must allege each of three elements (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *[Frederico v. Home Depot,* 507 F.3d 188, 202 (3d Cir. 2007)] (citing *Cox v. Sears Roebuck & Co*., 138 N.J. 2, 647 A.2d 454 (1994)). The NJCFA defines unlawful practice broadly, as including but not limited to unconscionable commercial practice, deception, fraud, false promise, false pretense, misrepresentation, or knowing concealment N.J.SA. 56:8-2.*Construcciones Haus Soceidad v. Kennedy Funding, Inc*., No. 07-0392, 2008 U.S. Dist. LEXIS 33685, at *14 (D.N.J. Apr. 24, 2008). "The pleading requirements of Rule 9(b) apply to . . . NJCFA claims as well as . . . common law fraud claims." *Slim CD, Inc. v. Heartland Payment Sys., No*. 06-2256, 2007 U.S. Dist. LEXIS 62536, at *32 (D.N.J. Aug. 22, 2007) (citing *F.D.I.C. v. Bathgate,* 27 F.3d 850, 856 (3d Cir. 1994)).

In the instant case, the Plaintiff has pled each element.  The Plaintiff alleged the following facts in the  complaint:

14.   The FHA insured mortgage and note dated January 31, 2000 executed by the Plaintiffs are documents signed under seal which were originated by Shelter Mortgage, LLC d/b/a Guaranty Northeast Mortgage.

15.   Shapiro filed a foreclosure proceeding on behalf of Countrywide and WaMu, against the Plaintiffs on the mortgage on or about December 11, 2001 under Docket No. F-230 30-01.

16.   A final judgment of foreclosure was entered on June 4, 2002 in the amount of $144,742.42 plus a counsel fee of $1,597.42. Exhibit A.

17.   The total allowed taxed costs including attorney fees was $2,181.42. Exhibit B.

18.   The Plaintiffs subsequently filed a Chapter 13 Bankruptcy.

19.   The Defendants filed a proof of claim in the amount of $24,652.69 in arrears plus a principle balance of $130,289.99 dated May 24, 2004. Exhibit C.

20.   WaMu participated in the preparation of the proof of claim statement.

21.   The proof of claim demanded attorney fees of $1,925 and costs of $1,898.44; a total of $3,823.44.

22.   Plaintiff paid the sums demanded in full on or about July 2007.

23.   The Defendants then dismissed the foreclosure action with prejudice and discharged the mortgage and Lis Pendens.

FACTUAL ALLEGATIONS:
DEFENDANT'S WRONGFUL CONDUCT

24.   At all times relevant hereto, COUNTRYWIDE, WAMU and Shapiro have engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law.  The components of this scheme involve common tactics in which the Defendants have been overcharging defaulting borrowers of residential mortgages in the following manner, including but not limited to:

a)   they charged attorneys fees and costs in excess of those actually incurred;

b)   costs of suit charged to the Plaintiff and class was excessive in violation of statute and court rule; Specifically, R 4:42-10 limits the taxable costs for searches at a minimum of $75 to 1% of the amount due but in no case more than $500. In the instant case the amount allowed would be $500.

c)   recording fees charged were excessive of the actual fee; i.e. to file and discharge a lis pendens the fee was $60.00

d)   Overcharging for the service of process. The statutes and court rules limit the reimbursement to a maximum of $35 per defendant.

e)   Charging the borrower for obtaining a certificate of regularity which is not a fee which can be charged to a borrower.

f)   FHA regulations limit attorneys fees see 24 CFR 203.552(B) to a maximum of $1350 in New Jersey.

g)   In addition the Plaintiffs contend that the defendants overcharged the class as follows:

a.   over charging of sheriff's commissions by failing to properly credit deposits;

23

b. charging excessive interest by continuing to charge the contract rate after a judgment of foreclosure was entered when entitled to the judgment interest rate;

The first element to allege is unlawful conduct by the Defendant. Para. 24 describes the unlawful conduct of the Defendant. Para24 alleges directly that the amount demanded by the Defendant in the payoff was in excess of the amount allowed by contract and the law. The various laws and regulations are reflected throughout the counts of the complaint. The improper demand is reflected in the proof of claim dated May 27, 2004. (Exhibit C of the complaint). The Defendant demanded and was paid costs and fees of $3823.44 which was $ 1642.02 over the amount allowed in the judgment.

