# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| DAVID AND MARIANNE RIVERA,<br>  individually and on behalf of<br>  all those similarly situated | ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) | No. 1:09-cv-00021-JEI-JS |
| WASHINGTON MUTUAL, FSB,<br>COUNTRYWIDE HOME LOANS,<br>SHAPIRO & DIAZ, JOHN DOE<br>SERVICERS 1-100 AND JOHN DOE<br>LAW FIRMS 1-100 | ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

## DEFENDANT COUNTRYWIDE HOME LOANS, INC.'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

## TABLE OF CONTENTS

I.     THE AMENDED COMPLAINT DOES NOT DEMONSTRATE THAT THE FEES AND COSTS AT ISSUE VIOLATED ANY LAW OR COURT RULE. ..........1

II.     THE ENTIRE CONTROVERSY BARS APPLIES TO THE RIVERAS' CLAIMS..........................................................................................4

III.     THE *ROOKER-FELDMAN* DOCTRINE BARS THIS COURT'S REVIEW OF THE FORECLOSURE PROCEEDING. ...................................7

IV.     JUDICIAL ESTOPPEL BARS THE RIVERAS' CLAIMS...........................8

V.     THE BANKRUPTCY TRUSTEE RETAINS SOLE STANDING TO PURSUE THE RIVERAS' FORECLOSURE-RELATED CLAIMS..........................9

VI.     THE RIVERAS ALLEGE NO CONTRACTUAL PROVISION THAT COUNTRYWIDE BREACHED.....................................................10

VII.     THE RIVERAS' NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW. ........11

VIII.     THE DUTY OF GOOD FAITH AND FAIR DEALING CLAIM FAILS BECAUSE THE COMPLAINED OF CHARGES WERE AUTHORIZED BY THE MORTGAGE. ..........................................................12

IX.     THE UNJUST ENRICHMENT CLAIM IS NOT DISTINCT FROM THE CONTRACT CLAIM...........................................................13

X.     THE CONSUMER FRAUD ACT CLAIM SHOULD BE DISMISSED. ..................13

XI.     THE RIVERAS HAVE ALLEGED NO ANY UNLAWFUL CONTRACT OR NOTICE UNDER THE TRUTH-IN-CONSUMER CONTRACT ACT. ...........15

XII.     THE VOLUNTARY PAYMENT DOCTRINE APPLIES TO THE RIVERAS' CLAIMS. ...................................................................16

**CONCLUSION** ....................................................................................Error! Bookmark not defined.

## TABLE OF AUTHORITIES

CASES                                                                                      PAGE

*Ass'n Group Life, Inc. v. Catholic War Vets of the U.S.*, 293 A.2d 382 (N.J. 1972) ...............................................................................................................12

*Ayres-Fountain v. Eastern Savs. Bank*, 153 Fed. App'x 91 (3d Cir. 2005) ..........7, 8

*Barrows v. Chase Manhattan Mortgage Corp.*, 465 F. Supp. 2d 347 (D.N.J. 2006) .................................................................................................................12

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...........................................1, 14

*Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741 (N.J. 2009) ...................................14

*Brown v. Brown*, 506 A.2d 29 (N.J. App. Div. 1986) ...............................................5

*BTD-1996, NPC 1 LLC v. 350 Warren LP*, 784 A.2d 1214 (N.J. 2001)...................3

*Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civ. A. No. 06-5391, 2007 WL 2406980 (D.N.J. Aug. 20, 2007) .......................................................................11

*Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 662 A.2d 509 (N.J. 1995) *abrogated on other ground, Olds v. Donnelly*, 696 A.2d 633 (N.J. 1997) ............................................................................................................5, 6

*Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir. 1988) ............................................................................................................2

*Crispino v. Chem. Bank New Jersey (In re Crispino)*, 160 B.R. 749 (Bankr. D.N.J. 1993).........................................................................................................6

*Delta Funding Corp. v. Harris*, 912 A.2d 104 (N.J. 2006) ......................................7

*DiTrolio v. Antiles*, 662 A.2d 494 (N.J. 2006).....................................................6, 7

