UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

| | |
|---|---|
| **David A. and Marianne M. Rivera**<br>**Individually and as a class representative**<br>**On behalf of others similarly situated**<br>**Plaintiff**<br><br><br>**vs.**<br><br>**WASHINGTON MUTUAL BANK**<br>**COUNTRYWIDE HOME LOANS,**<br>**SHAPIRO & DIAZ,**<br>**AND JOHN DOE SERVICERS 1-100**<br>**AND JOHN DOE LAW FIRMS 1-10**<br>**Defendant.** | **CASE NO.**<br>     **1:09-cv-0021 (JEI)(JS)**<br><br>     <u>Civil Action</u> |

BRIEF OF PLAINTIFF IN OPPOSITION TO THE MOTION TO DISMISS BY THE
DEFENDANT SHAPIRO & DIAZ

Attorney for Plaintiff
Law Office of Roger C. Mattson
26 Newton Avenue
Woodbury, NJ 08096
(856) 848-4050

Lewis G. Adler, Esquire
Roger C. Mattson, Esquire
On the Brief

Lewis G. Adler, Esq.
Roger C. Mattson, Esq.

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES**         ii

**FACTS**         1

**ARGUMENT**         1

    **I.**     **Standard for Motion under FR 12(b)(6)**     1-2

    **II.**     **Motion is Premature**     2

    **III.**     **Rooker-Feldman is Not Applicable**     2-4

    **IV.**     **Plaintiff's Claims are not Judicially Estopped**     4-7

    **V.**     **Voluntary Payment Doctrine does not Apply**     8-14

    **VI.**     **Defendant Shapiro owes a Duty to Plaintiffs**     14-16

    **VII.**     **Any Dismissal should be without Prejudice**     16

**CONCLUSION**         17

## <u>TABLE OF AUTHORITIES</u>

**Page**

Alcoa Edgewater Nol Fed. Credit Union
     44 NJ 442, 210 A.2d 68, 71 (N.J. 1965)       15

Banco Popular N. Am. v. Gandi
     184 NJ 161, 179 (2005)       14

Bosland v. Warnick Dodge
     396 NJ Super 267 (App. Div. 2007)       10

Bosland v. Warnock Dodge
     (A-97-07)       10

Dillon v. U-A Columbia Cablevision
     740 NY 52d 396 (2d 2002)       8

Hutchinson v. Delaware Savings Bank, FSB
     410 F. Supp 2d 374 (2006)       7

In re  Chambers Dev. Co., Inc.
     148 F.3d 214, 229 (3d Cir. 1998)       4

In re:  Resorts, Inc.
     181 F.3d 505, 511 (3d Cir. 2006)       8

In re:  Shaffer
     48 Bankr. 952 (Bankr. N.D. Ohio 1985)       7

Krystal Cadillac-Oldsmobile GMC Truck v. Gen. Motors
     337 F.3d 314, 319-20 (3d Cir. 2003)       4

Mardini v. Viking Freight, Inc.
     92 F. Supp. 2d 378, 385 (D.N.J. 1999)       1

McClellan v. Carland
     217 U.S. 268, 282, 54 L. Ed. 762, 30 S. Ct. 501       4

**Montrose Med. Group Participating Sav. Plan v. Bulger et al.**
   **243 F.3d 773, 780 (3d Cir. 2001)**                                          5

**Oneida Motor Freight Inc. v. United Jersey Bank**
   **848 F.2d 414, 416-18 (3d Cir. 1988)**                                       5

**Ryan Operations G.P. v. Santiam-Midwest Lumber Co.**
   **81 F.3d 355, 363 (3d Cir. 1996)**                                           5

**Shane v. Fauver**
   **213 F.3d 113 (3rd Cir 2000)**                                               16

**Whittingham v. MERS**
   **2007 U.S. Dist. LEXIS 33476, 16 (D.N.J. 2007)**                             15

**Zahl v. NJ Dept. of Law and Public Safety**
   **2008 U.S. Dist. LEXIS 24022, Civ Action No. 06-3749**                       2

**FACTS**

The Statement of facts for purposes of this motion is outlined in the Plaintiff's complaint which is incorporated by reference herein.

