UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
DAVID and MARIANNE RIVERA,      :
individually and on behalf of   :   HONORABLE JOSEPH E. IRENAS
all those similarly situated,   :   CIVIL ACTION NO. 09-021 (JEI/JS)
                                :
           Plaintiffs,          :            OPINION
                                :
      v.                        :
                                :
WASHINGTON MUTUAL BANK;         :
COUNTRYWIDE HOME LOANS; and     :
SHAPIRO & DIAZ,                 :
                                :
           Defendants.          :
```

**APPEARANCES:**

LAW OFFICE OF LEWIS G. ADLER
By:  Roger C. Mattson, Esq.
     Lewis G. Adler, Esq.
26 Newton Avenue
Woodbury, New Jersey 08096
     Counsel for Plaintiffs

BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
By:  Martin C. Bryce, Esq.
     Mariah E. Murphy, Esq.
Plaza 1000, Main Street
Suite 500
Voorhees, New Jersey 08043
     Counsel for Defendant Countrywide Home Loans

SCHWARTZ SIMON EDELSTEIN CELSO & ZITOMER, LLC
By:  Patrick D. Tobia, Esq.
44 Whippany Road, Suite 210
P.O. Box 2355
Morristown, New Jersey 07962
     Counsel for Defendant Shapiro & Diaz

**IRENAS**, Senior District Judge:

In this case, the Court is presented with a hopelessly

muddled, mistated and mangled Amended Complaint, which, in addition to barely pleading sufficient facts, also presents complicated jurisdictional issues.  This much seems to be clear: this is a proposed class action suit seeking to recover various fees and costs collected in connection with home foreclosure actions.  Plaintiffs assert that Defendants charged and collected "various fees not authorized by the [mortgage] loan documents or applicable law" and "overcharged defaulting borrowers of residential mortgages," (Amend. Compl. ¶ 24), although as will be discussed at length, identifying the specific fees and costs at issue has proven to be a herculean task.

Defendants Countrywide Home Loans ("Countrywide") and Shapiro & Diaz separately move to dismiss the Amended Complaint in its entirety.[1]

## I.

As already noted, the Court has had particular difficulty ascertaining the alleged facts of this case.  No doubt this difficulty stems from the obvious fact that Plaintiffs' counsel has drafted one generic complaint for at least ten other cases-- all filed in this district by the same attorneys, all proposing the same class, seven of which were filed on the same day as this

---

[1]  As further discussed *infra* at Section III.*,* the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

case.[2]  The Amended Complaint in this case covers twenty-one
pages, with over 100 numbered paragraphs, yet the allegations of
"Defendants" wrongful conduct-- with no meaningful attempt to
identify which Defendant took what actions-- consumes all of one
paragraph.  (See Amend. Compl. ¶ 24)  Similarly, the Amended
Complaint's recitation of the "background" facts of the case is
paltry to say the least, omitting particularly relevant facts
which the Court has only learned from scrutinizing the public
documents Countrywide filed in support of its present Motion to
Dismiss.[3]  While the Court questions whether such a unmanageable
pleading truly meets even the lenient pleading standards
established by the Federal Rules of Civil Procedure and caselaw,
the Court has endeavored to construct the facts of this case as
set forth below, rather than dismiss the Amended Complaint

---

[2]  Plaintiffs' counsel's own apparent confusion as to what
happened in which case only contributes to the Court's difficulty
in adjudicating this case.  For example, Plaintiffs' brief in
opposition to Shapiro & Diaz's Motion to Dismiss references a bank
who is not a party to this suit, and whose name appears nowhere in
the various documents before the Court.  Even worse, in one of the
other cases pending before this judge, *Skypala v. MERS et al.*
(08-5867), the complaint contains diametrically opposite
allegations: paragraph 14(f)(ii) alleges that the "defendants"
(without specifying which defendants) "charg[ed] excessive
interest by continuing to charge the contract rate after a
judgment of foreclosure was entered," but paragraph 12 alleges
that "[n]o foreclosure action was filed."

[3]  The Court takes judicial notice of the documents filed
with the United States Bankruptcy Court cited *infra*.
     The most significant fact omitted from the Amended Complaint
is that Plaintiffs filed for bankruptcy protection twice (see
*infra* p. 4); not once, as the Amended Complaint appears to allege.

outright for failure to plead sufficient facts.

Washington Mutual Home Loans, Inc.,[4] instituted a foreclosure action against Plaintiffs in the Superior Court of New Jersey, Chancery Division, on December 11, 2001. (Amend. Compl. ¶ 15; Amend. Compl. Ex. A) Defendant Shapiro & Diaz represented Washington Mutual in the foreclosure action. (Amend. Compl. Ex. A) On June 4, 2002, the Chancery Division, after noting the entry of the Riveras' default, entered a final judgment for foreclosure in favor of Washington Mutual in the amount of $144,742.42, plus interest, plus the costs of the foreclosure action. (Amend. Compl. Ex. A) The total "costs" amounted to $2189.42 (Amend. Compl. ¶ 17), broken down as follows:

| | |
|---|---|
| Attorney's Allowance by Statute | $50.00 |
| Filing Fees Paid to Clerk | $175.00 |
| Counsel Fee Allowed Under R.4:42-9 | $1597.42 |
| Search Costs Allowed Under R.4:42-10 | $345.00 |
| Cost of Filing Lis Pendens | $3.00 |
| Other | $12.00 |

(Amend. Compl. Ex. B)

---

[4] Washington Mutual Bank is named as a Defendant to this suit, although the Court has no record of it having been served with process, and it has not entered an appearance in this action. The Court does not know the corporate relationship between Washington Mutual Home Loans, Inc., and Washington Mutual Bank. For purposes of this Motion only, the Court will treat the two companies as one and the same, as the appearing parties do.