The second element to allege is that the Plaintiff suffered an ascertainable loss. Para.85 states that "Plaintiff suffered an ascertainable loss of at least $575.00.

The third element is that there is causation between the Plaintiff's ascertainable loss and the actions of the Defendant. In the instant case the Plaintiff paid the amount in full as demanded by the Defendant to payoff the mortgage. Para 22.

The purpose of Rule 9(b) is for the Defendant to be on notice as to basis for the Plaintiff's complaint. As a matter of law, the Defendant's motion to dismiss count VIII must be denied.

### XIII. The Plaintiff has pled a cause of action for violation of the New Jersey Truth In Consumer Contract, Warranty and Notice Act.

The Plaintiff has pled a cause of action under the *New Jersey Truth-In-Consumer Contract, Warranty and Notice Act*. The law provides:

**56:12-15. Consumer contract, warranty, notice or sign; violation of legal right of consumer or responsibility of seller, lessor, etc.; prohibition; exemptions.**

No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes. The provisions of this act shall not apply to residential leases or to the sale of real estate, whether improved or not, or to the construction of new homes subject to "The New Home Warranty and Builders' Registration Act," P.L.1977, c. 467 (C. 46:3B-1 et seq.).

Countrywide argues that the act does not apply. The argument fails for several reasons. It should be noted that the right to a fee in a foreclosure action "emanates from the fact that mortgage loans, as a matter of course, place specific contractual obligations on the mortgagor to bear the fees incurred by the mortgagee upon the need to foreclose or collect." *Stewart Title Guaranty Company v. Lewis*, 347 N.J. Super. 127, 788 A.2d 941, 945 n.8 (Super. Ct. Ch. Div. 2001) To the extent that the Defendants argue that the terms of the mortgage and note entitle them to be reimbursed for the attorneys fees and costs in the foreclosure in excess of the amount allowed under New Jersey law and FHA regulations, those clauses violate the act. Second, the payoff and proof of claim are notices from the lender to the borrower of the amount due to satisfy the loan in full. In fact, RESPA 12 USC 2605 provides that when the borrower makes an inquiry concerning its account, the servicer is to transmit a "written notification". See 12 USC 2605 (e). *Black's Law Dictionary 4th Edition* (1968) defines Notice as "Information, the result of

observation, whether by the senses or the mind; knowledge of the existence of a fact or state of affairs; the means of knowledge." The payoff letter is information on the amount due to satisfy the loan. The proof of claim is information on the amount due to reinstate the loan. The plain meaning of the statute is that the creditor may not give any information which violates the Act. The payoff letter itself is a writing which violates the statute by including a demand for monies not legally due.

This same conclusion was reached by the New Jersey Appellate Division in the case of *Smerling v. Harrah's*, 389 N.J. Super. 181 (App. Div. 2006). In that case, the court held that advertising by the casino which contained false, deceptive or misleading information was actionable under the *Truth-in-Consumer Contract, Warranty and Notice Act*. As the New Jersey Appellate Court held in *Bosland v. Warwick Dodge,* 396 NJ Super 267 ( App Div 2007) that proving a case under the New Jersey Consumer Fraud Act will satisfy a cause of action under this act. The Plaintiff has pled a prima facie case under the Consumer Fraud Act. Countrywide provided the proof of claim and payoff letters which demanded excessive attorneys' fees and costs in violation of New Jersey law and FHA regulations. The Plaintiff paid the monies demanded in full.