*Dillon* v. *V.A. Columbia Cablevision of Westchester*, 292 A.D.2d 25 (N.Y. App. Div. 2002) ...............................................................................................16

*Hudson City Sav. Bank v. Hamptom Gardens Ltd*. 438 A.2d 323 (N.J. 1981) .........4

*In re Truong*, No. 03-40283, 2006 WL 4452984 (Bankr. D.N.J. May 3, 2006) ................................................................................................10

*Int'l Flavors & Fragrances, Inc. v. McCormick & Co.*, 575 F.Supp.2d 654 (D.N.J. 2008).............................................................................................11

*Knapper v. Bankers Tr. Co.*, 407 F.3d 573 (3d Cir. 2005) ........................................7

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3d Cir. 2003) ...................................................................................8, 9

*LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563 (N.J. Ch. Div. March 3, 2006) .................................................................................................5, 6

*Liberty Mut. Fire Ins. Co. v. Alexander*, 864 A.2d 1127, 1136 (N.J. App. Div. 2005) ...................................................................................................3

*Messner v. County of Union*, 167 A.2d 897 (N.J. 1961) .........................................16

*Metlife Capital Fin. Corp.* v. *Washington Ave. Assocs. L.P.*, 732 A.2d 493 (N.J. 1999) .................................................................................................12

*NCP Litig. Trust v. KPMG*, 901 A.2d 871 (N.J. 2006) ............................................11

*Neville v. Harris*, 192 B.R. 825 (D.N.J. 1996) ....................................................9, 10

*Public Serv. Enter. Group, Inc. v. Phila. Elec. Co.*, 722 F. Supp. 184 (D.N.J. 1989) ...................................................................................................11

*Regency Savings Bank v. Southgate*, 388 N.J. Super. 420, 424 (N.J. App. Div. 2006) ...................................................................................................3

*Roberts v. Cameron-Brown Co.*, 556 F.2d 356 (5th Cir. 1977) ...............................4

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996) .....................................................................................................9

*Ryno, Inc. v. First Nat'l Bank of South Jersey*, 506 A.2d 762 (N.J. App. Div. 1986) .....................................................................................................5

*Sovereign Bank, FSB v. Kuelzow*, 687 A.2d 1039 (N.J. App. Div. 1997)................6

*Virginia Beach Fed. v. Bank of New York/Nat'l Community Div.*, 690 A.2d 1040, 1043 (N.J. App. Div. 1997) ........................................................................3

*Wells Fargo Home Mortgage, Inc. v. Neal*, 922 A.2d 538 (Md. 2007) ....................3

**STATUTES**

12 U.S.C. § 2605(e) ..................................................................................................15

N.J.S.A. §§ 56:12-14..........................................................................14, 15, 16

**RULES AND REGULATIONS**

Fed. R. Civ. P 12(b)(6)..............................................................................................5

Fed. R. Civ. P 12(b)(1)............................................................................................12

Fed. R. Civ. P. 9(b) .................................................................................................14

Fed. R. Civ. P. 56(f) ...............................................................................................17

N.J. Ct. R. 4:30A ......................................................................................................4

N.J. Ct. R. 4:42-9(A)(4) ...........................................................................................2

N.J. Ct. R. 4:64-5 .....................................................................................................5

Defendant Countrywide Home Loans, Inc. ("Countrywide") hereby files this reply brief in support of its motion to dismiss Plaintiffs' David and Marianna Riveras' ("Riveras") Amended Complaint.  Plaintiffs' Opposition ignores the fundamental defects in the legal theories alleged in the Amended Complaint, and fails to explain how the facts alleged in that Complaint can support every element of their causes of action.

## I.   THE AMENDED COMPLAINT DOES NOT DEMONSTRATE THAT THE FEES AND COSTS AT ISSUE VIOLATED ANY LAW OR COURT RULE.

Countrywide's opening brief carefully demonstrated, based on the facts alleged in the Amended Complaint,[1] how the fees and costs challenged by the Riveras do not violate the FFA and various New Jersey Court Rules on which they rely to support their various other causes of action.[2]  *See* Opp. at 2-9.  The Riveras' opposition *never* disputes the accuracy or applicability of Countrywide's

---

[1]   At the outset, it is important to note that the Riveras' cite and rely upon an overturned motion to dismiss standard.  *See* Opp. at 1-2.  The standard articulated in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), and cited in Countrywide's opening memorandum, governs Countrywide's motion to dismiss.  *Twombly* requires Plaintiffs to plead facts that, if true, would prove every element of each cause of action.  *Id*. at 1974.  Thus, their repetition of conclusory allegations that Countrywide committed various offenses is not enough to survive a Motion to Dismiss.