**ARGUMENT**

The Defendant's motion to dismiss  must be denied in full. The issues raised by the Defendant are in most cases based upon gross distortions of the law and facts.  The Defendant does not deny the essential facts that they took money from Mr. & Mrs. Rivera that they were not entitled to.  The arguments instead seek to allege equitable defenses as a shield for inequitable, illegal and disreputable conduct.  The court must as a matter of law, deny the Defendant's motion.

**I.       Standard for Determination of a motion under FR 12(b)(6).**

The Court in the case of *Mardini v. Viking Freight, Inc*., 92 F. Supp. 2d 378, 385 (D.N.J. 1999) articulated the standard the Court must use in a motion to dismiss under Rule 12(b)(6).

> Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.  *Neitzke v. Williams*, 490 U.S. 319, 326, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)); *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). In disposing of a motion to dismiss, the court must operate on the assumption that the factual allegations in the complaint or counterclaim are true. *Neitzke*, 490 U.S. at 326-27. A motion to dismiss may be granted if the opposing party would not be entitled to relief under any set of facts consistent with the allegations in the complaint or counterclaim. As the Supreme Court stated in *Neitzke*:
> "nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon,* supra at 73, 104 S. Ct. 2229, a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.

1

> What Rule 12(b)(6) does not countenance are dismissals based on a
> judge's disbelief of a complaint's factual allegations. (490 U.S. at 327)". <u>Id</u>
> <u>at 381, 382</u>

In the instant case, the Court must accept as true the allegations of the

complaint.

**II.      The motion is premature as discovery has not been completed.**

The Defendant has filed the within motion while discovery is still pending. Many key

facts still have not been developed. This is especially true of an itemization of the

attorneys fees and court costs charged to Mr. & Mrs. Rivera.  This information is in the

sole possession of the Defendants. Without those figures it is difficult to give exact

calculations of the extent of the violations of the act or Mr. & Mrs. Rivera's damages. To

this end the Plaintiffs have filed a certification pursuant to R56(f) requesting the decision

on those issues be stayed pending the completion of discovery.

**III.      The *Rooker-Feldman Doctrine is inapplicable to the instant case.***

The Honorable Jose L. Linares summarized the law of the Rooker-Feldman

doctrine in the recent case of *Zahl v. NJ Dept. of Law and Pubic Safety,* 2008 U.S. Dist.

Lexis 24022,  Civil Action No. 06-3749:

> The *Rooker-Feldman* doctrine, so named due to its arising out of
> the cases *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 44 S. Ct. 149, 68 L.
> Ed. 362 (1923), and *District of Columbia Court of Appeals v.
> Feldman,* 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), serves
> as a jurisdictional bar to "cases brought by state-court losers complaining
> of injuries caused by state-court judgments rendered before the district
> court proceedings commenced and inviting district court review and
> rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.
> Corp*., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). The

doctrine recognizes that the Supreme Court of the United States alone has received a Congressional grant of authority under 28 U.S.C. 1257 to hear appeals from state courts, and that lower federal courts lack the power to undo state court judgments. *Exxon Mobil Corp*., 544 U.S. at 292.

A federal district court, however, is not divested of jurisdiction merely because a litigant brings a claim in federal court that relies on the same facts as a concurrent or previous state case. Id. In parallel or concurrent proceedings, the Supreme Court has held that the *Rooker-Feldman* doctrine does not replace the application of preclusion or abstention principles in cases where a litigant has some claim independent of those decided in the state court ruling. Id. at 284, 292-293. See also *Lance v. Dennis*, 546 U.S. 459, 466, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (2006) (warning against conflation of preclusion principles with Rooker-Feldman). The doctrine only applies where the subsequent federal case seeks redress of injuries caused by the state court judgment. *Exxon Mobil Corp*., 544 U.S. at 283; *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006). Furthermore, Rooker-Feldman is in general only applicable against the same parties present in the state court litigation. *Lance*, 546 U.S. at 466; *Three Keys, Ltd. v. SR Utility Holding Co.*, 464 F. Supp 2d 388, 395 (D.N.J. Dec. 8, 2006).

This Circuit has described the claims falling under the *Rooker-Feldman* bar as those "actually litigated or 'inextricably intertwined' with adjudication by a state court." *Taliaferro v. Darby Twp. Zoning Bd*., 458 F.3d 181, 192 (3d Cir. 2006). "[A] federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under Feldman, [w]here federal relief can only be predicated upon a conviction that the state court was wrong." *Taliaferro*, 458 F.3d at 192 (internal quotations omitted). A claim may be "inextricably intertwined" with a state court judgment "even if it was not raised in the state court." Id. at 193.