Before the sheriff's sale of their home, which was scheduled for August 2, 2002 (Murphy Cert. Ex. F), Plaintiffs embarked down a long and winding road through the bankruptcy court process which would ultimately span more than five and a half years.

Plaintiffs, represented by counsel, filed their first (of two) voluntary chapter 13 bankruptcy petitions on July 2, 2002. (Murphy Cert. Ex. C, Bankr. D.N.J. Docket Report, Case No. 02-16637)[5]  They included no claim against Washington Mutual or Shapiro & Diaz in the schedule of personal property filed with their petition.  (Murphy Cert. Ex. D-- Schedule B)

After the petition date but before confirmation of the chapter 13 Plan, Plaintiffs made at least two mortgage payments of $1,402.82.  (Murphy Cert. Ex. F)  Also during this span of time, Washington Mutual filed its first proof of claim, and then amended it.  (Id. Ex. E)  The amended proof of claim sought "total pre-petition arrearages and attorney fees and costs" in the amount of $21,457.49.  (Id.)  Plaintiffs filed no objection to either proof of claim.

On November 21, 2002, the bankruptcy court approved Plaintiffs' chapter 13 plan, which provided for 56 monthly payments of $953.  (Murphy Cert. Ex. C)  Apparently the plan provided for pre-petition arrears to be paid through the plan,

---

[5]  As already noted, the Amended Complaint contains no allegations regarding this first bankruptcy filing.

5

while post-petition payments would be made outside the plan.
(Id. Ex. F)

By March, 2003, Plaintiffs had already fallen five months
behind on their post-petition payments to Washington Mutual.
(Murphy Cert. Ex. F)  Accordingly, Shapiro & Diaz, on behalf of
Washington Mutual, filed a Motion to Vacate the Automatic Stay so
as to recover the late payments.  (Id.)  The motion was resolved
by the parties' consent order which provided that Plaintiffs
would make an immediate lump sum payment of $7,100.00; pay an
additional $559.14 on top of their regular mortgage payment for
the months of April, May and June 2003; and begin making regular
monthly mortgage payments in July 2003.  (Id. Ex. G)  The Court
cannot determine whether Plaintiffs complied with any of their
obligations under the consent order, although the absence of any
motion to vacate the stay by Washington Mutual in the months
immediately following the entry of the consent order suggests
that at least some payments were made.[6]

It appears that Plaintiffs also made some monthly payments
to the Trustee as provided by the chapter 13 plan, although an
exact amount cannot be ascertained on the present record.
(Murphy Cert. Ex. H)  Ultimately though, Plaintiffs fell behind

---

[6]  The consent order provided that if Plaintiffs failed to
make payments for more than 30 days from the due date, Washington
Mutual would have the right to seek an Ex Parte Order Vacating the
Automatic Stay.  (Murphy Cert. Ex. G at ¶ 5)

6

on these payments as well (Id.), and on March 19, 2004, upon the Trustee's application, the bankruptcy court entered an Ex-Parte Order Dismissing the Case.  (Id. Ex. C)

Less than a month later, Plaintiffs, represented by new counsel, filed a second chapter 13 petition.  (Murphy Cert. Ex. J; Amend. Compl. ¶¶ 18-21)  This second petition also identified no claim against Washington Mutual, nor Shapiro & Diaz.  (Murphy Cert. Ex. K-- Schedule B)

Washington Mutual filed a proof of claim seeking "total pre-petition arrearages and attorney fees and costs" in the amount of $24,652.96.  (Amend Compl. Ex. C)  Plaintiffs did not object to the proof of claim.

Plaintiffs made eight post-petition payments to Washington Mutual prior to the confirmation of their chapter 13 plan on November 11, 2004.  (Murphy Cert. Ex. L)  Like their first bankruptcy, Plaintiffs' second chapter 13 plan required them to make pre-petition arrears payments through the plan while maintaining post-petition payments outside the plan.  (Id.)  The second chapter 13 plan required Plaintiffs to make 53 monthly payments of $1,000.  (Murphy Cert. Ex. J)

Like before, Plaintiffs eventually fell behind on their post-petition payments to Washington Mutual, and in April, 2005, Washington Mutual moved to vacate the stay so as to recover past

7

due payments.[7]  (Murphy Cert. Ex. L)   The bankruptcy court
resolved the motion on May 31, 2005 with an order directing
Plaintiffs to make an additional payment of $284.27 on top of
their regular mortgage payment for the months of June 2005
through November 2005.  (Id. Ex. M)

Again, presumably Plaintiffs made some payments pursuant to
the bankruptcy court's May 31st order because the order allowed
Washington Mutual to seek an Ex Parte Order Vacating the Stay
after Plaintiffs were more than 30 days late with a payment; yet
Washington Mutual did not seek such an order until October, 2005.
(Murphy Cert. Ex. J)   The bankruptcy court entered the Ex Parte
Order on October 25, 2005.  (Id.)   However, not long thereafter,
Plaintiffs moved to reinstate the stay, and the motion was
granted on February 8, 2006.  (Id.)

Thereafter Plaintiffs continued to miss payments, and over
the course of the following months, the bankruptcy court entered
two more orders vacating the stay (upon Washington Mutual's
application), but each time the court ultimately give Plaintiffs
another chance to cure their defaults.  (Murphy Cert. Ex. J –

_____

     [7]  The record is somewhat unclear as to how many payments
Plaintiffs missed.  Washington Mutual's motion to vacate the stay
asserts that Plaintiffs failed to make payments for February,
March, and April, 2005.  (Murphy Cert. Ex. L)   However, the order
resolving the motion states that "Debtor is presently delinquent
in post-petition payments for the months of April 2005 through May
2005."  (Id. Ex. M)   Perhaps Plaintiffs made two payments between
the motion and the order, but the Court cannot make that
conclusion based on the documents before it.