The Defendants seek to rely upon the case of *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347 (D.N.J. 2006). The case ignores the agency relationship between the parties. As the New Jersey Supreme Court held in the case *NCP Litig. Trust v. KPMG, LLP,* 187 NJ 353, 366 (2005)

> Under the doctrine, a third party may invoke imputation as a defense against a principal seeking to enforce an agreement when the principal's agent fraudulently induced the third party to enter into that agreement. In other words, an agent's fraud is imputed to a principal, thereby barring the principal from suing the third party. *See Gordon v. Cont'l Cas. Co.*, 319 Pa. 555, 181 A. 574, 578 (1935) ("A principal who sues to enforce a

contract is bound by the representations made by his agent, in order to induce the opposite party to make it.") (citation omitted). Courts have found that it is unfair to allow a principal to enforce an agreement in such a situation, even when both the principal and the third party have acted in good faith. The party who selected the agent--the principal--should bear the loss stemming from the agent's misconduct..

Simply stated, the principal is liable for the actions of its agent. In the instant case, the Plaintiff has alleged that Countrywide helped to prepare and send the improper proof of claim and payoff letter. " Regardless of the terminology, the purpose of the doctrine is the same--to protect innocent third parties with whom an agent deals on the principal's behalf. *See Nischne v. Firestone Tire & Rubber Co.*, 116 N.J. Eq. 305, 308, 173 A. 341 (Ch.Ct.1934) ("The rule of  implied notice is invocable to protect the innocent, never to promote an injustice."). Principals thereby are prevented "from obtaining benefits through their agents while avoiding the consequences of agent misdeeds. " *Id at 566* The purpose of the New Jersey *Truth-in-Consumer Contract, Warranty and Notice Act*  is remedial in nature to prevent wrongs to consumers. Just like the New Jersey *Consumer Fraud Act*, the *Truth-in-Consumer Contract, Warranty and Notice Act* is to be liberally construed given the broad scope of wrongs and remedies covered by the statute.

As a matter of law, the Defendant's motion to dismiss Count IX must be denied.

**XIV.   The voluntary payment doctrine does not apply to the Plaintiffs.**

The Defendant argues that all of the Plaintiffs' claims are barred by the voluntary payment doctrine.  The argument is flawed.

The Third Circuit addressed the issue of the voluntary payment doctrine.

> "*It is a settled principal of [New Jersey] law that where an individual under a mistake of law, but with full knowledge of the facts, voluntarily pays money on a demand not legally enforceable against him, he can not recover it in the absence of unjust enrichment, fraud, duress or*

*improper conduct on the part of the payee."* <u>In re: Resorts, Inc.,</u> 181 F. 3d 505, 511 (3d Cir 1999)

In the instant case the payment was not made with full knowledge of the facts. The disclosures from the Defendants were not complete.  There was simply a demand for payment, $2593.10 in foreclosure attorney fees and  costs. There is no doubt that the demands by the Defendants  are the result of unjust enrichment, fraud, duress and improper conduct on their part.

The NJ Fair Foreclosure Act NJSA 2A:50-67 specifically provides that "the debtor may tender, and a lender may accept, partial payment of any sum owing and due without either party waiving any rights".  The Voluntary Payment Doctrine simply does not apply.

The Defendants rely upon the case of *Dillon v. U-A Coumbia Cablevison of Westchester, Inc.*, 740 NYS2d 396 (2d 2002) to support their position. The case simply does not apply. The issue of voluntary payment is grounded in State law. The case is from  and interprets New York law.  In the instant case, the actions of the Defendants fly in the face of New Jersey law. In fact the rights of the Plaintiffs under the Fair Foreclosure Act can not be waived.  *NJSA 2A:50-61*  states:

2A:50-61. Waivers against public policy, unlawful, void.

*Waivers by the debtor of rights provided pursuant to this act are against public policy, unlawful, and void, unless given after default pursuant to a workout agreement in a separate written document signed by the debtor.*

The Legislature has made it clear that attempts to waive the rights of debtors under the act are against public policy, unlawful and void. In the instant case it is those rights the Plaintiffs seek to enforce.