[2]   The Riveras apparently concede that their allegations under the FTC Act (Count V) fail to state a claim, as they do not address that point in their brief.

calculations.[3]  Rather, the Riveras attempt to present two new theories and allege

new facts—which are not set forth in their Amended Complaint—as to how the

fees and costs at issue were improper.  *Id*. at 3, 5-7.[4]  The Riveras belated attempt

to add factual allegations must be rejected and this Court's analysis should be

based only on those allegations in the Amended Complaint.[5]  Under that analysis,

the Riveras' claims fail.  But even if Plaintiffs' new allegations are considered, the

Riveras still have not explained how Countrywide's conduct violated the law or

any court rule.

For example, the Riveras suggest in their Opposition, for the first time, that

the fees and costs they paid to Countrywide improperly exceeded those specifically

listed in the foreclosure judgment entered five years earlier.  Opp. at 3, 9.  But their

---

[3]   The Riveras' lengthy discussion in their Opposition of Rule 4:42-9(a)(4) is a
red herring.  As shown in Countrywide's opening brief, and conceded by
Plaintiffs, the total foreclosure-related attorneys' fees sought from the Riveras
(the Rule only applies to such attorneys' fees) was less than the amount
allowed by the Rule.  *See* Countrywide's Memo. at 32-33.  Likewise, the
Riveras' reiteration of various New Jersey statute's limitations on search fees
and other costs fails because, as shown Countrywide previously demonstrated,
none of the fees sought violated such provisions.  *See id.* at 32-33.

[4]   The Riveras seem to forget that their FFA and New Jersey Court Rules counts
only discuss attorney's and search fees.  Now, the Riveras set forth a litany of
other provisions that cannot be subsumed in their existing counts.

[5]   It is axiomatic that the Riveras cannot amend their complaint in an opposition
to a motion dismiss.  *See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo,
Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  Furthermore, while the Riveras do seek
leave of Court to amend their complaint (Opp. at 34) they set forth neither what
amendments they would make nor their basis for making those changes.

new argument ignores the fact that New Jersey law allows the collection of certain additional expenses (including sheriff's costs) incurred by a mortgagee after judgment but prior to sale in a foreclosure, even where, as here, the foreclosure action is dismissed through a voluntary settlement. *See*, *e.g.*, *Regency Savings Bank v. Southgate*, 388 N.J. Super. 420, 424 (N.J. App. Div. 2006); *BTD-1996, NPC 1 LLC v. 350 Warren LP*, 784 A.2d 1214 (N.J. 2001); *Liberty Mut. Fire Ins. Co. v. Alexander*, 864 A.2d 1127, 1136 (N.J. App. Div. 2005); *Virginia Beach Fed. v. Bank of New York/Nat'l Community Div.*, 690 A.2d 1040, 1043 (N.J. App. Div. 1997). Accordingly, the Riveras' simple comparison of the foreclosure judgment to the amounts paid to settle the foreclosure, without more, does not establish any violation of New Jersey law—nor does it explain why such a claim could be properly brought here, rather than before the foreclosure court.

The Riveras' other new theory—that regulations and guidelines issued by HUD prohibit the fees and costs at issue—must also be rejected. *See* Opp. at 7-8. The FHA regulations cited by the Riveras do not govern the relationship between Countrywide and the Riveras. *See Wells Fargo Home Mortgage, Inc. v. Neal*, 922 A.2d 538, 546 (Md. 2007) ("[T]he [FHA] regulations do not control directly the relationship between the mortgagor and mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee.") (citing *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977)).