The Defendant argues at great length that the *Rooker-Feldman* doctrine

prevents the court from reviewing a state court judgment.  The argument is

specious at best. First, as noted previously there have been no adjudications of the

amounts due. Second, the proof of claims and subsequent payoff demanded by the

Defendant were in excess of the amount due pursuant to the foreclosure judgment.

Third, the Plaintiffs' injuries arose after the entry of the foreclosure judgment.

The Court does not have to disturb the state court finding in order to proceed with

the instant litigation. The foreclosure judgment speaks for itself and the Plaintiffs

are merely attempting to enforce the attorneys fees portion of that judgment.

 " When there is parallel state and federal litigation, *Rooker-Feldman* is not

triggered simply by the entry of judgment in state court. See, *e.g., McClellan* v.

*Carland*, 217 U.S. 268, 282, 54 L. Ed. 762, 30 S. Ct. 501 .

    As a matter of law, the Defendant's motion to dismiss must be denied.


    **IV.    The Plaintiffs' claims are not judicially estopped for failing to raise their claims in the Bankruptcy.**

        Defendants seek dismissal of Plaintiff's complaint, arguing that because they did

not reveal the existence of this  claim in their bankruptcy filings they are estopped from

pursuing it. Judicial estoppel is intended to prevent a litigant from asserting a position

inconsistent with one that it has previously asserted in the same or in a previous

proceeding. In re Chambers Dev. Co., Inc., 148 F.3d 214, 229 (3d Cir. 1998). "It is not

intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is

designed to prevent litigants from playing fast and loose with the courts." Id. Three

elements comprise the doctrine of judicial estoppel: (1) "the party to be estopped must

have taken two positions that are irreconcilably inconsistent"; (2) the party took the

inconsistent positions "in bad faith-i.e., with intent to play fast and loose with the court";

and (3) application of the doctrine is "tailored to address the harm identified and no lesser

sanction would adequately remedy the damage done by the litigant's misconduct."

Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314,

319-20 (3d Cir. 2003) (internal citations omitted). In the Third Circuit, a rebuttable

inference of bad faith arises when the plaintiff had knowledge of the claim and "a motive to conceal the claim in the face of an affirmative duty to disclose." Id. (citing Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416-18 (3d Cir. 1988)); see also Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 363 (3d Cir. 1996).

The Third Circuit addressed the issue in the case of *Montrose Med. Group Participating Sav. Plan v. Bulger et al.*, 243 F.3d 773, 780 (3d Cir. 2001)  Judicial estoppel may be imposed only if: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity. *Montrose*, 243 F.3d at 777-78. A district court may not invoke judicial estoppel without conducting these three inquiries. Id. at 780 n.4 (discussing third element). In *Montrose*, the court also held that "a party has not displayed bad faith for judicial estoppel purposes if the initial claim was never accepted or adopted by a court or agency." Id. at 778. The court further elaborated on the bad faith requirement and explained that a specific finding of bad faith must be made: Inconsistencies are not sanctionable unless a litigant has taken one or both positions "in bad faith--i.e., with intent to play fast and loose with the court." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co*., 81 F.3d 355, 361 (3d Cir.1996). A finding of bad faith "must be based on more than" the existence of an inconsistency,

In the instant case, the cause of action arose after the filing of the Bankruptcy petition. The total allowed in the final judgment in taxed costs including attorney fees was $2,181.42. Exhibit B to Plaintiffs' complaint. The proof of claim demanded attorney

fees of $1,925 and costs of $1,898.44; a total of $3,823.44 The amount in controversy as to the instant Plaintiffs is at least $ 1642.02 which represents the amount of the overcharge. As is often the problem in consumer cases, the amount of the individual damages are too small to allow for individual adjudication.  Even with treble damages, the Plaintiffs individual claims would be less than their statutory exemption. As noted previously, there has been no adjudication of the claims at issue. The Plaintiffs have taken no position in bad faith as the court held in *Montrose*, the initial claim has never been adopted or accepted by any court. There is a question if the Plaintiffs were even aware that a cause of action existed for the Defendant's action prior to consultation with current counsel. Frankly, it is the Defendant who has been playing "fast and loose with the court." The Defendant seeks and receives a final judgment of foreclosure in the state court for an amount certain and then in the subsequent bankruptcy proceeding seeks an amount in excess of that already determined in the state court. The court should not allow the Defendant to benefit from its clearly illegal conduct. Judicial estoppel should not be allowed to be used to shield such behavior.