docket entries 47 & 50; 63 & 76)

While Plaintiffs were falling behind on their post-petition payments to Washington Mutual, it appears that they were also falling behind on their payments to the Trustee.  On October 28, 2005, Plaintiffs submitted a modified chapter 13 plan, which was confirmed on February 23, 2006.  (Murphy Cert. Ex. J)  Even under the modified plan, however, Plaintiffs missed payments, and upon the Trustee's application, the bankruptcy court entered an Ex Parte Order Dismissing the Case.  (Id.)  Less than three weeks later, however, Plaintiffs moved to reinstate the case, and on November 22, 2006, the bankruptcy court granted the motion. (Id.)

Approximately a month later, Washington Mutual again applied for an order to vacate the automatic stay, which the court granted, but then once again reinstated the stay upon Plaintiffs' motion.  (Murphy Cert. Ex. J)  While Plaintiffs' motion was pending, the Trustee again moved to have the case dismissed. (Id.)  The court dismissed the chapter 13 case in August, 2007, but in November, 2007, Plaintiffs filed a Notice of Voluntary Conversion to chapter 7.  (Id.)

According to the Amended Complaint, "Plaintiff[s] paid the sums demanded in full on or about July 2007."  (Amend. Compl. ¶ 22)  As will be discussed further *infra*, it is not clear what "sums" the Amended Complaint refers to.  In any event, sometime

9

after Plaintiffs' payment, the foreclosure action was dismissed with prejudice and the mortgage and lis pendens were discharged. (Amend. Compl. ¶ 23)

Defendant Countrywide's role in this case is not clear from the Amended Complaint.  The Amended Complaint treats Countrywide and Washington Mutual the same, merely asserting that "Defendant [Washington Mutual] as servicer of the Plaintiffs' loan is for all relevant times an agent of Defendant Countrywide."  (Amend. Compl. ¶ 44)  Countrywide, which has been served with process (as opposed to Washington Mutual), states in its brief that it "succeeded Washington Mutual as the loan servicer." (Countrywide's Moving Brief at p. 4)  The docket report for Plaintiffs' second bankruptcy case reflects that Washington Mutual transferred its claim to Countrywide on March 5, 2007. (Murphy Cert. Ex. J)

The Amended Complaint asserts nine claims against Washington Mutual and Countrywide, all arising out of the alleged unauthorized fees they charged and various other overcharges: (1) breach of contract; (2) negligent servicing of the loan; (3) breach of the duty of good faith and fair dealing; (4) unjust enrichment; (5) "deceptive collection of fees"; (6) violation of the Fair Foreclosure Act, N.J.S.A. 2A:50-57(b)(3); (7) violation of New Jersey Court Rules 4:42-9(a)(4) and 4:42-10(a); (8) violation of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2 et

10

seq.; and (9) violation of New Jersey's Truth In Consumer Contracts, Warranty and Notice Act, N.J.S.A. 56:12-14.   Shapiro & Diaz is a Defendant to claims 2 through 4 only.

Plaintiffs propose a statewide class and a nationwide class. The proposed statewide class is:

> (1) individuals who have had home loans held or serviced by the Defendant, COUNTRYWIDE in the State of New Jersey from sixteen years prior to the filing of the complaint through the date of class certification; and (2) who received a payoff or reinstatement statement from the Defendant whose home loan was in default; (3) and who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by law.
>     a) A subclass exists for claims from six years prior to the filing of the complaint through the date of class certification which includes claims under the New Jersey Consumer Fraud Act and New Jersey Truth-in Consumer Contracts, Warranty and Notice Act.
>
> The Plaintiff[s] propose[s] a class as (1) individuals who have had home loans which [sic] turned over to Shapiro for foreclosure proceedings in the State of New Jersey from sixteen years prior to the filing of the complaint through the date of class certification; and (2) who received a payoff or reinstatement statement from the Defendant whose home loan was in default; (3) and who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by law.
>     a) A subclass exists for claims from six years prior to the filing of the complaint through the date of class certification which includes claims under the New Jersey Consumer Fraud Act and New Jersey Truth-in Consumer Contracts, Warranty and Notice Act.

(Amend. Compl. ¶ 31-32) (caps in original)

The proposed nationwide class is:

> (1) individuals who have had FHA loans held or serviced by the Defendant [sic], COUNTRYWIDE and WAMU   from

> sixteen years prior to the filing of the complaint
> through the date of class certification; and (2) who
> received a payoff or reinstatement statement from the
> Defendant whose home loan was in default; (3) and who
> were charged attorneys fees and/or other costs which were
> in excess of the amount actually incurred and/or in
> excess of the amount allowed by FHA regulation.

(Amend. Compl. ¶ 30) (caps in original)

As previously noted, Countrywide and Shapiro & Diaz presently move to dismiss the Amended Complaint in its entirety. For the reasons that follow, their motions will be granted.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that

the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234.

### III.

Before turning to the arguments raised by the parties, discussion of this Court's subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") is warranted.

The sole basis for this Court's jurisdiction is CAFA, codified at 28 U.S.C. § 1332(d). There is no federal question raised by the Amended Complaint, and there is no jurisdiction under the traditional diversity of citizenship rules because the amount in controversy between the Riveras and Defendants is well below $75,000.