The Legislature with the adoption of the New Jersey Truth in Consumer Contract, Warranty and Notice Act specifically held that the rights of consumers can not be waived. *NJSA 56:12-15* states

> 56:12-15. Consumer contract, warranty, notice or sign; violation of legal right of consumer or responsibility of seller, lessor, etc.; prohibition; exemptions.
>
> *No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes. The provisions of this act shall not apply to residential leases or to the sale of real estate, whether improved or not, or to the construction of new homes subject to "The New Home Warranty and Builders' Registration Act," P.L.1977, c. 467 (C. 46:3B-1 et seq.)*

*NJSA 56:12-16* states:

> 56:12-16. Provision for waiver of rights under act; nullity; statement of provisions void, unenforceable or inapplicable in New Jersey.
>
> *No consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act. Any such provision shall be null and void. No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; provided, however, that this shall not apply to warranties.*

It is clear that the public policy in this state is to protect consumers. The idea that the payment of an improper and/or illegal demand by a consumer waives the consumer's right to relief has been overturned by the Legislature.  Specifically, NJSA 2A:32-1 states that whenever there is fraud in the execution of a contract, the person defrauded at anytime thereafter may institute a civil action to recover the money owing even if the money is not due or payable.

The New Jersey Supreme Court on February 19, 2009 entered a decision in the case of *Bosland v. Warnock Dodge (*A-97-07) concerning two of the pending issues before the court: the New Jersey Consumer Fraud Act and the New Jersey Truth-In-Consumer Contract, Warranty and Notice Act.

The facts in *Bosland* are very similar to the essential facts of the instant case. The Plaintiff, Rhonda Bosland, purchased a new vehicle from the Defendant, Warnock Dodge. As part of the purchase price of the vehicle the Defendant included a charge of $117 as a registration fee. Her claim was that she was overcharged by the Defendant between $20 and $40 in violation of the applicable automobile regulations. Rather than demanding a refund, the Plaintiff filed suit alleging violations the *New Jersey Consumer Fraud Act* (CFA) and the *New Jersey Truth-In-Consumer Contract, Warranty and Notice Act*. (TCCWNA)

In the instant case, the Plaintiffs were overcharged for attorneys fees and costs of suit by the Defendants when the payoff of the mortgage was calculated in violation of New Jersey Statutes and Court Rules. The Plaintiffs paid the sums requested and subsequently brought suit.

In *Bosland,* the trial court dismissed the consumer fraud count of the complaint reasoning that "Plaintiff never complained about these overages, so it seems counterintuitive to consider these fees unconscionable and an ascertainable loss. Instead these fees were Defendant's profit or fees for processing or handling these papers which Plaintiff, as a consumer, paid without objection" *Id at* 5.

In analyzing the TCCNWA claim, the trial court found that the Plaintiff had failed to establish that the contract had violated any clearly established right as required under the act. *Id at 5.*

The third count of the complaint which alleged unjust enrichment was dismissed because the plaintiff could not provide any evidence that the defendant had received any benefit separate and distinct from the written contract.

The Appellate Division reversed in part and affirmed in part. The Appellate Division affirmed the dismissal of the count for unjust enrichment. The Court reversed the dismissals of the CFA and TCCNWA counts.

The Supreme Court in its decision of February 19, 2009 affirmed the decision of the Appellate Division.  The decision is important in many ways. First, by affirming the Appellate Division concerning the TCCNWA claim, the Court has addressed for the first time elements of proof for a TCCNWA claim. The Appellate Division reinstated the TCCWNA claim holding that proof of the CFA allegations also sufficed to support a claim that the contract violated a clearly established legal right. *Id at* 7.

The Supreme Court rejected the idea that a Plaintiff must seek a refund from Defendant prior to bringing suit. The Court noted that the CFA is a remedial statute. The history of the CFA is one of constant expansion of consumer protection. The Court

construes the CFA broadly, not in a "crabbed fashion." *Id at* 15 [internal citations omitted]

The Court reiterated that for analytical purposes there exist three types of claims under CFA: affirmative acts, claims asserting knowing omissions and claims based on regulatory violations. Intent is not an element if the claims are the result of the defendant's affirmative act or as the result of a violation of a regulation. A violation of a regulation results in strict liability. *Id at 15-16.* Intent is only required in cases based on the defendant's omission. In that case, there must be a showing that the defendant acted with knowledge, and intent is an essential element of fraud.