Rather, they are guidelines directed at mortgagees by HUD, and cannot form the basis of a private action by borrowers. *See Heritage Bank, N.A. v. Ruh*, 465 A.2d 547, 554 (N.J. Super. Ct. 1983) ("HUD Regulations and procedures in the HUD Handbook are discretionary, not mandatory, and are not a legal prerequisite to foreclosure which is determined by state law."); *Roberts*, 556 F.2d at 360 (FHA regulations do not provide a private right of action or constitute a contract between HUD and private mortgagees of which mortgagor would be a third-party beneficiary). Accordingly, even if Plaintiffs were correct that the fees and costs at issue exceeded HUD's guidelines, that would not establish any right for the Riveras to recover.

## II.    THE ENTIRE CONTROVERSY BARS APPLIES TO THE RIVERAS' CLAIMS.

In their Opposition, the Riveras fail to identify any legitimate basis to avoid the application of the entire controversy doctrine. Rather, they incorrectly assert that: (1) the doctrine does not apply to foreclosure actions; (2) their cause of action arose after the entry of the 2002 foreclosure judgment; and, (3) Countrywide's continuing course of conduct from 2002 through 2007 justifies this suit. *See* Opp. at 9. None of their arguments have merit.

The Riveras provide no support for the assertion that the entire controversy doctrine "does not apply to foreclosure actions." Indeed, as they concede in their brief, under the express provisions of Rule 4:30A and Rule 4:64-5, all foreclosure

defenses and germane counterclaims that are not raised in a foreclosure action are thereafter barred by the doctrine.  *See* Opp. at 9.  Here, all of Plaintiffs' claims stem from the amount of foreclosure-related fees and costs they paid when they reinstated their mortgage.  The "computation of amounts due" is a "germane" foreclosure matter under Rule 4:64-5, which the Riveras were required to raise during their foreclosure proceeding.  *See LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563, at *2 (N.J, Super. Ct. Ch. Div. March 3, 2006) (citation omitted).

The Riveras' second assertion, that the entire controversy doctrine applies only if "the cause of action be known at the time of the institution of the foreclosure proceeding" (Opp. at 9), was expressly rejected by the New Jersey Supreme Court in *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 662 A.2d 509, 513-14 (N.J. 1995) ("The entire controversy doctrine applies to constituent claims that arise during the pendency of the first action[.]"), *abrogated on other grounds*, *Olds v. Donnelly*, 696 A.2d 633 (N.J. 1997); *see also Brown v. Brown*, 506 A.2d 29, 34 (N.J. App. Div. 1986) (the doctrine applies whether the claim arose prior to institution of the action or after it).  Accordingly, the entire controversy applies to the Riveras' foreclosure-related claims.[6]

---

[6]   The *Ryno* case cited by the Riveras actually undercuts their argument.  The *Ryno* court commented on the breadth of the entire controversy doctrine in the foreclosure context and said conduct "of a mortgagee known to the mortgagor prior to the institution of a foreclosure that *could* be the basis of an independent action [and] . . .  could be raised as an equitable defense in foreclosure."  *Ryno,*

The Riveras' argument that they could not have raised their claims in the foreclosure proceeding after the judgment of foreclosure was entered in 2002 (Opp. at 10) is equally unavailing because it ignores the fact that the foreclosure court retained jurisdiction at the time they reinstated their mortgage.[7]  In New Jersey, a foreclosure court retains jurisdiction until at least such time as the deed is conveyed following a sheriff's sale.  *Sovereign Bank, FSB v. Kuelzow*, 687 A.2d 1039, 1043 (N.J. Super Ct. App. Div. 1997).  Thus, the foreclosure court retained jurisdiction to hear all of the causes of action now raised by the Riveras up until the end of the foreclosure proceeding in July 2007, and the Riveras were required to raise these claims there.[8]

The Riveras provide absolutely no coherent explanation for their third argument, that "the actions of the Defendant represent a continuing course of conduct with the Plaintiff from 2002 through 2007."  Opp. at 11.  The conduct

---

    *Inc. v. First Nat'l Bank of South Jersey*, 506 A.2d 762, 766 (N.J. App. Div. 1986) (emphasis added).  It did not use any terms of limitation, and nothing in *Ryno* (which pre-dates *Circle Chevrolet*) restricts the entire controversy doctrine to claims that arise before the underlying foreclosure.