Furthermore, the proof of claim is an admission by the Defendants that the improper charges were added to the Plaintiffs' account. The proof of claim is evidence that the charge was added. A charge which remained on the account after the bankruptcy was completed. The account was paid off after the bankruptcy was completed.

The Defendant also argues that the Plaintiff is estopped from challenging the proof of claim. The Defendant argues that the Plaintiff waived any objection by failing to object to the proof of claim in the bankruptcy. A claim which the Defendant admits was not adjudicated by the Plaintiffs. Shapiro seeks to boot

strap a claim for $ 3823.44 in fees in the proof of claim to modify the final

judgment award of $2181.42 in attorneys fees. Once again, the Defendant seeks to

take the law and turn it on its head. Shapiro is correct. There was an adjudication

of the attorneys fees and costs due to be paid by the Plaintiff. It is reflected in the

final judgment of foreclosure dated June 4, 2002. The Defendant is absolutely

correct that this figure is not subject to change in any subsequent litigation

including the Bankruptcy action.

    Not only is the Defendant's argument factually incorrect, it is legally

incorrect. This court addressed this very issue of the res judicata effect of

bankruptcy in the case of *Hutchinson v. Delaware Savings Bank, FSB,* 410 F.

Supp 2d 374 (2006). The court made several holdings. First, the conversion of a

case from Chapter 13 to a Chapter 7 obviates the res judicata effect of the

confirmed Chapter 13 plan. *Id at* 378. Second, the court relying on *In re Shaffer,*

48 Bankr. 952 ( Bankr. N.D. Ohio 1985) held that "once a debtor dismisses the

[Chapter 13] action, the confirmation of the plan is vacated and without res

judicata effect", *Hutchinson at* 381, *Shaffer* at 40. In the instant case, the

Defendant Shapiro points out that the Chapter 13 Bankruptcy was dismissed and

then converted to a Chapter 7. As a matter of law, there is no res judicata effect to

the previous Bankruptcy proceedings.

        As a matter of law, the Defendant's motion to dismiss must be denied.

**V.      The voluntary payment doctrine does not apply to the Plaintiffs.**

The Defendant argues that all of the Plaintiffs' claims are barred by the voluntary payment doctrine.  The argument is flawed.

The Third Circuit addressed the issue of the voluntary payment doctrine.

> *"It is a settled principal of [New Jersey] law that where an individual under a mistake of law, but with full knowledge of the facts, voluntarily pays money on a demand not legally enforceable against him, he can not recover it in the absence of unjust enrichment, fraud, duress or improper conduct on the part of the payee."* <u>In re: Resorts, Inc.</u>, 181 F. 3d 505, 511 (3d Cir 1999)

In the instant case the payment was not made with full knowledge of the facts. The disclosures from the Defendants were not complete.  There was simply a demand for payment, $3,823.44  in foreclosure attorney fees and  costs. There is no doubt that the demands by the Defendants  are the result of unjust enrichment, fraud, duress and improper conduct on their part.

The NJ Fair Foreclosure Act NJSA 2A:50-67 specifically provides that "the debtor may tender, and a lender may accept, partial payment of any sum owing and due without either party waiving any rights".  The Voluntary Payment Doctrine simply does not apply.

The Defendants rely upon the case of *Dillon v. U-A Coumbia Cablevison of Westchester, Inc.*, 740 NYS2d 396 (2d 2002) to support their position. The case simply does not apply. The issue of voluntary payment is grounded in State law. The case is from  and interprets New York law.  In the instant case, the actions of the Defendants fly in the face of New Jersey law. In fact the rights of the Plaintiffs under the Fair Foreclosure Act can not be waived.  *NJSA 2A:50-61*  states:

2A:50-61. Waivers against public policy, unlawful, void.

*Waivers by the debtor of rights provided pursuant to this act are against public policy, unlawful, and void, unless given after default pursuant to a workout agreement in a separate written document signed by the debtor.*

The Legislature has made it clear that attempts to waive the rights of debtors under the act are against public policy, unlawful and void. In the instant case it is those rights the Plaintiffs seek to enforce.