The Court presently faces a conundrum: Congress has stated that this Court's jurisdiction is dependent upon a legal holding that has not yet been made in this case, namely, the certification of this case as a class action. *See* 28 U.S.C. § 1332(d)(8) ("This subsection shall apply before or after the entry of a class certification order by the court with respect to that action.").[8] Because subject matter jurisdiction has been

---

[8] The Court is aware of the split in authority on whether a district court retains jurisdiction after class certification is denied. *See Ronat v. Martha Stewar Living Omnimedia, Inc.*, No. 05-520, 2008 U.S. Dist. LEXIS 91814, at *21-22 (S.D. Ill. Nov. 12, 2008) (collecting conflicting cases). The Third Circuit has not ruled on the issue and district courts within the circuit have come to conflicting conclusions. *Compare Atlass v. Mercedes-Benz*

tied to class certification, the question becomes, what
jurisdiction does the Court have prior to an order certifying the
class?  The answer clearly cannot be no jurisdiction.  If that
were so, the event that confers subject matter jurisdiction on
the Court would never occur in any case because there could never
be a class certification decision.[9]  On the other hand, prudence
and considerations of judicial efficiency counsel that the Court
should refrain from addressing issues not relevant to the issues
that may be raised by a motion to certify the class, in the event
that no class is certified and the Court must dismiss the case

---

*USA, LLC,* No. 07-2720, 2007 U.S. Dist. LEXIS 72603, at *2 n.1
(D.N.J. Sept. 25, 2007) (Debevoise, S.D.J.) (no jurisdiction if no
certification order) *with Allen-Wright v. Allstate Ins. Co.*, No.
07-4087, 2009 U.S. Dist. LEXIS 39555, at *14 (E.D. Pa. May 5,
2009) (Joyner, D.J.) (holding that the court retained CAFA
jurisdiction even though class certification was denied).
    The Court respectfully disagrees with the only Court of
Appeals to directly consider the issue, and the other courts that
have made similar rulings.  *See Vega v. T-Mobile USA, Inc.*, 564
F.3d 1256, 1268 n.12 (11th Cir. 2009) (holding that CAFA
jurisdiction survived denial of class certification); *but see
Falcon v. Philips Elecs. N. Am. Corp.*, 489 F. Supp. 2d 367, 368
(S.D.N.Y. 2007) ("To be sure, if class certification is
subsequently denied on a basis that precludes even the reasonably
foreseeable possibility of subsequent class certification in the
future, the Court may lose jurisdiction at that point.") *aff'd
Falcon v. Philips Elecs. N. Am. Corp.*, 304 F.App'x 896 (2d Cir.
2008) (affirming district court's denial of class certification
and making no comment about district court's attendant dismissal
for lack of CAFA jurisdiction).

    [9]  The Court recognizes the apparent circularity created by
the statute.  However, the Court must apply the law as enacted by
Congress.

for lack of jurisdiction.[10]   Thus, this Court holds that it has
provisional jurisdiction to decide issues bearing on class
certification prior to the entry of a class certification
order.[11]

This jurisdictional holding applies to the present motions
in the following manner: to the extent the issues raised by the
12(b)(6) motions would also be relevant to any issue to be
decided in a motion for class certification,[12] the Court has the
power to decide them at this stage of the case.[13]   Because
Defendants' arguments bear on Plaintiffs' ability to adequately
represent the proposed class,[14] the Court may address those

_____

[10]   Any decision on an issue outside the realm of this Court's
subject matter jurisdiction would be void.  *See generally* 11
Wright, Miller & Kane, Federal Practice and Procedure § 2862 ("A
judgment . . . is void . . . if the court that rendered it lacked
jurisdiction of the subject matter.").

[11]   *See generally* 11 Wright, Miller & Kane, Federal Practice
and Procedure § 2862 ("a court has jurisdiction to determine its
own jurisdiction.").

[12]   *See* Fed. R. Civ. P. 23(a) ("(1) the class is so numerous
that joinder of all members is impracticable, (2) there are
questions of law or fact common to the class, (3) the claims or
defenses of the representative parties are typical of the claims
or defenses of the class, and (4) the representative parties will
fairly and adequately protect the interests of the class.").

[13]   To be clear, the Court does not suggest that it will
always be wise to rule on issues bearing on class certification in
the context of a motion to dismiss.  One can easily envision
issues better left for decision after discovery.  The Court merely
holds that it has the power to make such decisions, and in this
particular case, it is appropriate to decide the issues now.

[14]   *See infra* discussion at p. 32-33.

arguments now.

**IV.**

In order to rule on the merits of the instant motions, the Court must first identify what alleged actions form the basis of Plaintiffs' legal claims for relief.  While this task is often simple, it has become quite arduous in the present case.

Countrywide and Shapiro & Diaz, understandably struggling to identify the factual basis for Plaintiffs' claims, have briefed their motions as if Plaintiffs are attacking fees and costs collected in the foreclosure proceedings *and* fees and costs collected through Plaintiffs' two bankruptcy cases.  However, the Court does not read the Amended Complaint as asserting claims based on Plaintiffs' payments through their bankruptcy cases for two reasons.  First, Plaintiffs make no allegations whatsoever about their first bankruptcy case; therefore their legal claims logically cannot be based on any payments made through the first bankruptcy.  But second, and more importantly, the alleged wrongful conduct pled in paragraph 24 says nothing about fees and costs collected through the bankruptcy.  That paragraph states:

> At all times relevant hereto, COUNTRYWIDE, WAMU and Shapiro have engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law.  The components of this scheme involve common tactics in which the Defendants have been overcharging defaulting borrowers of residential mortgages in the following

16

manner, including but not limited to:

a) they charged attorneys fees and costs in excess of those actually incurred;

b) costs of suit charged to the Plaintiff and class was excessive in violation of statute and court rule; [s]pecifically, R 4:42-10 limits the taxable costs for searches at a minimum of $75 to 1% of the amount due but in no case more than $500.  In the instant case the amount allowed would be $500.