In applying the law to the Plaintiff's claim the court held that the complaint was based on a claimed regulatory violation, she was not required to prove defendant's intent. *Id at 16.* In such a case, there are only three elements required to establish a prima facie case: 1) unlawful conduct by defendant; 2) an ascertainable loss by Plaintiff and 3) a causal relationship between the unlawful conduct and the ascertainable loss. *Id at* 16 [internal citations ommited]

The Supreme Court reiterated the public policy rationale of the CFA. "When confronted, as we are here, with a plaintiff who asserts that she was the victim of an overcharge which itself is small in amount, and who seeks recovery for herself and on behalf of numerous others with 'nominal' claims, we cannot overlook the reality that, without the remedy the CFA affords, all of those wrongs might go unvindicated." *Id at 22.* "We discern in the CFA a clear expression of the Legislature's intent to empower consumers who seek to secure relief for themselves and for others who may not be aware that they have been victimized." *Id at 23.*

32

In the instant case, the Plaintiffs seek to redress the wrongs not just to themselves but also to others similarly situated.

The Defendants have argued that the Plaintiffs' claims under the CFA and TCCNWA are barred by the voluntary payment doctrine. It is clear from the holding in *Bosland* that simply is not the case. The court noted that the Plaintiffs have paid the overcharge voluntarily with no protest. In rejecting a requirement for the Plaintiffs to request a refund prior to filing suit, the court noted that such a requirement would create a safe harbor for offending merchants. "A merchant could rely on the pre-suit refund demand requirement, boldly imposing inflated charges at no risk, and planning to refund the overcharges only when asked. Such an analysis of the CFA would limit relief by making it available only to those consumers who are alert enough to ask for a refund, while allowing the offending merchant to reap a windfall. We see in the broad remedial purposes of the CFA a strong contrary expression of public policy." *Id at 23.*

Simply stated, if the Defendant is in violation of the CFA, then the Plaintiff can recover as there must be  unjust enrichment, fraud, duress or improper conduct on the part of the Defendant. In that circumstance, the payment is not voluntary. *In re: Resorts, Inc.,* 181 F. 3d 505, 511 (3d Cir 1999).

As a matter of law the Defendant's motion to dismiss under the voluntary payment doctrine must be denied.

**XV.   Any dismissal by the Court should be without prejudice and the Plaintiffs given an opportunity to file an amended complaint.**

In the event, the court should hold that any of the Plaintiffs' pleadings are defective, the court should allow the Plaintiffs an opportunity to file an amended complaint. The Third Circuit held *Shane v. Fauver*, 213 F.3d 113 (3rd Cir 2000) the standard to be used to dismiss a complaint with prejudice.

> The District Court in this case dismissed the plaintiffs' claims with prejudice and without leave to amend. In doing so, the court may have understandably thought that this procedure was mandated by the PLRA. We hold, however, that it is not and that now, as before, in the situation presented here, dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility. The District Court did not test the plaintiffs' various claims against this standard, and we therefore vacate the order dismissing those claims and remand for the District Court to rule in the first instance on whether this standard is met.

In the instant case, Countrywide has not presented any evidence of bad faith, undue delay, prejudice or futility. Many of the issues raised by the Plaintiffs' complaint are areas of law which have not been subject to much litigation. There is no question that the Defendant is on notice on the causes of actions being litigated. In the event the court finds any of the pleadings in the complaint deficient, the Plaintiffs should be allowed to file an amended complaint.

**CONCLUSION**

In the instant case the Plaintiffs have more than suggested a cause of action against Countrywide.  The issue between the parties concerns whether Countrywide could legally collect these fees from Mr & Mrs. Rivera.   As a matter of law, the motion to dismiss must be denied or in the alternative, the Plaintiffs should be given an opportunity to file an amended pleading.

Respectfully submitted,

/s/ Lewis G. Adler, Esquire
Lewis G. Adler, Esquire


/s/ Roger C. Mattson, Esquire
Roger C. Mattson, Esquire