[7]   Notably, the Riveras do not argue (or allege) that they "discovered" their claims after the underlying foreclosure action was dismissed.

[8]   The Riveras' attempt to distinguish *LaSalle Nat'l Bank,* 2006 WL 551563; *Crispino v. Chem. Bank New Jersey (In re Crispino)*, 160 B.R. 749 (Bankr. D.N.J. 1993); and *DiTrolio v. Antiles*, 662 A.2d 494 (N.J. 2006) fails.  Each of those cases stands for the proposition that the Riveras' claims are barred because they failed to raise them in the underlying foreclosure proceeding.

complained of, even if "continuing," all took place during the pendency of the

Riveras' foreclosure, and all related claims were required to be raised before that

court. The Riveras' citation to *Delta Funding Corp. v. Harris*, 912 A.2d 104 (N.J.

2006), is inapposite. *Delta Funding* addressed the enforceability of an arbitration

clause in a mortgage agreement, and whether the costs of foreclosure could be

sought through a subsequent arbitration proceeding. *Id*. at 116. The case involved

neither the entire controversy doctrine nor any "continuing course of conduct"

theory, and has no bearing here.

The Riveras are engaging in exactly the type of "manipulat[ion of] the

judicial system" that the Supreme Court has identified as the purpose for the entire

controversy doctrine. *DiTrolio*, 662 A.2d at 506. If the Riveras wished to dispute

the calculation of their payment to Countrywide, they could have—and should

have—raised the issue in that foreclosure. Instead, they are now barred by the

entire controversy doctrine.

## III.    THE *ROOKER-FELDMAN* DOCTRINE BARS THIS COURT'S REVIEW OF THE FORECLOSURE PROCEEDING.

The Plaintiffs' attempt to argue that the *Rooker-Feldman* doctrine does not

apply only further undermines their position. Plaintiffs concede that the *Rooker-*

*Feldman* doctrine applies where a claim was "actually litigated," but the amounts

at issue here were not actually adjudicated. Opp. at 13. They ignore, of course,

that the doctrine applies equally where unadjudicated claims are inextricably

7

linked with those actually adjudicated in state court. *Ayres-Fountain v. Eastern Savs. Bank*, 153 Fed. App'x 91, 92 (3d Cir. 2005). It is undisputed that the judge in the foreclosure action had before him questions of what fees and costs ultimately were to be paid by the Riveras to end the foreclosure proceedings. Thus, the very issue raised here was before the state court and Plaintiffs' effort to revisit that proceeding through this litigation is specifically barred by the *Rooker-Feldman* doctrine. *Knapper v. Bankers Tr. Co.*, 407 F.3d 573, 581-82 (3d Cir. 2005) (federal court lacks jurisdiction pursuant to *Rooker-Feldman* doctrine over federal claim seeking to set aside state court judgment of foreclosure).

## IV.   JUDICIAL ESTOPPEL BARS THE RIVERAS' CLAIMS.

The Riveras concede that they did not list their foreclosure-related claims on their bankruptcy schedules but claim judicial estoppel should not apply because Countrywide has not proven "bad faith." Opp. at 14. But, as the Third Circuit held in *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 322-33 (3d Cir. 2003), a case cited by the Riveras, bad faith is established by showing that the debtor (as the Riveras did her) gained a benefit by not listing a claim on his bankruptcy schedules.

In determining that evidence of bad faith existed and that judicial estoppel was appropriate, the *Krystal Cadillac* court found that "the events alleged … had already occurred when [the debtor] made the applicable filings under the

8

Bankruptcy Code" and that the creditors were deprived of the asset. 337 F.3d at 322. These same facts exist here because (1) the allegedly improper foreclosure fees had been charged before the Riveras' Chapter 7 bankruptcy, and (2) the trustee was deprived of an asset (this lawsuit), which he could have used to pay the Riveras' creditors. The Riveras provide no arguments to the contrary.[9] The Riveras attempt to explain their omission by saying their "individual damages [were] too small to allow for individual adjudication." Opp. at 16. This ignores, of course, that the Riveras could, and did, litigate issues concerning other payments during bankruptcy. *See* Docket, Ex. C to Countrywide's Memo. Moreover, regardless of the size of their damages, this would not excuse the Riveras' decision to omit the current causes of action from their bankruptcy schedules. The Court should consider this gamesmanship further evidence of the Riveras' bad faith.