The Legislature with the adoption of the New Jersey Truth in Consumer Contract, Warranty and Notice Act specifically held that the rights of consumers can not be waived. *NJSA 56:12-15* states

56:12-15. Consumer contract, warranty, notice or sign; violation of legal right of consumer or responsibility of seller, lessor, etc.; prohibition; exemptions.

*No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes. The provisions of this act shall not apply to residential leases or to the sale of real estate, whether improved or not, or to the construction of new homes subject to "The New Home Warranty and Builders' Registration Act," P.L.1977, c. 467 (C. 46:3B-1 et seq.)*

*NJSA 56:12-16* states:

56:12-16. Provision for waiver of rights under act; nullity; statement
of provisions void, unenforceable or inapplicable in New Jersey.

*No consumer contract, warranty, notice or sign, as provided for in
this act, shall contain any provision by which the consumer waives his
rights under this act. Any such provision shall be null and void. No
consumer contract, notice or sign shall state that any of its provisions is or
may be void, unenforceable or inapplicable in some jurisdictions without
specifying which provisions are or are not void, unenforceable or
inapplicable within the State of New Jersey; provided, however, that this
shall not apply to warranties.*

It is clear that the public policy in this state is to protect consumers. The idea that the

payment of an improper and/or illegal demand by a consumer waives the consumer's

right to relief has been overturned by the Legislature.  Specifically, NJSA 2A:32-1 states

that whenever there is fraud in the execution of a contract, the person defrauded at

anytime thereafter may institute a civil action to recover the money owing even if the

money is not due or payable.

The New Jersey Supreme Court on February 19, 2009 entered a decision in the case

of *Bosland v. Warnock Dodge (*A-97-07) concerning two of the pending issues before the

court: the New Jersey Consumer Fraud Act and the New Jersey Truth-In-Consumer

Contract, Warranty and Notice Act.

The facts in *Bosland* are very similar to the essential facts of the instant case. The

Plaintiff, Rhonda Bosland, purchased a new vehicle from the Defendant, Warnock

Dodge. As part of the purchase price of the vehicle the Defendant included a charge of

$117 as a registration fee. Her claim was that she was overcharged by the Defendant

between $20 and $40 in violation of the applicable automobile regulations. Rather than

demanding a refund, the Plaintiff filed suit alleging violations the *New Jersey Consumer*

10

*Fraud Act* (CFA) and the *New Jersey Truth-In-Consumer Contract, Warranty and Notice Act.* (TCCWNA)

In the instant case, the Plaintiffs were overcharged for attorneys fees and costs of suit by the Defendants when the payoff of the mortgage was calculated in violation of New Jersey Statutes and Court Rules. The Plaintiffs paid the sums requested and subsequently brought suit.

In *Bosland,* the trial court dismissed the consumer fraud count of the complaint reasoning that "Plaintiff never complained about these overages, so it seems counterintuitive to consider these fees unconscionable and an ascertainable loss. Instead these fees were Defendant's profit or fees for processing or handling these papers which Plaintiff, as a consumer, paid without objection" *Id at* 5.

In analyzing the TCCNWA claim, the trial court found that the Plaintiff had failed to establish that the contract had violated any clearly established right as required under the act. *Id at 5.*

The third count of the complaint which alleged unjust enrichment was dismissed because the plaintiff could not provide any evidence that the defendant had received any benefit separate and distinct from the written contract.

The Appellate Division reversed in part and affirmed in part. The Appellate Division affirmed the dismissal of the count for unjust enrichment. The Court reversed the dismissals of the CFA and TCCNWA counts.

The Supreme Court in its decision of February 19, 2009 affirmed the decision of the Appellate Division.  The decision is important in many ways. First, by affirming the Appellate Division concerning the TCCNWA claim, the Court has addressed for the first

11

time elements of proof for a TCCNWA claim. The Appellate Division reinstated the TCCWNA claim holding that proof of the CFA allegations also sufficed to support a claim that the contract violated a clearly established legal right. *Id at* 7.