c) recording fees charged were excessive of the actual fee; i.e. to file and discharge a lis pendens the fee was $60.00

d) overcharging for the service of process.  The statutes and court rules limit the reimbursement to a maximum of $35 per defendant.

e) [c]harging the borrower for obtaining a certificate of regularity which is not a fee that can be charged to the borrower.

f) FHA regulations limit attorneys fees see 24 C.F.R. 203.552(B) to a maximum of $1350 in New Jersey.

g) In addition the Plaintiffs contend that the [D]efendants overcharged the class as follows:

    i.  over charging [sic] of sheriff's commissions by failing to properly credit deposits;

    ii.  charging excessive interest by continuing to charge the contract rate after a judgment of foreclosure was entered when entitled to the judgment interest rate

(Amend. Compl. ¶ 24)  As the foregoing allegations pertain only

to the foreclosure action, the Court does not view the Amended

Complaint as asserting claims arising out of Defendants' actions

in the bankruptcy proceedings.

17

To the extent Plaintiffs intended to plead such claims, as the Courts previous discussion of Plaintiffs' lengthy involvement with the bankruptcy court demonstrates, it is utterly impossible to identify, at this point, which payments Plaintiffs allege were illegal.  While the Amended Complaint seems to suggest that Plaintiffs seek repayment of "sums" they paid on Washington Mutual's proof of claim filed in the second bankruptcy case,[15] such an allegation cannot possibly be true.  The proof of claim was clearly limited to Plaintiffs' pre-petition arrears.  Payment of the amount claimed by Washington Mutual in the proof of claim would not result in the mortgage and lis pendens being discharged because Plaintiffs were behind in their post-petition mortgage payments as well.

The "sums" to which the Amended Complaint refers more likely means a payoff amount that Plaintiffs paid Countrywide to refinance their mortgage.  However, the Court has no way of determining what any payoff statement said, how much Plaintiffs paid, or whether any of the fees generated over the years in the bankruptcy process were included in a payoff amount.

Thus, even if this Court were to construe the Amended Complaint as asserting claims based on fees and costs Plaintiffs

---

[15] *See* Amend. Compl. ¶¶ 21, 22 ("The proof of claim demanded attorneys fees of $1,925 and costs of $1,898.44; a total of $3,823.44; Plaintiff paid the sums demanded on or about July 2007.")

paid through their bankruptcies (which the Court does not), there would be no way to rule on the instant motions because Plaintiffs simply have not made any attempt to identify which fees and costs are attacked.

Accordingly, the Court now turns to Defendants' arguments insofar as they address the wrongful conduct actually alleged in the Amended Complaint, at least insofar as the Court is able to decipher them.

### A.

Countrywide argues that Plaintiffs' own documents attached to the Amended Complaint demonstrate that Plaintiffs were not overcharged under New Jersey Court Rules, therefore Count 7, alleging violations of New Jersey Court Rules 4:42-9(a)(4) and 4:42-10(a); the Fair Foreclosure Act claim (Count 6); and the Consumer Fraud Act claim dependent upon Counts 6 and 7 (part of Count 8), must be dismissed.[16]  The Court agrees.

The documents attached as Exhibits A and B to the Amended Complaint demonstrate that the costs and fees charged to Plaintiffs in the foreclosure action complied with New Jersey Court Rules 4:42-9(a)(4) and 4:42-10(a).[17]  Rule 4:42-9(a)(4)

---

[16]  As noted above, Shapiro & Diaz are not defendants to these counts.

[17]  Both Countrywide and Shapiro & Diaz assert that the *Rooker-Feldman* doctrine bars this Court from ruling on the

instructs that attorneys fees in mortgage foreclosure actions must be calculated as follows:

> on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3½%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1½%; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. . . . In no case shall the fee allowance exceed the limitations of this rule.

Exhibit B to the Amended Complaint lists attorneys fees pursuant to this rule as $1597.42.  This number is exactly correct under the rule: 3.5% of the first $5,000 equals $175; 1.5% of the next $5,000 equals $75; and 1% of the remaining judgment, $134,742.42, equals $1347.42; $175 + $75 + $1347.42 = $1597.42.  Thus, Plaintiffs have failed to state a claim for violation of New Jersey Court Rule 4:42-9(a)(4).

---

foreclosure related claims because Plaintiffs are effectively asking this court to review the accuracy of a state court judgment, namely the judgment of foreclosure against Plaintiffs. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005) (holding that the *Rooker-Feldman* doctrine excludes from this Court's subject matter jurisdiction "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").   To the extent Plaintiffs may be trying to recover money they paid on the foreclosure judgment, it would appear that they are indeed seeking redress for an injury caused by a state court judgment.  However, given the Amended Complaint's vague and sparse factual allegations, the Court cannot determine whether Plaintiffs actually made any payments on the judgment of foreclosure.  Therefore, the Court declines to rule on the *Rooker-Feldman* issue at this time.