## V.   THE BANKRUPTCY TRUSTEE RETAINS SOLE STANDING TO PURSUE THE RIVERAS' FORECLOSURE-RELATED CLAIMS.

Despite the Riveras' claim to the contrary, the Bankruptcy Trustee could not have abandoned their claims against Countrywide because the Riveras never listed

---

[9]   *Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996) (Opp. at 15) does not apply here because, as the Third Circuit explained in *Krystal Cadillac*, "the debtor [in *Ryan*] did not omit any information in bad faith. Ryan omitted certain assets from its disclosures, but it also omitted counterbalancing liabilities. Therefore, largely the 'balance of assets and liabilities ... may have been unaffected by the failure to list [certain] claims as assets. Ryan did not benefit from the omission.'" *Krystal Cadillac-Oldsmobile*, 337 F.3d at 324-25 (quoting *Ryan Ops.*, 81 F.3d at 363).

the claims in their asset schedules.  *See Neville v. Harris*, 192 B.R. 825, 832

(D.N.J. 1996) ("unscheduled assets cannot be abandoned").  Plaintiffs' failure to

list their claims during their bankruptcy cases means that the Riveras' foreclosure

claims still remain an asset of their Chapter 7 estate.  *Id*.  Therefore, only the

Bankruptcy Trustee—not the Riveras—has standing to assert any of the rights,

claims, or causes of action in this lawsuit.  *In re Truong*, No. 03-40283, 2006 WL

4452984, at *4 (Bankr. D.N.J. May 3, 2006) (quoting *Krank v. Utica Mut. Ins. Co.*,

109 B.R. 668, 669 (E.D. Pa. 1990)).  Accordingly, the Court must dismiss the

Riveras' Amended Complaint because they lack standing to assert these claims.

## VI.   THE RIVERAS ALLEGE NO CONTRACTUAL PROVISION THAT COUNTRYWIDE BREACHED.

The Riveras acknowledge that Countrywide's right to the fees and costs at

issue "emanates from the terms of the contract."  Opp. at 17.  And, as Countrywide

demonstrated in its opening brief, those terms specifically authorize the fees and

costs at issue.  Countrywide's Memo. at 24-25.  The Riveras' general statement

that Countrywide breached the mortgage and note misses the point.  The Riveras

still fail to point to any provision in the loan contract that was allegedly breached

by Countrywide or to cite any specific facts showing how the fees and costs at

issue breached such terms.  Accordingly, their breach of contract claim fails.

## VII.  THE RIVERAS' NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW.

The Riveras' Opposition does nothing to address the two fundamental

defects in their negligence claim.  First, the Riveras' suggestion that "the instant

case is more than about the loan" and that they were "emotional[ly] upset from the

Defendant's egregious actions" (Opp. at 17-18) does not alter the fact that the only

damages they claim are from the alleged collection of money not allowed by their

contract.  That is just the type of "purely economic loss" that New Jersey does not

allow to form the basis of a negligence claim.  *See Int'l Flavors & Fragrances,*

*Inc. v. McCormick & Co.*, *Inc*., 575 F.Supp.2d 654, 656 (D.N.J. 2008); *Pub. Serv.*

*Enter. Grp., Inc. v. Phila. Elec. Co.*, 722 F. Supp. 184, 193 (D.N.J. 1989).

Second, the Riveras point to nothing that creates any extra-contractual duty

owed to them by Countrywide, beyond the contractual obligations under the note

and mortgage.  Their attempts to suggest FHA regulations or state court rules

create such a duty fall flat because they cannot show how any of those provisions

either create a duty or adequately explain how Countrywide violated them.  Thus,

the Riveras' negligence allegations are "essentially contractual in nature" and must

be dismissed.  *See Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civ. A. No. 06-5391,

2007 WL 2406980, at *10 (D.N.J. Aug. 20, 2007).[10]

---

[10]   The Riveras' citation to *NCP Litig. Trust v. KPMG LLP*, 901 A.2d 871 (N.J. 2006), is off the mark.  That case involved a litigation trust's claims against an

## VIII.  THE DUTY OF GOOD FAITH AND FAIR DEALING CLAIM FAILS BECAUSE THE COMPLAINED OF CHARGES WERE AUTHORIZED BY THE MORTGAGE.