The Supreme Court rejected the idea that a Plaintiff must seek a refund from Defendant prior to bringing suit. The Court noted that the CFA is a remedial statute. The history of the CFA is one of constant expansion of consumer protection. The Court construes the CFA broadly, not in a "crabbed fashion." *Id at* 15 [internal citations omitted]

The Court reiterated that for analytical purposes there exist three types of claims under CFA: affirmative acts, claims asserting knowing omissions and claims based on regulatory violations. Intent is not an element if the claims are the result of the defendant's affirmative act or as the result of a violation of a regulation. A violation of a regulation results in strict liability. *Id at 15-16.* Intent is only required in cases based on the defendant's omission. In that case, there must be a showing that the defendant acted with knowledge, and intent is an essential element of fraud.

In applying the law to the Plaintiff's claim the court held that the complaint was based on a claimed regulatory violation, she was not required to prove defendant's intent. *Id at 16.* In such a case, there are only three elements required to establish a prima facie case: 1) unlawful conduct by defendant; 2) an ascertainable loss by Plaintiff and 3) a causal relationship between the unlawful conduct and the ascertainable loss. *Id at* 16 [internal citations ommited]

The Supreme Court reiterated the public policy rationale of the CFA. "When confronted, as we are here, with a plaintiff who asserts that she was the victim of an

overcharge which itself is small in amount, and who seeks recovery for herself and on behalf of numerous others with 'nominal' claims, we cannot overlook the reality that, without the remedy the CFA affords, all of those wrongs might go unvindicated." *Id at 22.* "We discern in the CFA a clear expression of the Legislature's intent to empower consumers who seek to secure relief for themselves and for others who may not be aware that they have been victimized." *Id at 23.*

In the instant case, the Plaintiffs seek to redress the wrongs not just to themselves but also to others similarly situated.

The Defendants have argued that the Plaintiffs' claims under the CFA and TCCNWA are barred by the voluntary payment doctrine. It is clear from the holding in *Bosland* that simply is not the case. The court noted that the Plaintiffs have paid the overcharge voluntarily with no protest.  In rejecting a requirement for the Plaintiffs to request a refund prior to filing suit, the court noted that such a requirement would create a safe harbor for offending merchants. "A merchant could rely on the pre-suit refund demand requirement, boldly imposing inflated charges at no risk, and planning to refund the overcharges only when asked. Such an analysis of the CFA would limit relief by making it available only to those consumers who are alert enough to ask for a refund, while allowing the offending merchant to reap a windfall. We see in the broad remedial purposes of the CFA a strong contrary expression of public policy." *Id at 23.*

Simply stated, if the Defendant is in violation of the CFA, then the Plaintiff can recover as there must be  unjust enrichment, fraud, duress or improper conduct on the part of the Defendant. In that circumstance, the payment is not voluntary. <u>*In re: Resorts, Inc.,*</u> 181 F. 3d 505, 511 (3d Cir 1999).

As a matter of law the Defendant's motion to dismiss under the voluntary payment doctrine must be denied.

**VI.     The Defendant Shapiro  under New Jersey law owes a duty to Mr. & Mrs. Rivera without privity of contract both under a theory of negligence and good faith and fair dealing.**

Shapiro has argued that a lack of privity of contract between the parties precludes the Plaintiff's claim. The New Jersey Supreme has recently made clear in the case of *Banco Popular N. Am v. Gandi*  184 NJ 161, 179 (2005) that in New Jersey an attorney may be liable to a third party for misrepresentations. As the Court noted:

> **We turn next to the Bank's claims of negligence against Freedman, with respect to which some preliminary observations are in order. Although many courts across the nation hold firm to the rule that no cause of action may be maintained against an attorney by one not in privity of contract, Joan Teshima, Annotation, Attorney's Liability, To One Other Than Immediate Client, For Negligence In Connection With Legal Duties, 61 A.L.R.4th 615 (2005) , in <u>Petrillo v. Bachenberg</u>, 139 N.J. 472, 655 A.2d 1354 (1995) , we recognized that there are circumstances in which an attorney may owe a duty to a third party with whom the attorney does not have a contractual relationship. In describing those situations, we began our analysis in Petrillo with the basic concept of duty, the inquiry with respect to which balances "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." <u>Hopkins v. Fox & Lazo Realtors</u>, 132 N.J. 426, 439, 625 A.2d 1110 (1993) . Further, we invoked section seventy-three of the then-proposed Restatement of the Law Governing Lawyers7:**
>
> **For the purposes of liability . . ., a lawyer owes a duty to use care . . . : . . . .**
> **(2) To a non-client when and to the extent that the lawyer or (with the lawyer's acquiescence) the lawyer's client invites the non-client to rely on the lawyer's opinion or provision of other legal services, the non-client so relies, and the non-client is not, under applicable law, too remote from the lawyer to be entitled to protection . . . .**
> **[ <u>Petrillo</u>, supra, 139 N.J. at 483, 655 A.2d 1354 (quoting Restatement of the Law Governing Lawyers § 73 (Tentative Draft No. 7, 1994)).]**