20

Likewise, the costs charged pursuant to Rule 4:42-10(a) were correct.  The rule limits fees charged for title searches to a minimum of $75 and a maximum of $500, but if 1% of the amount found due plaintiff is more than $75 and less than $500, such 1% will be the maximum fee.  In this case, 1% of the amount due is $1,442.44, which is greater than $500, therefore the maximum charge under the rule is $500.  Indeed, the Amended Complaint explicitly alleges that the maximum fee in this case is $500. (Amend. Compl. ¶ 24(b))  Yet Exhibit B clearly demonstrates that Plaintiffs were charged $375 pursuant to Rule 4:42-10(a).  Thus, Plaintiffs have failed to state a claim for overcharges pursuant to that rule.[18]

The Fair Foreclosure Act merely states that in order to cure a default, debtors shall "pay or tender court costs, if any, and attorneys' fees in an amount which shall not exceed the amount permitted under the Rules Governing the Courts of the State of New Jersey."  N.J.S.A. 2A:50-57(b)(3).  Because Plaintiffs' own exhibits to the Amended Complaint demonstrate that they did not

---

[18]  Alternatively, there is no independent private right of action to remedy violations of New Jersey Court Rules. *Whittingham v. Mortg. Elec. Registration Servs.*, No. 06-3016, 2007 U.S. Dist. LEXIS 33476, at *22 (D.N.J. May 15, 2007) (Kugler, D.J.) ("[T]he New Jersey Court Rules are procedural in nature, and provide no independent cause of action whereby a plaintiff can pursue a remedy for a violation of the rules."); *Rickenbach v. Wells Fargo Bank*, No. 08-2687, 2009 U.S. Dist. LEXIS 52760 at *24-25 (D.N.J. June 22, 2009) (Simandle, D.J.) (following *Whittingham*).

21

pay costs or fees that exceeded the limits established by the court rules, there can be no Fair Foreclosure Act claim.[19]

Lastly, as there has been no violation of New Jersey Court Rules or the Fair Foreclosure Act, there can be no Consumer Fraud Act claim based on any such violations[20]; therefore Count 8, to the extent it is dependent on Counts 6 and 7, will also be dismissed.

Accordingly, Counts 6 and 7 will be dismissed in their entirety, and Count 8 will be dismissed to the extent it is dependent on Counts 6 and 7.

**B.**

The remainder of the CFA claim asserted in Count 8 is apparently based on Count 5, which alleges "unfair and deceptive assessment and collection of fees" in violation of the Federal

---

[19]   Alternatively, the Fair Foreclosure Act claim must be dismissed because the Act creates no private right of action. *Whittingham,* 2007 U.S. Dist. LEXIS 33476, at *22; *Rickenbach*, 2009 U.S. Dist. LEXIS 52760 at *23.

[20]   "In analyzing claims under the CFA, . . . there are only three elements required for the prima facie proofs: 1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge*, *Inc.*, 197 N.J. 543, 557 (2009).  The Court has held that Plaintiffs have not pled a violation of New Jersey Court Rules or the Fair Foreclosure Act, therefore they have not pled the first element of their prima facie CFA case.

Trade Commission Act, 15 U.S.C. § 45(a).[21]  However, as already explained, the fees and costs assessed pursuant to New Jersey Court Rules were correct, therefore there can be nothing unfair or deceptive about those fees and costs as a matter of law.

To the extent Count 5 is based on the other alleged wrongful conduct in paragraph 24 of the Amended Complaint, Plaintiffs' own exhibit directly contradicts some of the allegations, as the Court now explains.

Subparagraph c of paragraph 24 alleges that Plaintiffs were charged more than the $60 fee for filing and discharging a lis pendens, but Exhibit B shows that Plaintiffs were charged $3.00 in lis pendens fees.  Likewise, subparagraph d alleges that Plaintiffs were overcharged for the service of process, yet Exhibit B shows that Plaintiffs were not charged anything for service of process.

Subparagraph f alleges that the attorneys fees exceeded the limit established by FHA regulations, but reasonable fees under

---

[21]  The statute declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(1).

The Amended Complaint does not assert a claim arising under 15 U.S.C. § 45(a), and even if it did, there is no private right of action under this statute.  *See American Airlines v. Christensen*, 967 F.2d 410 (10th Cir. 1992); *Fulton v. Hecht,* 580 F.2d 1243 (5th Cir. 1978)*, cert. denied,* 440 U.S. 981 (1979); *Alfred Dunhill, Ltd. v. Interstate Cigar Corp.,* 499 F.2d 232 (2d Cir. 1974); *Holloway v. Bristol-Myers Corp.,* 485 F.2d 986 (D.C. Cir. 1973)*; Carlson v. Coca-Cola Co.,* 483 F.2d 279 (9th Cir. 1973)*.*

FHA regulations are determined by reference to the state's maximum limit for fees.  *See* 24 C.F.R. § 203.554(b); *In re Alden*, 123 B.R. 563, 565 (Bankr. E.D. Mich. 1990).  As the Court has already determined that the attorneys fees charged did not violate New Jersey Court Rules, the fees charged also could not violate FHA regulations.

With respect to all of these allegations, there can be no unfair or deceptive practice as a matter of law because the fees and costs were all within the limits established by law. Accordingly, Counts 5 and 8, to the extent they are dependent upon the allegations of wrongful conduct discussed so far, must be dismissed.

With respect to the remaining alleged wrongful conduct-- namely, that Countrywide charged Plaintiffs for a certificate of regularity, overcharged sheriff's commissions, and charged excessive interest (see Amend. Compl. ¶ 24(e), (g)(i), (g)(ii))-- Plaintiffs plead no facts in support of these assertions, and the documents attached to the Amended Complaint provide no information from which the Court might infer a factual basis for the claims.  Without such information, the Court cannot determine how much Plaintiffs allege they paid for a certificate of regularity, and overpaid for sheriff's commissions and interest. Thus, these claims must also be dismissed.

**C.**

Count 9 asserts that Countrywide violated New Jersey's Truth in Consumer Contract, Warranty & Notice Act ("TCCWNA").  This count also fails to state a claim.