The cases cited by the Riveras do not change the fact that there cannot be a braech of the duty of good faith and fair dealing where the mortgage expressly authorizes the fees and costs at issue.  Countrywide Memo at 28.  In *Barrows v. Chase Manhattan Mortgage Corp.*, 465 F. Supp. 2d 347, 366 (D.N.J. 2006) (*see* Opp. at 19), the defendant moved to dismiss the breach of the duty of good faith and fair dealing claim based upon lack of standing under Rule 12(b)(1) and it did not attack the merits of plaintiffs' claim and the court never addressed them.  *Id*. at 366.  Similarly, the Riveras do not explain how Countrywide interfered with their right to "receive the fruits of the contract" as required by *Ass'n Group Life, Inc*. v. *Catholic War Vets of the U.S.*, 293 A.2d 382, 384 (N.J. 1972).  Finally, Plaintiffs' citation to *Metlife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.*, 732 A.2d 493 (N.J. 1999), is unavailing because the court did not find that a breach of the covenant of good faith had occurred, but merely affirmed a remand to the trial court for an accounting in a case about alleged misapplication of funds— something that is not at issue here.

---

auditor on behalf of a bankrupt corporation, and responds to neither of Countrywide's arguments and is irrelevant to the Riveras' negligence claim.

## IX.   THE UNJUST ENRICHMENT CLAIM IS NOT DISTINCT FROM THE CONTRACT CLAIM.

The Riveras concede that a party may only assert a breach of contract claim and an unjust enrichment claim if the subject matters of the two claims are distinct. *See* Opp. at 21.  According to the Riveras' own allegations, however, the subject matter of their breach of contract and unjust enrichment claims is exactly the same. The Riveras allege that Countrywide was unjustly enriched when it "collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit Countrywide to collect such fees and charges."  Am. Comp., ¶ 64 (emphasis added).  Because the Riveras' argument is that the parties' contract (their mortgage agreement) establishes the charges they were required to pay, their breach of contract claim is identical to their unjust enrichment claim, and should be dismissed.[11]

## X.   THE CONSUMER FRAUD ACT CLAIM SHOULD BE DISMISSED.

As shown above, the Riveras have not established that they properly alleged any statutory or contractual violations that could form the basis of their CFA claim. In their Opposition, the Riveras simply repeat their conclusory allegations that Countrywide violated the "contract and the law" and that there is "causation" and

---

[11]   The Riveras provide no support for their conclusory assertion (which was not made in the Amended Complaint) that the parties' relationship was also governed by an "implied contract" that could somehow support their unjust enrichment claim.  *See* Opp. at 21.

13

"an ascertainable loss" to support their claim.  Opp. at 24.  But more is required to survive a motion to dismiss under *Twombly*.  The Riveras must point to facts <u>in their Amended Complaint</u> and explain how they support every element of their claim.  125 S.Ct. at 1974.  The fact remains that the Riveras have not pled facts sufficient to support their claims and the CFA claim in the Amended Complaint must be dismissed.[12]

The Riveras' reliance on *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741 (N.J. 2009), which they discuss in detail in support of their CFA claim, is flawed. *See* Opp. at 30-33.  In *Bosland*, the Supreme Court ultimately held that the CFA does not require a consumer to seek a refund from a merchant as a prerequisite to filing a complaint.  *Id.* at 750.  Here, however, the Riveras CFA claim fails because they did not plead all requisite elements of the CFA.  That they did not seek a refund is absolutely immaterial here, and so is their discussion of *Bosland*.[13]

---

[12]   The Riveras' Opposition discusses the "purpose of Rule 9(b)" (Opp. at 24) but Countrywide's motion *never* relies on Rule 9(b), and so that discussion seems misplaced.