**We further stated:**
**We also recognize that attorneys may owe a duty of care to non-clients when the attorneys know, or should know, that non-clients will rely on the attorneys['] representations and the non-clients are not too remote from the attorneys to be entitled to protection. The Restatement's requirement that the lawyer invite or acquiesce in the non-client's reliance comports with our formulation that the lawyer know, or should know, of that reliance. No matter how expressed, the point is to cabin the lawyer's duty, so the resulting obligation is fair to both lawyers and the public.**
**[ Id. at 483-84, 655 A.2d 1354 .]**

In the instant case Shapiro provided improper figures for the allowable charges under New Jersey law which were passed on to a borrower who is paying off a mortgage which is in default. The Plaintiff relied on the accuracy of the charges provided by Shapiro. As a matter of law, the Defendant's motion must be denied.

Shapiro had an obligation to Mr. & Mrs. Rivera to see that they were supplied with accurate information under the implied covenant of good faith and fair dealing. Shapiro improperly argues that to impose a duty on his firm under these circumstances necessarily would impede an attorneys ability to "represent clients vigorously". See *Petrillo*, 139 NJ at 479. The fees and costs allowed are set by Court Rules established by the New Jersey Supreme Court. As the Court has made clear these amounts are not subject to negotiation or waiver. "**The Supreme Court of New Jersey has made it clear that the parties to a mortgage cannot by contract override the limitations of the rule.**" *Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll*, 44 N.J. 442, 210 A.2d 68, 71 (N.J. 1965). The Federal District Court in *Whittingham v. MERS,* 2007 U.S. Dist. LEXIS 33476, 16 (D.N.J. 2007) agreed with this conclusion in refusing to dismiss this count as to Zucker Goldberg. This is not "Lets Make a Deal".

Shapiro argues that the proof of claim is of no consequence. The Defendant completely misses the point of the proof of claim. The document is an admission by the Defendants that the illegal charge was placed upon the Plaintiffs' account. The fact that it was or was not paid in the Bankruptcy is of no merit as the full amount of the illegal charges were later paid by the Plaintiffs.

As a matter of law, the Defendant's motion must be denied.

**VI.    Any dismissal by the Court should be without prejudice and the Plaintiffs given an opportunity to file an amended complaint.**

In the event, the court should hold that any of the Plaintiffs' pleadings are defective, the court should allow the Plaintiffs an opportunity to file an amended complaint. The Third Circuit held *Shane v. Fauver*, 213 F.3d 113 (3rd Cir 2000) the standard to be used to dismiss a complaint with prejudice.

> The District Court in this case dismissed the plaintiffs' claims with prejudice and without leave to amend. In doing so, the court may have understandably thought that this procedure was mandated by the PLRA. We hold, however, that it is not and that now, as before, in the situation presented here, dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility. The District Court did not test the plaintiffs' various claims against this standard, and we therefore vacate the order dismissing those claims and remand for the District Court to rule in the first instance on whether this standard is met.

In the instant case, Countrywide has not presented any evidence of bad faith, undue delay, prejudice or futility. Many of the issues raised by the Plaintiffs' complaint are areas of law which have not been subject to much litigation. There is no question that the Defendant is on notice on the causes of action being litigated. In the event the court

finds any of the pleadings in the complaint deficient, the Plaintiffs should be allowed to file an amended complaint.

## CONCLUSION

In the instant case the Plaintiffs have more than suggested a cause of action against  Shapiro.  The issue between the parties concerns whether Shapiro could legally collect these fees from Mr & Mrs. Rivera.   As a matter of law, the motion to dismiss must be denied or in the alternative, the Plaintiffs should be given an opportunity to file an amended pleading.

Respectfully submitted,

/s/ Lewis G. Adler, Esquire
Lewis G. Adler, Esquire


/s/ Roger C. Mattson, Esquire
Roger C. Mattson, Esquire

17