The TCCWNA provides in relevant part,

> No seller, lessor, creditor, lender or bailee shall in the course of his business . . . enter into any written consumer contract . . .  which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the . . . the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15.  A person who violates the TCCWNA is liable for a $100 civil penalty or actual damages, at the election of the consumer.  N.J.S.A. 56:12-17.

Assuming that the mortgage and note are "consumer contracts" to which the TCCWNA applies, Plaintiffs have not identified which provisions of either document allegedly violate a clearly established right of Plaintiffs or responsibility of Countrywide.[22]  To the extent that the TCCWNA claim attacks the same provisions which are the subject of Plaintiffs' breach of contract claims (see *infra*), those provisions merely incorporate the applicable law.  Nothing on their face suggests that the

---

[22]  The Court also assumes without deciding that the TCCWNA applies to Countrywide even though it was not the lender who originally entered into the contracts with Plaintiffs. Countrywide was the fourth successor-in-interest to the mortgage and note.

provisions violate any law.

Accordingly, the TCCWNA claim will be dismissed.

### D.

The last remaining claim against Countrywide only is Count 1, alleging breach of contract.  Specifically, Plaintiffs assert that Countrywide breached paragraph 6(c) of the note, and paragraphs 10 and 18 of the mortgage.

Paragraph 6(c) of the mortgage note provides, "[i]f Lender has required immediate payment in full . . . Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law."  (Murphy Cert. Ex. A)  As already discussed at length, Plaintiffs have not pled that Countrywide collected attorneys fees in violation of any law. Accordingly, the breach of contract claim based on the mortgage note will be dismissed.

Paragraph 10 of the mortgage states that the Borrower may obtain reinstatement of the mortgage after default if the Borrower "tender[s] in a lump sum all amounts required to bring Borrower's account current including . . . foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding."  (Murphy Cert. Ex. B)  This claim fails for two reasons.  First, Plaintiffs do not

allege that they ever "tendered in a lump sum all amounts required to bring their account current" in order to reinstate the mortgage.  Second, the Court has already ruled that the foreclosure fees and costs were proper under the applicable rules.  Thus, Plaintiffs' breach of contract claim based on paragraph 10 also fails.

Lastly, paragraph 18 of the mortgage states that in a judicial proceeding to foreclose on the mortgage, "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court."  (Murphy Cert. Ex. B)  Because the Amended Complaint does not state a claim for violation of any New Jersey Court Rule, Count 1 fails to state a claim for breach of paragraph 18 of the mortgage.

Count 1 fails to state a claim under all three theories of liability.  Accordingly, Count 1 will be dismissed.

**E.**

Count 2 alleges negligence against both Countrywide and Shapiro & Diaz.

Countrywide asserts that the negligence claim against it is barred by the economic loss doctrine.  The Court agrees. Plaintiffs and Countrywide were parties to a contract, namely the

27

mortgage and note.  Plaintiffs' claims are based on allegedly improper and illegal payments arising out of the parties' contractual relationship.

"Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002).  If a defendant "owe[s] a duty of care separate and apart from the contract between the parties," a tort claim such as negligence may lie.  *Id.* at 314.  But mere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort.  *Id.* at 316-17.

Plaintiffs argue, "[t]his case is more than about the loan. The impact to [Plaintiffs] concerns their credit worthiness, the emotional upset from the Defendant's [sic] egregious actions and possible loss of their home in the foreclosure in addition to any contract damages."  (Pls' Br. at 18)  With respect to Countrywide's actions[23] having an impact on Plaintiffs' credit worthiness, the Court fails to see how such harm could plausibly result from Defendants' alleged assessment and collection of unauthorized fees (aside from the fact that Plaintiffs have not

---

[23]  It is worth noting that Countrywide's actions must have been relatively limited because it did not succeed to Washington Mutual's interest until sometime in early 2007-- approximately four and a half years after the judgment of foreclosure and approximately four and a half years into the bankruptcy process.

pled such an injury in the Amended Complaint).  Plaintiffs admit
that they defaulted on their mortgage.  The Court fails to see
how *paying* allegedly excessive fees in connection with curing
their default would negatively impact Plaintiffs' credit.
Moreover, even if Countrywide's alleged actions could somehow
affect Plaintiffs' credit, there are other statutory remedies
available to Plaintiffs; a negligence cause of action is not the
appropriate vehicle to remedy such an injury.

    With regard to Plaintiffs' argument that Countrywide's
actions caused emotional distress, it is axiomatic that a
plaintiff may not recover for emotional distress caused by a
defendants' alleged breach of contract[24]; such a proposition lies
at the heart of the economic loss doctrine.  Countrywide owed no
independent duty to Plaintiffs.  Accordingly, the negligence
claim against Countrywide will be dismissed.

    The negligence claim against Shapiro & Diaz, however, is a
different matter, as Plaintiffs had no contract with them.
Shapiro & Diaz assert that the negligence claim against them must
be dismissed because they had no duty to Plaintiffs.  The Court
agrees.

---

    [24]  *See* Restatement (Second) of Contracts § 353 and comment a
("Recovery for emotional disturbance will be excluded unless the
breach also caused bodily harm or the contract or the breach is of
such a kind that serious emotional disturbance was a particularly
likely result. . . . Damages for emotional disturbance are not
ordinarily allowed.").

Plaintiffs explain in their brief, "Shapiro provided improper figures for the allowable charges under New Jersey law which were passed on to a borrower who is paying off a mortgage which is in default.  The Plaintiff [sic] relied on the accuracy of the charges provided by Shapiro."  (Pls' Br. at 15)

While there are some circumstances where an attorney may be liable to a third-party non-client for negligence, such circumstances are not pled here.