[13]   Plaintiffs also use *Bosland* to bootstrap their TCCNWA claim with their CFA claim.  However, to the extent that the Riveras use the TCCNWA as the predicate act for the CFA claim, the argument falls flat because the Plaintiffs did not plead the elements of the CFA.  Finally, as *Bosland* held, and Plaintiffs acknowledge, a claim of unjust enrichment fails where the defendant does not receive a benefit distinct from the written contract.

XI.   **THE RIVERAS HAVE ALLEGED NO ANY UNLAWFUL CONTRACT OR NOTICE UNDER THE TRUTH-IN-CONSUMER CONTRACT ACT.**

The Riveras argue that they have stated a claim under New Jersey's Truth-In-Consumer Contract, Warranty and Notice Act, N.J.S.A. §§ 56:12-14 to -18 (the "Act"), for two reasons, neither of which apply.  First, they argue that "to the extent that . . . the terms of the mortgage and note entitle[s Countrywide] to be reimbursed for the attorneys fees and costs in the foreclosure in excess of the amount allowed under New Jersey law and FHA regulations, those clauses violate" the Act.  Opp. at 25.  But the Riveras base their claim under the Act on their proof of claim, not their note and mortgage.  *See id.* at 25-26.  Second, the Riveras seem to argue that a payoff of reinstatement quote they received from Countrywide would be a "notice" covered under RESPA, which requires certain "written notifications" to borrowers.  *Id.* at 25-26.  There are, of course, no factual allegations in the Amended Complaint about such quotes or how they are "written notifications" sent under RESPA.  Because, as Countrywide showed in its opening brief, the Amended Complaint is devoid of any allegations that implicate a supposedly unclear contract, notice, or warranty covered by the Act, let alone one

that violated a clearly established legal right, the Riveras' claim should be dismissed under *Twombly*.[14]

## XII.  THE VOLUNTARY PAYMENT DOCTRINE APPLIES TO THE RIVERAS' CLAIMS.

New Jersey's well-recognized voluntary payment doctrine applies to the Riveras' claims and defeats them.  The voluntary payment doctrine applies when a party voluntarily agrees to pay a sum that had been disclosed in advance.  *Messner v. County of Union*, 167 A.2d 897, 898 (N.J. 1961).  Plaintiffs have not, and cannot, prove that any exceptions to the voluntary payment doctrine applies here. The Riveras have not pled facts establishing the basic elements of fraud or unjust enrichment, and they do not even attempt to claim duress or that they lacked "full knowledge of the facts" when they paid the fees at issue.[15]

---

[14]  Even if the Riveras were allowed to amend their allegations through their Opposition to implicate such quotes as "notices" under the Act, they still have not pled facts showing how any provision violated their clearly established rights.

[15]  Plaintiffs' lengthy discussion of public policy in their effort to distinguish *Dillon* v. *V.A. Columbia Cablevision of Westchester*, 292 A.D.2d 25 (N.Y. App. Div. 2002) (*see* Opp. at 28-30) is inapposite as Plaintiffs' once again attribute to Countrywide the citation of a case that appears nowhere in Countrywide's brief.

## CONCLUSION

For the reasons stated herein as well as those in its main brief, all claims and causes of action in Plaintiffs' Amended Complaint against Countrywide should be dismissed.[16]

COUNTRYWIDE HOME LOANS, INC.

By its attorneys,

 /s/ Mariah Murphy
Martin C. Bryce, Jr.
Mariah Murphy
BALLARD SPAHR ANDREWS &
INGERSOLL, LLP
Plaza 1000 - Suite 500
Main Street
Voorhees, NJ  08043
(856) 761-3400

Of Counsel:

Thomas M. Hefferon
Scott B. Nardi
Eric I. Goldberg
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC  20001
(202) 346-4000

DATED:     April 27, 2009

---

[16] Although the Riveras' opposition asks for leave to file another amended complaint and to conduct discovery, neither request is properly presented (even if a Rule 56(f) certification were appropriate in response to a Motion to Dismiss, Plaintiffs have not identified relevant discoverable information they require to support their claims; they also have not formally moved for leave to amend their pleading) and both should be denied.

LIBW/1706840.4

18