Plaintiffs rely on *Banco Popular North America v. Gandi*, 184 N.J. 161 (2005), but that case's reasoning undercuts Plaintiffs' argument, and supports this Court's holding that Shapiro & Diaz owed Plaintiffs no duty.  In *Banco Popular*, the New Jersey Supreme Court stated that an attorney may be liable to a third party when he invites that party's reliance on his work or knows or should know that the party will rely on the attorney's work. 184 N.J. at 179-81.  It is simply not plausible that Shapiro & Diaz invited Plaintiffs to rely on their calculations, nor is it plausible that Shapiro & Diaz should have known that Plaintiffs would rely on their calculations.  Shapiro & Diaz represented a party adverse to Plaintiffs.[25]

---

[25]  *See Ogbin v. Fein, Such, Kahn & Shepard, PC,* No. 08-4138, 2009 U.S. Dist. LEXIS 46954 at *9-10 (D.N.J. May 29, 2009) (Cavanaugh, D.J.) (holding that law firm who was plaintiffs' adversary in foreclosure proceeding owed no duty to plaintiffs, as law firm could not have expected that plaintiffs would rely on law firm's representations about payoff amounts).

Shapiro & Diaz had no duty to Plaintiffs to accurately calculate any fees or costs associated with the foreclosure.[26] Although the judgment of foreclosure was entered by default, Plaintiffs could have hired their own attorney to represent them in the foreclosure case, and it would have been that attorney's responsibility to identify and correct any errors.  Accordingly, the negligence claim against Shapiro & Diaz will be dismissed.

Count 2 fails to state a claim for negligence against either Countrywide or Shapiro & Diaz.  Accordingly, Count 2 will be dismissed in its entirety.

**F.**

Finally, Counts 3 and 4, respectively, allege breach of the duty of good faith and fair dealing, and unjust enrichment against Countrywide and Shapiro & Diaz.  To the extent Counts 3 and 4 are based on Counts 1, 2, 6, 7 or 9, or the allegations in Amended Complaint paragraph 24(c), (d) or (f), the claims must be dismissed for the reasons already discussed.

Also, Counts 3 and 4 against Shapiro & Diaz fail for independent reasons.  With respect to the good faith and fair dealing claim, the Court holds that Shapiro & Diaz had no such duty to Plaintiffs.  The duty of good faith and fair dealing is

---

[26] Moreover, even if Shapiro & Diaz had such a duty, as already explained, Plaintiffs' own documents demonstrate that the calculations were correct.

31

an implied duty in every *contractual* relationship.  *Wilson v.*
*Amerada Hess Corp.*, 168 N.J. 236, 244 (2001) ("A covenant of good
faith and fair dealing is implied in every contract in New
Jersey.").[27]  However, Plaintiffs do not (and cannot) allege that
they had a contractual relationship with Shapiro & Diaz, who was
Washington Mutual's attorney in the foreclosure action.  Without
a contract, there is no duty of good faith and fair dealing[28],
therefore Plaintiffs' good faith and fair dealing claim against
Shapiro & Diaz must be dismissed.

As to the unjust enrichment claim, Plaintiffs apparently
assert that Shapiro & Diaz was unjustly enriched by the allegedly
excessive attorneys fees assessed in the foreclosure action.
However, because the Court has already determined that the fees
were exactly correct under New Jersey Court Rules, Shapiro &
Diaz's alleged retention of such a benefit cannot be unjust as a
matter of law.

Accordingly, Counts 3 and 4 against Shapiro & Diaz will be
dismissed in their entirety.

## V.

---

[27]  *See generally* Restatement (Second) of Contracts § 205
("Every contract imposes upon each party a duty of good faith and
fair dealing in its performance and its enforcement.").

[28]  To the extent there may be an extra-contractual duty of
good faith and fair dealing under New Jersey law, Shapiro & Diaz
had no such duty for the reasons stated *supra* at Section IV. E.

In conclusion, as already explained, the sole basis for this Court's subject matter jurisdiction is CAFA, which this Court interprets as granting limited provisional jurisdiction to decide issues touching on the merits of the case, at least until this Court decides whether to certify the class.  It is appropriate to decide the above-discussed issues at this stage of the case insofar as they are relevant to the issues that will be decided at class certification.[29]

In particular, Rule 23 requires that named plaintiffs' claims be typical of the class.  Fed. R. Civ. P. 23(a)(3).  Yet it is hard to imagine a plaintiff-mortgagor with a more atypical factual background than Plaintiffs.  The Court has extreme difficulty envisioning how Plaintiffs' interests could possibly "align with the interests of the absent [class] members." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001).

Similarly, Rule 23 requires that Plaintiffs' counsel "be qualified, experienced, and generally able to conduct the proposed litigation."  *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975); Fed. R. Civ. P. 23(a)(4).  Yet the

---

[29]  *See generally, In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 339 (D.N.J. 1997) (explaining that the Court may need "to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied."); *see also In re: Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008) ("[T]he court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits.").

33

Amended Complaint, which barely clears the relatively low hurdle of notice pleading, raises serious questions as to counsel's qualifications and ability to conduct this litigation going forward.

Accordingly, the Court will dismiss the Amended Complaint. However, Plaintiffs will be granted leave to file a Motion to Amend the Amended Complaint insofar as they wish to assert claims not considered in this opinion or claims that would not be barred by the legal holdings the Court has made herein. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (providing that plaintiffs whose claims are subject to a Rule 12(b)(6) dismissal should be given an opportunity to amend their complaints unless amendment would be inequitable or futile).  An appropriate Order accompanies this Opinion.


July 10, 2009                        s/ Joseph E. Irenas
                                  JOSEPH E. IRENAS, S.U.S.D.J.