# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### (CAMDEN VICINAGE)

**LEWIS G. ADLER, ESQUIRE**
**26 NEWTON AVENUE**
**WOODBURY, NJ 08096**
**(856)845-1968**
**ATTORNEY FOR PLAINTIFF**

| | |
|---|---|
| **David A. and Marianne M. Rivera**<br>**Individually and as a class representative**<br>**On behalf of others similarly situated**<br>**Plaintiff**<br><br>**vs.**<br><br>**COUNTRYWIDE HOME LOANS,**<br><br>**Defendant.** | **CASE NO.**<br>     **1:09-cv-0021 (JEI)(JS)**<br><br>    **Civil Action**<br><br>**Certification of Counsel** |

## CERTIFICATION OF COUNSEL IN
## SUPPORT OF MOTION  TO FILE THE FIRST AMENDED COMPLAINT.

I, Lewis G. Adler, Esq., of full age, do hereby certify:

1.      I am an attorney at law of the State of New Jersey and, together with

Roger C. Mattson, Esq. represent the Plaintiff in the within matter.  As such, I am fully

familiar with the facts and circumstances surrounding this case.  I make this certification

in support of the motion of Plaintiff for an order to file an amended complaint.

2.      A copy of the proposed second amended complaint is attached. Exhibit 1

I hereby certify that the foregoing statements made by me are true and accurate.  I

am aware that if any of the foregoing statements made by me are willingly false, I am

subject to punishment.

Dated: August 10, 2009          _/s/Lewis G. Adler, Esquire___
                                             Lewis G. Adler, Esq.

Exhibit 1

Proposed Second Amended Complaint

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(CAMDEN VICINAGE)**

**ROGER C. MATTSON, ESQUIRE**
**26 Newton Avenue**
**Woodbury, NJ  08096**
**(856) 848-4050**
**RM9791**
**Attorney for DAVID AND MARIANNE RIVERA**
**Plaintiff**
_____

|  |  |  |
|---|---|---|
| | : | |
| **DAVID AND MARIANNE RIVERA** | : | **Case No.** |
| **Individually and as a class representative** | : | **1:09-cv-0021 (JEI)(JS)** |
| **On behalf of others similarly situated** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION** |
| **vs.** | : | |
| | : | |
| | : | **CLASS ACTION** |
| **Countrywide Home Loans** | : | |
| | : | **SECOND AMENDED** |
| | : | **COMPLAINT** |
| **Defendants** | : | **AND JURY TRIAL DEMAND** |

_____


Plaintiffs, DAVID AND MARIANNE RIVERA  formerly residing at 2203 Beacon Hill Drive, Sicklerville, County of Camden and State of New Jersey, individually, and as private attorney general, and on behalf of others similarly situated, by way of Complaint says:

**PARTIES**

1.    The Plaintiffs, DAVID AND MARIANNE RIVERA, owned the residential property located at 2203 Beacon Hill Drive, Sicklerville, County of Camden, New Jersey and now currently reside at 18099 DeSouza Place, Castro Valley, Ca. 94546-2458 and this litigation concerns the payoff of the note and

mortgage in connection with the residence at 2203 Beacon Hill Drive, Sicklerville, NJ.

2.     The Defendant, Countrywide Home Loans, (Countrywide), a New York Corporation with its principal place of business at 4500 Park Granada CH-11, Calabassas, California, 91302 solicits and does business throughout the State of New Jersey, inclusive of Camden County.

### VENUE AND JURISDICTION

3.     This action is a civil action over which this Court has original jurisdiction pursuant to 28 USC 1332(d), as amended by the Class Action Fairness Act, Pub. L. No. 109-2,119 Sta. 4 (2005). This is a class action in which at least one member of the class of the Plaintiff is a citizen of a state different from that of the Defendant and the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

4.     Plaintiffs seek to represent a class and pursue a class recovery under 28 USC 1332(d)(1)(B) (defining "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute…authorizing an action to be brought by one or more representative persons as a class action.")

5.     The diversity requirement of Section 1332(d)(2), as amended by the Class Action Fairness Act, is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant" Id. 1332(d)(2)(A).

6.     The defendant has a principal places of business and citizenship in states other than New Jersey.

7.     The Plaintiffs were formerly citizens of the State of New Jersey and are currently citizens of California.

8.     The proposed class will not be limited to citizens from the state of New York. The Plaintiffs propose a national class as 1) Individuals who have had FHA insured home loans held or serviced by the Defendant, Countrywide from sixteen years prior to the filing of the complaint through the date of class certification, 2) individuals who received a payoff or reinstatement statement from the Defendant whose home loan was in default, 3) individuals who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and and/or in excess of the amount allowed by FHA regulation.

9.     A New Jersey subclass exists for claims from six years prior to the filing of the complaint through the date of class certification which includes claims under the New Jersey Consumer Fraud Act and the New Jersey Truth-In-Consumer Contracts, Warranty and Notice Act.

10.    The class damages sought by the Plaintiffs are to be aggregated for purposes of calculating the amount in controversy.  The Plaintiffs will be seeking actual damages, treble damages and punitive damages plus attorneys fees and costs of suit. The Plaintiffs anticipate that the damages will average $5000.00 per class member.

11.    The Defendant, Countrywide has over 10,617 foreclosures pending since 2006 in New Jersey alone. The class size is anticipated to be in excess of 3000 members. The total aggregated damages would be at least $15,000,000.00.

## BACKGROUND

12.    The FHA insured mortgage and note dated January 31, 2000 executed by the Plaintiffs are documents signed under seal which were originated by Shelter Mortgage, LLC d/b/a Guaranty Northeast Mortgage.

13.    Shapiro filed a foreclosure proceeding on behalf of Countrywide and WaMu,  against the Plaintiffs on the mortgage on or about December 11, 2001 under Docket No. F-230 30-01.

14.    A final default judgment of foreclosure was entered on June 4, 2002 in the amount of $144,742.42 plus a counsel fee of $1,597.42. Exhibit A.

15.    The total allowed taxed costs including attorney fees was $2,181.42. Exhibit B.

16.    The final judgment of foreclosure allowed $584 in costs of suit.

17.    A sheriff's sale of the premises was scheduled for August 2, 2002.

18.    The Plaintiffs  filed a Chapter 13 Bankruptcy on July 2, 2002 under case no. 02-16637.

19.    A proof of claim was filed by Shapiro & Diaz on behalf of Washington Mutual Bank, FA in the amount of $21,457.49 in arrears plus a principal balance of $132,810.70 dated November 8, 2002 filed November 13, 2002. Exhibit C.

20.    The proof of claim dated November 8, 2002 stated that there were pre-petition foreclosure fees of $1300.00 and pre-petition foreclosure costs of $1487.00. The claims also provided for "Bankruptcy fees" of $375.00.

21.   The pre-petition "foreclosure fees" and pre-petition "foreclosure costs" in the proof of claim of November 8, 2002 were $605.58 greater than the amount awarded in the final judgment of foreclosure.

22.   The final judgment of foreclosure was never amended to include the "Bankruptcy fee" of $375.00 nor the "foreclosure fees" of $1300.00 and "foreclosure costs" of $1487.00 as reflected in the proof of claim dated November 8, 2002.

23.   A motion to vacate the automatic stay was filed by Shapiro & Diaz on behalf of Washington Mutual on or about March 3, 2002.

24.   The motion to vacate the automatic stay was resolved by the parties with the entry of a consent order which was entered on May 9, 2003.

25.   The order provided among other relief for the Plaintiffs to pay $250.00 in attorneys fees and $75.00 filing fees to be paid in the Chapter 13 Plan to Washington Mutual to reimburse them for bringing the motion.

26.   On or about March 19, 2004, the Plaintiff's Chapter 13 Bankruptcy case number 02-16637 was dismissed for non-payment.

27.   The Chapter 13 Standing Trustee final report reflected arrears due to Washington Mutual as of March 26, 2004 as $19,171.44 plus the $325 due from the consent order of May 9, 2003.

28.   On or about April 14, 2004, the Plaintiffs filed a second Chapter 13 Bankruptcy under case number 04-22865.

29.   A proof of claim was filed by Shapiro & Diaz on behalf of Washington Mutual Bank, FA in the amount of $20,829.52 in arrears plus a principal balance of $130,289.99 dated May 27, 2004. Exhibit D.

30.   The proof of claim dated May 27, 2004 stated that there were pre-petition foreclosure fees of $1,550.00 and pre-petition foreclosure costs of $1,898.44. The claim also provided for "Bankruptcy fees" of $375.00.

31.   The "foreclosure fees" and "foreclosure costs" in the proof of claim of May 27, 2004 were $ 1,267.02 greater than the amount awarded in the final judgment of foreclosure.

32.   The final judgment of foreclosure was never amended to include the "Bankruptcy fee" of $375.00 nor the "foreclosure fees" of $1550.00 and "foreclosure costs" of $1898.44 as reflected in the proof of claim dated May 27, 2002.

33.   A motion to vacate the automatic stay was filed by Shapiro & Diaz on behalf of Washington Mutual on or about April 21, 2005.

34.   The motion to vacate the automatic stay was resolved by the parties with the entry of a consent order which was entered on May 31, 2005.

35.   The order provided among other relief for the Plaintiffs to pay $250.00 in attorneys fees and $150.00 filing fees to be paid in the Chapter 13 Plan to Washington Mutual to reimburse them for bringing the motion.

36.   On or about October 13, 2005, Washington Mutual filed a creditor's certification of default of the consent order of May 31, 2005.

**37.   On or about October 25, 2005 an ex-parte order vacating the automatic stay was entered on behalf of Washington Mutual.**

**38.   On or about December 27, 2005, the Plaintiffs filed a motion to reinstate the automatic stay as to Washington Mutual.**

**39.   A consent order was entered February 8, 2006 reinstating the automatic stay which provided among other relief for the Plaintiffs to pay $270.00 in late fees.**

**40.   On or about April 26, 2006, Washington Mutual filed a creditor's certification of default of the consent order of February 8, 2006.**

**41.   On or about May 9, 2006 an ex-parte order vacating the automatic stay was entered on behalf of Washington Mutual.**

**42.   On or about June 7, 2006, the Plaintiffs filed a motion to reinstate the automatic stay as to Washington Mutual.**

**43.   A consent order was entered July 24, 2006 reinstating the automatic stay which provided among other relief for the Plaintiffs to pay $250.00 in attorney's fees through the bankruptcy plan.**

**44.   On or about December 13, 2006, Washington Mutual filed a creditor's certification of default of the consent order of February 8, 2006.**

**45.   On or about December 27, 2006 an ex-parte order vacating the automatic stay was entered on behalf of Washington Mutual.**

**46.   On or about March 5, 2007 the loan was purchased and/or assigned to Countrywide Home Loans.**

47.   On or about June 18, 2007, the Plaintiffs filed a motion to reinstate the automatic stay as to Countrywide.

48.   On or about June 18, 2007, the Plaintiffs filed a motion to obtain credit under section 364(b) of the bankruptcy code to allow them to refinance their mortgage.

49.   An order was entered July 17, 2007 reinstating the automatic stay as to Countrywide.

50.   An order was entered July 17, 2007 allowing the Plaintiffs to obtain credit to refinance their mortgage.

51.   The Defendant added the accumulated foreclosure fees of $1550.00    , foreclosure costs of $1898.44 , "Bankruptcy fees" of $1025.00      and "Bankruptcy costs" of $225.00 to the Plaintiffs' account for payment as they were accrued.

52.   The Defendant demanded payment of  the accumulated foreclosure fees of $1550.00    , foreclosure costs of $1898.44 , "Bankruptcy fees" of $1025.00 and "Bankruptcy costs" of $225.00 in its payoff demand to the Plaintiffs on or about July 2007.

53.   The Plaintiffs paid the sums demanded by Countrywide in full on or about July 2007 upon the refinance of their mortgage with a new lender inclusive of all of the accumulated foreclosure fees of $1550.00, foreclosure costs of $1898.44 , "Bankruptcy fees" of $1025.00   and "Bankruptcy costs" of $225.00.

54.  **The total sums paid inclusive of foreclosure fees, foreclosure costs, bankruptcy fees and bankruptcy costs by the Plaintiff were $ 4698.44 which was $ 2,517.02 in excess of the amounts allowed in the foreclosure judgment.**

55.  **The Defendant then dismissed the foreclosure action with prejudice and discharged the mortgage and Lis Pendens on or about August 2, 2007.**

56.  **On or about November 13, 2007, the Plaintiffs filed a  motion to reinstate the case and to voluntarily convert it to a Chapter 7.**

57.  **An order was entered December 12, 2007 allowing the Plaintiffs to reinstate the case and convert to a Chapter 7 bankruptcy.**

58.  **On or about February 29, 2008, the Trustee abandoned his interest in the property known as 2203 Beacon Hill Dr., Sicklerville, NJ.**

59.  **On or about March 14, 2008, the Plaintiffs received a discharge of their debts in the Chapter 7 proceeding under case number 04-22865.**

60.  **On September 25, 2008, Washington Mutual Bank was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation was named receiver.**

61.  **Under the FHA regulations 24 CFR 203.552(b) the lender could charge the borrower the lesser of the amount allowed under New Jersey Law or the maximum allowed under the regulation.  Exhibit E.**

62.  **Under New Jersey law, attorneys fees in a mortgage foreclosure action inclusive of fees incurred during a debtors bankruptcy filing are capped by the New Jersey Court rules. See  *Youngman v. Fleet Bank, N.A. (In re A&P Diversified Techs. Realty, Inc.)*, 467 F.3d 337, 341 (3d Cir. 2006).**

63.   The Plaintiffs contend that the total of all of the attorneys fees labled as foreclosure or bankruptcy attorney's fees and any other costs charged to and/or paid by the Plaintiffs up to and including paying off the mortgage as may have been incurred from the time of default of the mortgage through the various bankruptcies were in excess of the amounts allowed by the mortgage, note, and applicable law.

**FACTUAL ALLEGATIONS:**
**DEFENDANT'S WRONGFUL CONDUCT**

64.   At all times relevant hereto, COUNTRYWIDE has engaged in a uniform scheme and course of conduct to inflate their profits by charging and collecting various fees not authorized by the loan documents or applicable law.

65.   As none of the charges to the Plaintiffs for the payoff of the mortgage including attorneys fees and costs in both the bankruptcy and foreclosure are itemized, there may be other specific overcharges to the Plaintiffs, including but not limited to, improper interest rates (ie the use of the contract interest rate rather than the judgment interest rate), late charges and other fees imposed by Countrywide known only to the Defendant at this time.

66.   From the documents in the Plaintiffs' possession it would appear that the Defendant has overcharged the Plaintiffs as a defaulting borrowers of residential mortgages in the following manner, including but not limited to:

a)  they charged attorneys fees and costs in excess of those actually incurred; The proof of claim dated November 8, 2002 provided that the

10

pre-petition foreclosure attorneys fees was $1300.00. The final judgment of foreclosure provided for reimbursement of attorneys fees of $1,597.42. A fee of $297.42 over the amount actually incurred.

b)  costs of suit charged to the Plaintiffs were excessive in violation of statute and court rule; As the court noted in its decision of July 10, 2009, the final judgment provided for costs of suit of $584.00 in accordance with the New Jersey Statutes and Rules. The proof of claim dated November 8, 2002 sought pre-petition foreclosure costs of $1487.00. The claim was $903 in excess of the amount allowed under the judgment and rules. This problem becomes even greater as reflected in the proof of claim dated May 27, 2004 as the demand for pre-petition foreclosure costs increased to $1,898.44.

c)  FHA regulations limit attorneys fees see 24 CFR 203.552(B) to a maximum of $1300 in New Jersey for actions commenced after October 1, 2001 and before September 1, 2005. The final judgment of foreclosure provided for reimbursement of attorneys fees of $1,597.42. A fee of $297.42 over the amount actually incurred. This problem becomes even greater as reflected in the proof of claim dated May 27, 2004 as the demand for pre-petition foreclosure fees increased to $1550.

67.  The components of this scheme involve common tactics in which the Defendant has been overcharging defaulting borrowers of residential mortgages in the following manner, including but not limited to:

a)    they charged attorneys fees and costs in excess of those actually incurred;

b)    costs of suit charged to the Plaintiff and class was excessive in violation of statute and court rule; Specifically in New Jersey, R 4:42-10 limits the taxable costs for searches at a minimum of $75 to 1% of the amount due but in no case more than $500. In the instant case the amount allowed would be $500.

c)    recording fees charged were excessive of the actual fee; i.e. to file and discharge a  lis pendens the fee was $60.00

d)    Overcharging for the service of process. The statutes and court rules limit the reimbursement to a maximum of $35 per defendant.

e)    Charging the borrower for obtaining a certificate of regularity which is not a fee which can be charged to a borrower.

f)    FHA regulations limit attorneys fees see 24 CFR 203.552(B) to a maximum of $1300 in New Jersey for actions commenced after October 1, 2001 and before September 1, 2005. Nationwide the FHA regulations limit attorneys fees by state as reflected in the attached schedules. Exhibit E.

g)    In addition the Plaintiffs contend that the defendants overcharged the class as follows:

   i.    over charging of sheriff's commissions by failing to properly credit deposits;

12

ii.     charging excessive interest by continuing to charge the contract rate

after a judgment of foreclosure was entered when entitled to the

judgment interest rate;

## CLASS ACTION ALLEGATIONS

68.   The Plaintiffs repeat each and every previous allegation and incorporate them by reference herein as if they were set forth fully herein.

69.   The Plaintiffs bring this action on behalf of all persons similarly situated and pursuant to Fed. R.Civ.P. 23 as a class action on behalf of a statewide class of persons as defined below.

70.   The claims of the named class representatives and the absent class members have a common origin and share a common basis. Their claims originate from the same illegal, fraudulent, unconscionable and/or negligent business practices of the Defendant, and the Defendant acts in the same way toward the Individual Plaintiffs and the members of the class. As such, the individual Plaintiffs have been a victim of the unconscionable business practices.

71.    The actions of the Defendant are not isolated but represent a general and consistent business practice.

72.    The actions of the Defendant have affected similarly situated individuals throughout the State of New Jersey and the United States.

73.   The Plaintiffs propose a national class as 1) Individuals who have had FHA home loans held or serviced by the Defendant, COUNTRYWIDE from sixteen years prior to the filing of the complaint through the date of class

certification; and 2)  who received a payoff or reinstatement statement from the Defendant whose home loan was in default; 3)and who were charged attorneys fees and/or other costs which were in excess of the amount actually incurred and/or in excess of the amount allowed by FHA regulation.

74.   A New Jersey subclass exists for claims from six years prior to the filing of the complaint through the date of class certification which includes claims under the New Jersey Consumer Fraud Act and the New Jersey Truth-In-Consumer Contracts, Warranty and Notice Act.

75.   The proposed class representatives state a claim upon which relief can be granted that is typical of the claims of absent class members. If brought and prosecuted individually, the claims of each class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

76.   The claims and remedial theories pursued by the named class representatives are sufficiently aligned with the interests of absent class members to ensure that the individual claims of the class will be prosecuted with diligence and care by the individual Plaintiffs as class representatives.

77.   The class members are so numerous that joinder of all members is impracticable.  It is believed and therefore averred that there are over 1000 mortgages within each category of claims identified above and in each Count of this Complaint.

78.     The claims of the Plaintiffs are typical of the claims of each of the class members, and the Plaintiffs have no claim antagonistic to class members.

14

They are aware that they cannot settle this action without Court approval. They have and will continue to vigorously pursue the class member claims.

79.   The Representative Plaintiffs, DAVID AND MARIANNE RIVERA will fairly and adequately protect the interests of the class members. The Plaintiffs are committed to the vigorous representation of the class members and have retained competent counsel experienced in the prosecution of complex and class action litigation. Counsel have agreed to advance the costs of the litigation contingent upon the outcome.

80.   COUNTRYWIDE has acted on grounds generally applicable to the class members, thereby justifying relief against Defendant COUNTRYWIDE for the class members as whole.

81.   A class action is superior to other methods for the fair and efficient adjudication of this controversy because prosecution of separate actions by mortgagors creates a high risk of inconsistent and varying adjudications, with inconsistent and varying results. Furthermore, as the damages suffered by many individual class members may be relatively small in relation to the costs of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for class members to individually redress the wrongs done to them. Many, if not most, of the class members are unaware that claims exist against COUNTRYWIDE. There will be no unusual difficulty in the management of this class action.

82.   The named individual Plaintiffs are willing and prepared to serve the Court and proposed class in a representative capacity with all of the

obligations and duties material thereto. The individual Plaintiffs will fairly and adequately protect the interests of the class and have no interests adverse to, or which directly and irrevocably conflict with, the interests of the other class members.

83.   The self-interest of the named class representatives are co-extensive with and not antagonistic to those of the absent class members. The proposed representatives will undertake to well and truly protect the interests of the absent class members.

84.   Questions of fact and law common to the class that predominate include but are not limited to:

    I.      Did COUNTRYWIDE breach their contractual obligations to the class members by having imposed or collected amounts that are not due and owing by contract or applicable law including interest, default related fees, costs, attorneys fees and charges?

    II.     Did COUNTRYWIDE engage in unfair and/or deceptive acts and practices with respect to each Class member that includes one or more of the following:

        a.     Imposing and collecting unnecessary and excessive fees and charges not authorized by the loan documents or by applicable law;

        b.     Imposing and collecting excessive interest;

c.      Misleading or otherwise misinforming customers about the amounts properly due and owing;

d.      Engaging in conduct that violates state and federal consumer protection laws; and

e.      Harassing or otherwise treating customers unfairly and without regard to obligations of good faith and fair dealing.

IV.     As to the New Jersey class members, did COUNTRYWIDE engage in unfair and/or deceptive acts and practices in violation of the New Jersey Consumer Fraud Act with respect to each Class member that includes one or more of the following:

a.      Imposing and collecting unnecessary and excessive fees and charges not authorized by the loan documents or by applicable law;

b.      Imposing and collecting excessive interest;

c.      Misleading or otherwise misinforming customers about the amounts properly due and owing;

d.      Engaging in conduct that violates state and federal consumer protection laws; and

e.      Harassing or otherwise treating customers unfairly and without regard to obligations of good faith and fair dealing.

**V.** **Did COUNTRYWIDE represent to the Plaintiffs that they are entitled to collect various loan charges that were not legally due and owing?**

**VI.** **Did COUNTRYWIDE collect monies that are not due and owing under applicable  law which resulted in unjust enrichment of the Defendant  COUNTRYWIDE?**

## COUNT ONE

## BREACH OF CONTRACT- COUNTRYWIDE

85.   Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact as if they were set forth fully herein.

86.   The Defendant COUNTRYWIDE's loans are evidenced by standard form notes and mortgages, the relevant provisions of which are uniform. See Paragraph 6(c) of the note and paragraphs 10 & 18 of the mortgage. The note and mortgage are attached as exhibits. Exhibit G & H respectively.

87.   Specifically, the mortgage and note provide that the FHA regulations allows for the reimbursement by the borrower of the actually incurred attorneys fee to a maximum allowed attorneys fees of $1300 (at the time of the instant foreclosure) and the actual cost of out-of-pocket expenses to be reimbursed by the borrower. See 24 CFR 203.552(b).

88.   A final judgment of foreclosure was entered on June 4, 2002 in the amount of $144,742.42 plus a counsel fee of $1,597.42. Exhibit A.

89.   The total allowed taxed costs including attorney fees was $2,181.42. Exhibit B.

90.   The amount of the final judgment of foreclosure's award of attorneys fees was in excess of the amount allowed by the FHA regulations by $297.42.

91.   COUNTRYWIDE over charged the Plaintiffs $297.42 for foreclosure attorney's fees in violation of paragraph 6(c) of the note and paragraphs 10 & 18 of the  mortgage.

92.   The final judgment of foreclosure allowed $584 in costs of suit.

93.   The proof of claim dated November 8, 2002 demanded pre-petition foreclosure costs of $1487.00 or $903 in excess of the final judgment. Exhibit C.

94.   The proof of claim dated May 27, 2004 demanded pre-petition foreclosure costs of $1,898.44 or $1,314.44 in excess of the final judgment. Exhibit D.

95.   COUNTRYWIDE demanded and was paid costs of suit of at least $1898.44 or $1,314.44 in excess of the final judgment.

96.   The amount of the attorney's fee in the final judgment was in excess of the actual amount incurred for foreclosure attorney's fees of $1300.00 as reflected in the proof of claim dated November 8, 2002 in case number 02-16637.

97.   The total sums paid inclusive of foreclosure fees, foreclosure costs, bankruptcy fees and bankruptcy costs by the Plaintiff were $ 4698.44 which was $ 2,517.02 in excess of the amounts allowed in the foreclosure judgment.

98.   COUNTRYWIDE over charged the Plaintiffs at least $2,517.02 for foreclosure and bankruptcy attorney's fees and costs of suit in violation of paragraph 6(c) of the note and paragraphs 10 & 18 of the  mortgage.

99.   The Defendants' charges for costs and attorneys fees of the Defendants were in excess of the amount allowed by the  New Jersey court rules including but not limited to R 4:42-9(a)(4) and R 4:42-10 (a).

100.  Any charge made and/or collected by COUNTRYWIDE in excess of the final judgment of foreclosure and/or the applicable FHA regulations is an illegal overcharge in violation of the note and mortgage contracts.

101. As none of the charges to the Plaintiffs for the payoff of the mortgage including attorneys fees and costs in both the bankruptcy and foreclosure are itemized, there may be other specific overcharges to the Plaintiffs, including but not limited to, improper interest rates (ie the use of the contract interest rate rather than the judgment interest rate), late charges and other fees imposed by Countrywide known only to the Defendant at this time.

102. COUNTRYWIDE has breached its contract with the Plaintiffs by imposing or collecting amounts that are not due and owing by contract or applicable law including interest, default related fees, costs of suit, attorneys fees and other charges.

103. COUNTRYWIDE failed to disclose in advance to the Plaintiffs the amount of any fees or costs which may be charged to them in connection with their mortgage for example fax fees or fees for the preparation of the payoff.

104.  COUNTRYWIDE has breached its contracts with Plaintiffs and members of the class. Specifically, the note and mortgage only allow COUNTRYWIDE to be reimbursed for actual expenses incurred. The note and mortgage make no provision for COUNTRYWIDE to receive any money in excess of the amount actually incurred.

105.   Plaintiffs and Class members are entitled to relief for breach of contract.

## COUNT TWO

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING COUNTRYWIDE

106.  Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact as if they were set forth fully herein.

107.  New Jersey recognizes a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations.

108.  A final judgment by default of foreclosure was entered on June 4, 2002 in the amount of $144,742.42 plus a counsel fee of $1,597.42. Exhibit A.

109.  The total allowed taxed costs including attorney fees was $2,181.42. Exhibit B.

110.  The amount of the final judgment of foreclosure's award of attorneys fees was in excess of the amount allowed by the FHA regulations by $297.42.

111. COUNTRYWIDE over charged the Plaintiffs $297.42 for foreclosure attorney's fees in violation of paragraph 6(c) of the note and paragraphs 10 & 18 of the mortgage. Exhibit G & H.

112.  The amount of the attorney's fee in the final judgment was in excess of the actual amount incurred for foreclosure attorney's fees of $1300.00 as reflected in the proof of claim dated November 8, 2002 in case number 02-16637.

113. The total sums paid inclusive of foreclosure fees, foreclosure costs, bankruptcy fees and bankruptcy costs by the Plaintiff were $ 4398.44 which

was $ 2,217.02 in excess of the amounts allowed in the foreclosure judgment. Exhibit G & H.

114. COUNTRYWIDE over charged and collected from the Plaintiffs $2,217.02 for foreclosure and bankruptcy attorney's fees and costs of suit in violation of paragraph 6(c) of the note and paragraphs 10 & 18 of the mortgage.

115. The Defendants' charges for costs and attorneys fees of the Defendants were in excess of the amount allowed by the New Jersey court rules including but not limited to R 4:42-9(a)(4) and R 4:42-10 (a).

116. Any charge made and/or collected by COUNTRYWIDE in excess of the final judgment of foreclosure and/or the applicable FHA regulations is an illegal overcharge in violation of the note and mortgage contracts in breach of its duty of good faith and fair dealing.

117. As none of the charges to the Plaintiffs for the payoff of the mortgage including attorneys fees and costs in both the bankruptcy and foreclosure are itemized, there may be other specific overcharges to the Plaintiffs, including but not limited to, improper interest rates(ie the use of the contract interest rate rather than the judgment interest rate), late charges and other fees imposed by Countrywide known only to the Defendant at this time.

118. COUNTRYWIDE's conduct as aforesaid breached said duty.

119. Plaintiffs and members of the Class are entitled to relief for COUNTRYWIDE's breach.

**COUNT THREE**

**UNJUST ENRICHMENT**

**COUNTRYWIDE**

**120.  Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact as if they were set forth fully herein.**

**121.  A final default judgment of foreclosure was entered on June 4, 2002 in the amount of $144,742.42 plus a counsel fee of $1,597.42. Exhibit A.**

**122.  The total allowed taxed costs including attorney fees was $2,181.42. Exhibit B.**

**123.  The amount of the final judgment of foreclosure's award of attorneys fees was in excess of the amount allowed by the FHA regulations by $297.42.**

**124.  COUNTRYWIDE over charged the Plaintiffs $297.42 for foreclosure attorney's fees in violation of paragraph 6(c) of the note and paragraphs 10 & 18 of the mortgage. Exhibit G & H**

**125.  The amount of the attorney's fee in the final judgment was in excess of the actual amount incurred for foreclosure attorney's fees of $1300.00 as reflected in the proof of claim dated November 8, 2002 in case number 02-16637. Exhibit G & H**

**126.  The total sums paid inclusive of foreclosure fees, foreclosure costs, bankruptcy fees and bankruptcy costs by the Plaintiff were $ 4698.44 which was $ 2,517.02 in excess of the amounts allowed in the foreclosure judgment.**

127. **COUNTRYWIDE over charged and collected from the Plaintiffs $2,517.02 for foreclosure and bankruptcy attorney's fees and costs of suit in violation of paragraph 6(c) of the note and paragraphs 10 & 18 of the mortgage. Exhibit G & H**

128. **The Defendant's charges for costs and attorneys fees inclusive of foreclosure fees, foreclosure costs, bankruptcy fees and bankruptcy costs were in excess of the amount allowed by the New Jersey court rules including but not limited to R 4:42-9(a)(4) and R 4:42-10 (a).**

129. **Any charge made and/or collected by COUNTRYWIDE in excess of the final judgment of foreclosure and/or the applicable FHA regulations is an illegal overcharge.**

130. **The collection of these overcharges by COUNTRYWIDE has unjustly enriched the Defendant.**

131. **As none of the charges to the Plaintiffs for the payoff of the mortgage including attorneys fees and costs in both the bankruptcy and foreclosure are itemized, there may be other specific overcharges to the Plaintiffs including but not limited to improper interest rates(ie the use of the contract interest rate rather than the judgment interest rate), late charges and other fees imposed by Countrywide known only to the Defendant at this time.**

132. **COUNTRYWIDE has engaged in unlawful collection activities by charging and collecting sums to which it was not otherwise entitled.**

133.  COUNTRYWIDE has collected monies that are not due and owing under applicable contract law, because the contract or other applicable law does not permit COUNTRYWIDE to collect such fees and charges.

134.    Said conduct sounds in equity under the common law of unjust enrichment,  money had & received, and constructive trust.

135.  COUNTRYWIDE has been unjustly enriched by its conduct.

136.    Plaintiffs and Class members have suffered loss by virtue of COUNTRYWIDE's conduct.

137.    Plaintiffs and members of the Class are entitled to relief for unjust enrichment.

## COUNT FOUR

## NEW JERSEY CONSUMER FRAUD ACT
## COUNTRYWIDE

138. The  Plaintiffs repeat each and every allegation of the previous counts and incorporate them by reference herein as if they were set forth fully herein.

139.  A final default judgment of foreclosure was entered on June 4, 2002 in the amount of $144,742.42 plus a counsel fee of $1,597.42. Exhibit A.

140.  The total allowed taxed costs including attorney fees was $2,181.42. Exhibit B.

141.  The final judgment of foreclosure's award of attorneys fees was in excess of the amount allowed by the FHA regulations by $297.42.

142.  COUNTRYWIDE over charged the Plaintiffs $297.42 for foreclosure attorney's fees in violation of paragraph 6(c) of the note and paragraphs 10 & 18 of the  mortgage. Exhibit G & H

143.  The amount of the attorney's fee in the final judgment was in excess of the actual amount incurred for foreclosure attorney's fees of $1300.00 as reflected in the proof of claim dated November 8, 2002 in case number 02-16637.

144.  The total sums paid inclusive of foreclosure fees, foreclosure costs, bankruptcy fees and bankruptcy costs by the Plaintiffs were $ 4698.44 which was $ 2,517.02 in excess of the amounts allowed in the foreclosure judgment.

145. COUNTRYWIDE over charged and collected from the Plaintiffs $2,517.02 for foreclosure and bankruptcy attorney's fees and costs of suit in violation of paragraph 6(c) of the note and paragraphs 10 & 18 of the mortgage.

146. The Defendants' charges for costs and attorneys fees inclusive of foreclosure fees, foreclosure costs, bankruptcy fees and bankruptcy costs of the Defendants were in excess of the amount allowed by the New Jersey court rules including but not limited to R 4:42-9(a)(4) and R 4:42-10 (a).

147. N.J.S.A. 2A:50-57 (b)(3) prohibits the charging of attorneys fees and costs inclusive of foreclosure fees, foreclosure costs, bankruptcy fees and bankruptcy costs in excess of those allowed by the New Jersey court rules.

148. Any charge made and/or collected by COUNTRYWIDE in excess of the final judgment of foreclosure, New Jersey Court Rules, New Jersey Statutes and/or the applicable FHA regulations is an illegal overcharge and an unconscionable business practice.

149. As none of the charges to the Plaintiffs for the payoff of the mortgage including attorneys fees and costs in both the bankruptcy and foreclosure are itemized, there may be other specific overcharges to the Plaintiffs including but not limited to improper interest rates(ie the use of the contract interest rate rather than the judgment interest rate), late charges and other fees imposed by Countrywide known only to the Defendant at this time.

150. The Defendant COUNTRYWIDE has charged the illegal and/or excessive charges as outlined previously. The previously outlined actions by the

Defendant **COUNTRYWIDE** are violations of rules, regulations and statutes for which the Defendant is strictly liable under the Act.

151.  The Plaintiffs have suffered an ascertainable loss of at least $ 2,517.02  as the other charges were not itemized it is likely there are other charges as well.

152. The actions of the Defendant constitutes unconscionable business practices in violation of the New Jersey Consumer Fraud Act.  N.J.S.A. 56:8-2 et .seq.

## COUNT FIVE

## Truth-In-Consumer Contract, Warranty and Notice Act
## COUNTRYWIDE

**153. The Plaintiffs repeat each and every allegation of the previous counts and incorporate them by reference herein as if they were set forth fully herein.**

**154. The Defendant COUNTRYWIDE's proof of claim dated November 8, 2002 notice included illegal and/or excessive charges on the loan; specifically by charging excessive costs of suit, excessive attorneys fees, and illegal late charges as outlined previously. Exhibit C.**

**155. The Defendant COUNTRYWIDE's proof of claim dated May 27, 2004 notice included illegal and/or excessive charges on the loan; specifically by charging excessive costs of suit, excessive attorneys fees, and illegal late charges as outlined previously. Exhibit D**

**156. The Defendant COUNTRYWIDE's payoff notice included illegal and/or excessive charges on the loan; specifically by charging excessive costs of suit, excessive attorneys fees, and illegal late charges as outlined previously.**

**157. The notice which demanded such illegal payments is a violation of the Truth-In-Consumer Contracts, Warranty and Notice Act. N.J.S.A. 56:12-14.**

**158. The Plaintiffs paid the sums demanded by COUNTRYWIDE in full.**

**159. The Plaintiffs have been injured as a direct and proximate result of the Defendant's actions.**

## PRAYER FOR RELIEF

Wherefore  Plaintiffs request that this court certify a class and award:

1.      Actual, special, and general damages according to proof;

2.      Statutory damages and penalties;

3.      Restitution and disgorgement according to proof;

4.      Injunctive relief against Defendant Countrywide to ensure uniform standards of servicing conduct towards all class members and to prevent future wrongful conduct;

5.      Prejudgment interest at the maximum legal rate;

6.      Punitive, exemplary and enhanced damages according to proof;

7.      Statutory punitive treble damages;

8.      An accounting;

9.      Declaratory Judgment as necessary to correct the wrongs inflicted on them;

10.    Litigation Expenses and Costs of the proceedings herein;

11.    Reasonable attorneys' fees; and

12.    All such other further relief as the Court deems just.


## DESIGNATION OF TRIAL COUNSEL

The undersigned, Roger C. Mattson, Esq., and Lewis G. Adler, Esq. are designated as trial counsel.

## <u>DEMAND FOR JURY TRIAL</u>

**PLEASE TAKE NOTICE that  Plaintiff hereby demands a trial by jury as to all issues of  fact and/or law.**


**Dated: _____8/7/09_____**             **/s/ Roger C. Mattson, Esquire_____**
                                        **ROGER C. MATTSON, ESQ.**
                                        **Attorney for Plaintiff**

# Exhibit A

FLO01-41614
SHAPIRO & DIAZ, LLP
406 LIPPINCOTT DRIVE, SUITE J
MARLTON, NJ 08053
(856) 810-1700
ATTORNEY FOR PLAINTIFF

*FILED*
*SUPERIOR COURT OF NJ*

**JUN 0 4 2002**

D.F.P.

| | |
|---|---|
| WASHINGTON MUTUAL HOME LOANS, INC., SUCCESSOR IN INTEREST BY MERGER TO FLEET MORTGAGE CORP<br><br>   PLAINTIFF,<br><br>vs.<br><br>DAVID A. RIVERA AND MARIANNE M. RIVERA, HIS WIFE; STATE OF NEW JERSEY; LEASECOMM CORPORATION;<br><br>   DEFENDANTS | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION CAMDEN COUNTY<br><br><br><br>Docket No: F-23030-01<br><br>CIVIL ACTION<br><br>FINAL JUDGMENT FOR FORECLOSURE |

Upon application of the Plaintiff and it appearing that the default of all defendants having been entered; and the Plaintiff's bond or note and mortgage, and assignment, if any, having been presented and marked as exhibits by the court;

And it appearing from the Certifications filed herein that there is due to the Plaintiff the sum of $144742.42 on its mortgage described in the complaint together with lawful interest thereon to be computed from April 2, 2002, together with costs of this action to be taxed, raised and paid out of the mortgaged premises described in the complaint;

And it appearing that the order and priority of the answering defendant(s) cannot be determined at this time and sufficient cause appearing;

It is, on this    4th    day of    June    ,2002,

ORDERED AND ADJUDGED that the Plaintiff is entitled to have the sum of

$144742.42 together with lawful interest thereon to be computed from April 2, 2002, together with costs of this suit to be taxed, including a counsel fee of $1597.42 _____ raised and paid out of the mortgaged premises described in the complaint.

And it is further ORDERED AND ADJUDGED that so much of the said mortgage premises as will be sufficient to raise and satisfy the said mortgage, interest and costs of the Plaintiff be sold and that an execution do issue for that purpose out of this court directed to the Sheriff of the County of CAMDEN commanding him to make sale according to law of so much of the mortgaged premises as will be sufficient to satisfy the said mortgage, interest and costs of the plaintiff and that he pay out of the proceeds of sale to the plaintiff or its attorneys, its debt, interest and costs and that in case there is a surplus, the same shall be brought into this court and deposited with the Clerk subject to the order of this court; and that the said Sheriff make his report to this court of the sale as required by the rules of the court.

And it is further ORDERED AND ADJUDGED that the Plaintiff or Purchaser duly recover against the said defendants, DAVID A. RIVERA AND MARIANNE M. RIVERA, HIS WIFE or any one holding under them possession of the premises mentioned and described in the said complaint with the appurtenances and that a Writ of Possession issue thereon. This judgement shall not affect the rights of any person protected by the New Jersey Tenant Anti-Eviction Act (NJSA 2A:18-61.1 et seq.).

And it is further ORDERED AND ADJUDGED that all the defendants to this action and each of them stand absolutely debarred and foreclosed of and from all redemption of, in and to so much as the said mortgaged premises as shall be sold as aforesaid under this judgment except as provided by 28 U.S.C. Section 2410.

Respectfully recommended
R. 1:34-6 OFFICE OF FORECLOSURE

Neil H. Shuster, P.J.Ch.
NEIL H. SHUSTER, P.J. Ch.

# Exhibit B

# Superior Court of New Jersey

DOCKET NO. F-23050-01

**CHANCERY DIVISION**
CAMDEN COUNTY

COSTS OF:  PLAINTIFF-

PLAINTIFF

vs.

DEFENDANT-

DEFENDANT

| | | |
|---|---|---|
| ATTORNEY'S ALLOWANCE BY STATUTE | $ | 50.00 |
| FILING FEES PAID TO CLERK | | 175.00 |
| COUNSEL FEE ALLOWED UNDER R.4:42-9 | | 159.42 |
| SHERIFF'S FEES FOR SERVICE | | |
| SEARCH COSTS ALLOWED UNDER R.4:42-10 | | 345.00 |
| PRINTING COSTS FOR PUBLICATION | | |
| COST OF FILING LIS PENDENS | | |
| MOTIONS | | 3.00 |
| OTHER | | |
| TOTAL COSTS | | 1.00 |
| | $ | 218.42 |

DATE TAXED AND FILED: JUNE 4 , 2002

ATTORNEY Shapiro & Diaz

Donald F. Phelan

**CLERK, SUPERIOR COURT**

-156-(297)

# Exhibit C

FORM B10

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|
| CAMDEN DISTRICT OF NJ | |

Name of Debtor: David A. Rivera And Marianne M. Rivera Marianne M. Hampton

Case Number: 02-16637/JHW

BK Chapter: 13

02 AUG 14 PH 2: 43

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. Section 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>WASHINGTON MUTUAL BANK, FA<br>Name and Address where notices should be sent:<br>WASHINGTON MUTUAL BANK, FA<br>P.O. BOX 1169<br>MILWAUKEE, WI 53201-1169<br><br>Telephone Number:414-359-XXXX/800-558-9995 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach a copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|

| Account or other number by which creditor identifies debtor:<br>Loan Number: 8018587207 Atty File #:01-41614 | Check here if ☐ replaces<br>this claim ☐ amends a previously filed claim, dated / / |
|---|---|

| 1. Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☒ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☐ Other _____ | ☐ Retiree benefits as defined in 11 U.S.C. Section 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Your SS#:<br>Unpaid compensation for services performed<br>from _____ to _____<br>(date) (date) |
|---|---|

| 2. Date debt was incurred: 01/31/2000 | 3. If court judgment, date obtained: |
|---|---|

4. Total Amount of Claim at Time Case Filed: $132,810.70 Principal Balance Only
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 5. Secured Claim.<br>☒ Check this box if your claim is secured by collateral (including a right of setoff).<br>Brief Description of Collateral:<br>☒ Real Estate ☐ Motor Vehicle<br>☐ Other<br>Note on: 2203 Beacon Hill Drive , Sicklerville, NJ 08081<br>Value of Collateral: $_____<br><br>Amount of Arrearage and other charges at time case filed included in secured claim, if any: $21,815.69 | 6. Unsecured Priority Claim.<br>☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority $_____<br>Specify the priority of the claim:<br>☐ Wages, salaries, or commissions (up to $4300), * earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. Section 507(a)(3).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. Section 507(a)(4).<br>☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. Section 507(a)(6).<br>☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. Section 507(a)(6).<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. Section 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. Section 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. Section 507(a)(_).<br><br>*Amounts are subject to adjustment on 4/1/01 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
|---|---|

7. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
8. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.
9. Date-Stamped Copy: To receive an acknowledgment of the filing of your proof of claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br><br>August 7, 2002 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>BY: RHONDI LYNN SCHWARTZ, ESQ. for Washington Mutual Bank, Fa<br>Shapiro & Diaz, LLP, 406 Lippincott Drive, Suite J, Marlton, NJ, 08053<br>(856) 810-1700 Fax: (856) 810-1626 | All creditors and their counsel who file a proof of claim are required to serve by first class mail, a true copy thereof of claim and all attachments thereto upon the Debtor's Counsel or Record whose address is shown on Notice of the Creditors Meeting | Mail Executed Proof to |
|---|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. Sections 152 and 3571.

* Show Creditors SS# or Tax ID # and Office Code Here: _____ (To be used solely for purpose of processing claim.
(Bank shows Bank Routing Number) If number not shown, claim cannot be processed.)

# United States Bankruptcy Court
## Camden District of NJ

# EXHIBIT 'A'

In Re: David A. Rivera And Marianne M. Rivera Aka

Principal Balance: $132,810.70

BK Case #: 02-16637/JHW

Pre-Petition
Payments Due From: July 1, 2001

Date on POC: August 7, 2002

Client: WASHINGTON MUTUAL BANK, FA

| No. of Months | 2 | X Monthly Payment of | $1,402.82 | = | $ 2,805.64 |
|---|---|---|---|---|---|
| No. of Months | 2 | X Monthly Late Charge of | $28.06 | = | $ 56.12 |
| No. of Months | 11 | X Monthly Payment of | $1,373.43 | = | $ 15,107.73 |
| No. of Months | 10 | X Monthly Late Charge of | $27.47 | = | $ 274.70 |
| No. of Months | 0 | X Monthly Payment of | $0.00 | = | $ 0.00 |
| No. of Months | 0 | X Monthly Late Charge of | $0.00 | = | $ 0.00 |
| No. of Months | 0 | X Monthly Payment of | $0.00 | = | $ 0.00 |
| No. of Months | 0 | X Monthly Late Charge of | $0.00 | = | $ 0.00 |

| | | |
|---|---|---|
| Unapplied/Suspense | = | $ 0.00 |
| Accrued Late Charges | = | $ 358.20 |
| Appraisal Fees | = | $ 0.00 |
| NSF Check Charges | = | $ 0.00 |
| Property Inspection | = | $ 51.30 |
| Property Preservation | = | $ 0.00 |
| Other: @ $0.00 | = | $ 0.00 |
| @ $0.00 | | |
| @ $0.00 | | |
| @ $0.00 | | |

|  | | |
|---|---|---|
| TOTAL | = | $ 18,653.69 |

| | | |
|---|---|---|
| Bankruptcy Fees | = | $ 375.00 |
| Bankruptcy Costs | = | $ 0.00 |
| Prior Foreclosure Fees | = | $ 1,300.00 |
| Prior Foreclosure Costs | = | $ 1,487.00 |

| | | |
|---|---|---|
| TOTAL PRE-PETITION ARREARAGES AND ATTORNEY FEES AND COSTS DUE FOR PROOF OF CLAIM: | = | $ 21,815.69 |

Creditor:
WASHINGTON MUTUAL BANK, FA
P.O. Box 1169
Milwaukee, WI 53201-1169

Attorney:
RHONDI LYNN SCHWARTZ, ESQ.
Shapiro & Kreisman, 406 Lippincott Drive, Suite J, Marlton, NJ 08053
(609) 810-1700 Fax: (609) 810-1626

*Amended*

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|
| CAMDEN   DISTRICT OF   NJ | AMENDED |

FORM B10

**Name of Debtor** David A. Rivera And Marianne M. Rivera  Case Number  02-16637/JHW
Marianne M. Hampton

BK Chapter: 13

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed in pursuant to 11 U.S.C. Section 503.

**Name of Creditor** (The person or other entity to whom the debtor owes money or property):
WASHINGTON MUTUAL BANK, FA

**Name and Address where notices should be sent:**
WASHINGTON MUTUAL BANK, FA
P.O. BOX 1169
MILWAUKEE, WI  53201-1169

Telephone Number: 414-359-XXXX/800-558-9995

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach a copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

**Account or other number by which creditor identifies debtor:**
Loan Number:  8018587207  Atty File #:01-41614

Check here if ☐ replaces
this claim ☐ amends   a previously filed claim, dated 08/14/2002

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☒ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other _____

☐ Retiree benefits as defined in 11 U.S.C. Section 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Your SS#:
Unpaid compensation for services performed
from _____ to _____
(date)            (date)

**2. Date debt was incurred:** 01/31/2000

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:**  $132,810.70   Principal Balance Only
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☒ Real Estate   ☐ Motor Vehicle
☐ Other _____
Note on: 2203 Beacon Hill Drive  , Sicklerville, NJ  08081
Value of Collateral: $_____

Amount of Arrearage and other charges at time case filed included in secured claim, if any: $21,457.49

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority  $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4300), * earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. Section 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. Section 507(a)(4).
☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. Section 507(a)(6).
☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. Section 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. Section 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. Section 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. Section 507(a)(_).

*Amounts are subject to adjustment on 4/1/01 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**Date**

November 8, 2002

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)

By: RHONDA LYNN SCHWARTZ, ESQ. for Washington Mutual Bank, Fa
Shapiro & Diaz, LLP, 406 Lippincott Drive, Suite J, Marlton, NJ, 08053
(856) 810-1700 Fax: (856) 810-1626

All creditors and their counsel who file a proof of claim are required to serve by first class mail, a true copy of such proof of claim and all attachments thereto upon the Debtor's Counselor Record whose address is shown on the Notice of the Creditors Meeting.

Mail Executed Proof to

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. Sections 152 and 3571.

* Show Creditors SS# or Tax ID # and Office Code Here: _____
(Bank shows Bank Routing Number)

(To be used solely for purpose of processing claim. If number not shown, claim cannot be processed.)

# United States Bankruptcy Court

## Camden District of NJ

## EXHIBIT 'A'

In Re:  David A. Rivera And Marianne M. Rivera Aka

Principal Balance:  $132,810.70                           BK Case #:  02-16637/JHW

Pre-Petition
Payments Due From:  July 1, 2001                 Date on POC:  November 8, 2002

Client:  WASHINGTON MUTUAL BANK, FA

| No. of Months | | | | | |
|---|---|---|---|---|---|
| No. of Months | 2 | X Monthly Payment of | $1,402.82 | = | $ 2,805.64 |
| No. of Months | 2 | X Monthly Late Charge of | $28.06 | = | $ 56.12 |
| No. of Months | 11 | X Monthly Payment of | $1,373.43 | = | $ 15,107.73 |
| No. of Months | 10 | X Monthly Late Charge of | $27.47 | = | $ 274.70 |
| No. of Months | 0 | X Monthly Payment of | $0.00 | = | $ 0.00 |
| No. of Months | 0 | X Monthly Late Charge of | $0.00 | = | $ 0.00 |
| No. of Months | 0 | X Monthly Payment of | $0.00 | = | $ 0.00 |
| No. of Months | 0 | X Monthly Late Charge of | $0.00 | = | $ 0.00 |

| | | |
|---|---|---|
| Unapplied/Suspense | = | $ 0.00 |
| Accrued Late Charges | = | $ 0.00 |
| Appraisal Fees | = | $ 0.00 |
| NSF Check Charges | = | $ 0.00 |
| Property Inspection | = | $ 51.30 |
| Property Preservation | = | $ 0.00 |
| Other:   @ $0.00 | = | $ 0.00 |
| @ $0.00 | | |
| @ $0.00 | | |
| @ $0.00 | | |

|  | | |
|---|---|---|
| **TOTAL** | = | $ 18,295.49 |

| | | |
|---|---|---|
| Bankruptcy Fees | = | $ 375.00 |
| Bankruptcy Costs | = | $ 0.00 |
| Prior Foreclosure Fees | = | $ 1,300.00 |
| Prior Foreclosure Costs | = | $ 1,487.00 |

| | | |
|---|---|---|
| TOTAL PRE-PETITION ARREARAGES AND ATTORNEY FEES AND COSTS DUE FOR PROOF OF CLAIM: | = | $ 21,457.49 |

Creditor:
WASHINGTON MUTUAL BANK, FA
P.O. Box 1169
Milwaukee, WI 53201-1169

Attorney:
RHONDI LYNN SCHWARTZ, ESQ.
Shapiro & Kreisman, 406 Lippincott Drive, Suite J, Marlton, NJ 08053
(609) 810-1700 Fax: (609) 810-1626

# Exhibit D

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEW JERSEY DISTRICT OF NJ

**PROOF OF CLAIM**

| Name of Debtor: DAVID A. RIVERA and MARIANNE M. RIVERA | Case Number 04-22865/JHW |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property): WASHINGTON MUTUAL BANK, FA<br><br>Name and address where notices should be sent:<br><br>WASHINGTON MUTUAL BANK, FA, P.O. Box 1169, Milwaukee, Wisconsin 53201-1169<br><br>All Payments to: WASHINGTON MUTUAL BANK, FA<br>Attn: Default Cash Processing - Alltel<br><br>9601 McAllister Freeway<br>San Antonio, TX 78216<br>Telephone Number: 414-359-XXXX/ | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court.   *This space is for Court Use Only* |

| Account or other number by which creditor identifies debtor:<br>Loan Number: 8018587207 Atty File #: 01-41614 | Check here if ☐ replaces<br>this claim ☐ amends   a previously filed claim, dated: |
|---|---|

| 1. Basis for Claim<br>☐ Goods sold<br>☐ Services performed<br>☒ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☐ Other: _____ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (Fill out below)<br><br>Your Social Security number _____-____-____<br><br>Unpaid compensation for services performed<br><br>from _____ to _____<br>     (date)        (date) |
|---|---|

| 2. Date Debt was incurred  January 31, 2000 | 3. If court judgment, date obtained: |
|---|---|

4. Total Amount of Claim   $ 130,289.99 Principal Balance Only
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

| 5. Secured Claim<br>☒ Check this box if your claim is secured by collateral (including a right of setoff).<br>Brief Description of Collateral:<br>☒ Real Estate          ☐ Motor Vehicle<br>☐ Other _____<br><br>Note on: 2203 BEACON HILL DRIVE, SICKLERVILLE, NJ 08081<br>Value of Collateral: $_____<br><br>Amount of arrearage and other charges at time case filed<br>included in secured claim, if any  $24,652.96 | 6. Unsecured Priority Claim<br>☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority  $_____<br>Specify the priority of the claim:<br>☐ Wages, salaries, or commissions (up to $4300),* earned within 90 days within filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier -11 U.S.C. § 507(a)(3).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).<br>☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).<br>☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a-_____).<br><br>*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
|---|---|

| 7. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>8. Supporting Documents: *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>9. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

| Date<br><br>May 27, 2004 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>*Linda A Hynes*<br><br>By: Linda A. Hynes, Esq for WASHINGTON MUTUAL BANK, FA<br>Shapiro & Diaz, LLP, 406 Lippincott Drive, Suite J, Marlton, NJ 08053<br>(856) 810-1700 Fax: (856) 810-1626 | All creditors and their counsel who file a proof of claim are required to serve by first class mail a true copy of such proof of claim and all attachments thereto upon the Debtors Counsel or Record whose address is shown on the Notice of the Creditors Meeting. | Mail Executed Proof to |
|---|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

| * Show Creditors SS# or Tax ID # and Office Code Here: _____<br>(Bank shows Bank Routing Number) | (To be used solely for purpose of processing claim.<br>If number not shown, claim cannot be processed.) |
|---|---|

## UNITED STATES BANKRUPTCY COURT
### District Of New Jersey District of NJ
# EXHIBIT 'A'

In Re: DAVID A. RIVERA and
MARIANNE M. RIVERA

Principal Balance: $130,289.99          BK Case #: 04-22865/JHW

Pre-Petition
Payments Due From: April 1, 2003 - April 1, 2004          Date on POC: May 27, 2004

Client: WASHINGTON MUTUAL BANK, FA

| | | | | |
|---|---|---|---|---|
| No. of Months 13 | X Monthly Payment of | $1,524.78 | = | $19,822.14 |
| No. of Months 04 | X Monthly Late Charge of | $30.50 | = | $122.00 |
| No. of Months 01 | X Monthly Late Charge of | $30.50 | = | $30.50 |
| Unapplied/Suspense | | | = | $0.00 |
| Accrued Late Charges | | | = | $773.87 |
| Appraisal Fees | | | = | $0.00 |
| NSF Check Charges | | | = | $0.00 |
| Property Inspection | | | = | $109.30 |
| Property Preservation | | | = | $0.00 |

Other: REIMBURSED THRU THE PRIOR BKY @ $-853.29

Other: PRIOR BKY FEES/COSTS @ $825.00

| | | |
|---|---|---|
| TOTAL = | | $20,829.52 |
| Bankruptcy Fees | = | $375.00* |
| Bankruptcy Costs | = | $0.00 |
| Prior Foreclosure Fees | = | $1,550.00 |
| Prior Foreclosure Costs | = | $1,898.44 |
| TOTAL PRE-PETITION ARREARAGES AND ATTORNEY FEES AND COSTS DUE FOR PROOF OF CLAIM | = | $24,652.96 |

Creditor:
WASHINGTON MUTUAL BANK, FA
P.O. Box 1169, Milwaukee, Wisconsin 53201-1169

Attorney:
Linda A. Hynes, Esq
Shapiro & Diaz, LLP, 406 Lippincott Drive, Suite J, Marlton, NJ 08053
(856) 810-1700 Fax: (856) 810-1626

# Exhibit E

under the mortgage in connection with the sale or other transfer, unless:

(1) At least one of the persons acquiring ownership is determined to be creditworthy under applicable standards prescribed by the Secretary;

(2) The selling mortgagor retains an ownership interest in the property; or

(3) The transfer is by devise or descent.

(c) *Investors and secondary residences.* The mortgagee shall not approve the sale of other transfer or mortgaged property to a person who cannot be approved as a substitute mortgagor as provided in § 203.258 of this part because the property will not be a primary residence or a secondary residence permitted by that section.

(d) *Due-on-sale clause.* Each mortgage shall contain a due-on-sale clause permitting acceleration, in a form prescribed by the Secretary. If a sale or other transfer occurs without mortgagee approval and a prohibition in paragraphs (b) or (c) of this section applies, a mortgagee shall enforce this section by requesting approval from the Secretary to accelerate the mortgage, provided that acceleration is permitted by applicable law. The mortgagee shall accelerate if approval is granted. This paragraph applies only if the application by the mortgagor on a form approved by the Secretary is dated on or after December 1, 1986.

[53 FR 42649, Aug. 11, 1993; 59 FR 15112, Mar. 31, 1994]

PAYMENTS, CHARGES AND ACCOUNTS

§ 203.550  Escrow accounts.

(a) It is the mortgagee's responsibility to make escrow disbursements before bills become delinquent. Mortgagees must establish controls to insure that bills payable from the escrow fund or the information needed to pay such bills is obtained on a timely basis. Penalties for late payments for items payable from the escrow account must not be charged to the mortgagor unless it can be shown that the penalty was the direct result of the mortgagor's error or omission. The mortgagee shall use the procedures set forth in § 3500.17 of this title, implementing Section 10 of the Real Estate Settlement Procedures Act (12 U.S.C. 2609), to compute

the amount of the escrow, the methods of collection and accounting, and the payment of the bills for which the money has been escrowed.

(b) [Reserved]

(c) In the case of escrow accounts created for purposes of § 203.52 or § 234.64 of this chapter, mortgagees may estimate escrow requirements based on the best information available as to probable payments that will be required to be made from the account on a periodic basis throughout the period during which the account is maintained.

(d) The mortgagee shall not institute foreclosure when the only default of the mortgagor occupant is a present inability to pay a substantial escrow shortage, resulting from an adjustment pursuant to this section, in a lump sum.

(e) When the contract of mortgage insurance is terminated voluntarily or because of prepayment in full, sums in the escrow account to pay the mortgage insurance premiums shall be remitted to HUD with a form approved by the Secretary for reporting the voluntary termination of prepayment. Upon prepayment in full sums held in escrow for taxes and hazard insurance shall be released to the mortgagor promptly.

(Approved by the Office of Management and Budget under control number 2502–0474)

[41 FR 49736, Nov. 10, 1976, as amended at 57 FR 9611, Mar. 19, 1992; 57 FR 27927, June 23, 1992; 59 FR 53901, Oct. 26, 1994; 60 FR 8812, Feb. 15, 1995]

§ 203.552  Fees and charges after endorsement.

(a) The mortgagee may collect reasonable and customary fees and charges from the mortgagor after insurance endorsement only as provided below. The mortgagee may collect these fees or charges from the mortgagor only to the extent that the mortgagee is not reimbursed for such fees by HUD.

(1) Late charges as set forth in § 203.25;

(2) Charges for processing or reprocessing a check returned as uncollectible; (Where bank policy permits, the mortgagee must deposit a check for collection a second time before assessing a bad check charge);

241

(3) Fees for processing a change of ownership of the mortgaged property;

(4) Fees and charges for arranging a substitution of liability under the mortgage in connection with the sale or transfer of the property;

(5) Charges for processing a request for credit approval of an assumptor or substitute mortgagor;

(6) Charges for substitution of a hazard insurance policy at other than the expiration of term of the existing hazard insurance policy;

(7) Charges for modification of the mortgage involving a recorded agreement for extension of term or re-amortization;

(8) Fees and charges for processing a partial release of the mortgaged property;

(9) Attorney's and trustee's fees and expenses actually incurred (including the cost of appraisals pursuant to § 203.368(e) and cost of advertising pursuant to § 203.368(h)) when a case has been referred for foreclosure in accordance with the provisions of this part after a firm decision to foreclose if foreclosure is not completed because of a reinstatement of the account. (No attorney's fee may be charged for the services of the mortgagee's or servicer's staff attorney or for the services of a collection attorney other than the attorney handling the foreclosure.)

(10) The service charge provided for by § 203.23(c) and escrow charges in accordance with § 203.23(a);

(11) A trustee's fee if the security instrument in deed-of-trust states provides for payment of such a fee for execution of a satisfactory, release, or trustee's deed when the deed of trust is paid in full; and

(12) Such other reasonable and customary charges as may be authorized by the Secretary. (This shall not include:

(i) Charges for servicing activities of the mortgagee or servicer;

(ii) Fees charged by independent tax servicer organizations which contract to furnish data and information necessary for the payment of property taxes,

(iii) *Satisfaction, termination,* or *reconveyance* fees when a mortgage is paid in full (other than as provided in paragraph (a)(11) of this section), or

(iv) The fee for recordation of a satisfaction of the mortgage in states where recordation is the responsibility of the mortgagee.)

(13) Where permitted by the security instrument, attorney's fees and expenses actually incurred in the defense of any suit or legal proceeding wherein the mortgagee shall be made a party thereto by reason of the mortgage; (No attorney's fee may be charged for the services of the mortgagee's or servicer's staff attorney.)

(14) Property preservation expenses incurred pursuant to § 203.377.

(b) *reasonable and customary* fees must be predicated upon the actual cost of the work performed including out-of-pocket expenses. Directors of HUD Area and Insuring Offices are authorized to establish maximum fees and charges which are reasonable and customary in their areas. Except as provided in this part, no fee or charge shall be based on a percentage of either the face amount of the mortgage or the unpaid principal balance due on the mortgage.

[41 FR 49736, Nov. 10, 1976, as amended at 52 FR 1330, Jan. 13, 1987; 61 FR 35019, July 3, 1996; 62 FR 60130, Nov. 6, 1997]

§ 203.554 Enforcement of late charges.

(a) A mortgagee shall not commence foreclosure when the only default on the part of the mortgagor is the failure to pay a late charge or charges (§ 203.25), except as provided in § 203.556.

(b) A late charge attributable to a particular installment payment due under the mortgage shall not be deducted from that installment. However, if the mortgagee thereafter notifies the mortgagor of his obligation to pay a late charge, such a charge may be deducted from any subsequent payment or payments submitted by the mortgagor or on his behalf if this is not inconsistent with the terms of the mortgage. Partial payments shall be treated as provided in § 203.556.

(c) A payment may be returned because of failure to include a late charge only if the mortgagee notifies the mortgagor before imposition of the charge of the amount of the monthly payment, the date when the late charge will be imposed and either the amount of the late charge or the total

# Exhibit F

**U.S. Department of Housing and Urban Development**
Washington, D.C. 20410-8000
September 22, 1998

OFFICE OF THEASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

**MORTGAGEE LETTER 98- 26**

**TO:  ALL APPROVED MORTGAGEES**

**ATTENTION: Single Family Servicing Managers**

**SUBJECT:**     **Single Family Default and Foreclosure Servicing**
**Policy and Procedural Changes Including**
**HUD Schedule of Allowable Attorney Fees**


The purpose of this mortgagee letter is to provide guidance for several policy and procedural changes related to the acquisition of title and in the preparation and filing of Single Family Mortgage Insurance Claims.

1.     <u>**HUD's Schedule of Allowable Attorney Fees**</u>

<u>**Background**</u>

Historically, the Department has not published a reimbursement schedule for attorney fees.  HUD usually deferred to Fannie Mae's Schedule of Standard Attorney's Fees as a reasonable standard for claim reimbursement because the requirements for default and foreclosure servicing between HUD and Fannie Mae were previously very similar.  However, HUD has always reserved the right to reimburse only those costs which it considers to be reasonable and customary.

When HUD Handbook 4330.4, Single Family Insurance Claims, was issued in September 1994, the guidance in effect from Fannie Mae was the Standard Attorney Fee Schedule issued March 1, 1993, along with a May 1993 clarification for Pennsylvania cases. HUD has continued to accept that schedule, along with an additional clarification for Arkansas cases issued by Fannie Mae in November 1994, as the basis for determining reasonable and customary attorney fees.

Since that time, Fannie Mae has issued several changes to their foreclosure, eviction and bankruptcy related servicing requirements.  The policy and procedural changes introduced by Fannie Mae relied heavily upon the exclusive use of specific vendors.  Because the Department did not adopt that approach, it did not endorse the policy and procedural changes noted in Fannie Mae's Announcements 96-6, 96-12, and 97-5.

To simplify this issue, HUD is issuing its own schedule for establishing reasonable and customary limits for the reimbursement of attorney fees. HUD's Schedule of Attorney Fees is attached.

## Effective Dates for HUD's Schedule of Attorney Fees

### Foreclosures

The HUD Schedule of Attorney Fees will become effective for all cases where the first legal action taken to initiate foreclosure is on or after December 1, 1998. In the interim, mortgagees shall continue to follow the March 1, 1993, Fannie Mae schedule alone, with the May 1993 clarification for Pennsylvania cases and the November 1994 clarification for Arkansas cases.

### Bankruptcy Actions

The HUD Schedule will become effective for all bankruptcy clearances under-taken on or after December 1, 1998. In most cases this event will occur when a petition for a release of the bankruptcy stay is submitted to the bankruptcy court. HUD will not accept the date the lender requests its attorney begin legal action as sufficient. Bankruptcy clearances begun prior to the effective date shall be reimbursed according to the March 1993 Fannie Mae schedule.

### Possessory Actions (Evictions)

The HUD Schedule will become effective for all possessory actions undertaken on or after December 1, 1998. Possessory actions begun prior to the effective date shall be reimbursed according to the March 1993 Fannie Mae schedule.

### Deeds in Lieu of Foreclosure

The HUD Schedule will become effective for all deeds in lieu recorded into HUD's name on or after December 1, 1998. In the interim, mortgagees shall continue to follow the March 1993 Fannie Mae schedule.

## 2.   No Required use of Specific Attorneys

HUD has not retained the services of a specific group of attorneys for foreclosures and related actions. Mortgagees are expected to use competent attorneys that have the requisite expertise to timely complete foreclosures and related legal actions in the subject jurisdictions. The Department also expects mortgagees to ensure that all foreclosures are completed within established HUD time frames.

**3.      Extension Date for Cases Released from Bankruptcy**

Mortgagee Letter 98-7, issued January 27, 1998, announced a consolidation of the 60 day allowance provided to initiate foreclosure (or otherwise meet the requirements of 24 CFR 203.355), and the 30 day allowance provided if a demand letter was required.

Cases released from bankruptcy on or after February 1, 1998, shall be provided this consolidated 90 day time period to initiate foreclosure or otherwise meet the requirements of 24 CFR 203.355.

**4.      Items Included in Claim Payment**

Mortgagee Letter 98-7, dated January 27, 1998, announced that HUD was changing the percentage of foreclosure and acquisition costs that would be reimbursed.  These changes would become effective for all mortgages insured on or after February 1, 1998.  This reimbursement percentage will be periodically revised based upon HUD's review of lender performance.  All revisions will be announced by Mortgagee Letter in advance of the effective date of the change.

In addition to continuing to identify attorney fees in Item 306 of Form HUD-27011 and foreclosure and acquisition costs in item 307, mortgagees shall identify bankruptcy fees in item 310. (These costs should be carried forward to items 112, 113 and 114, respectively of Form HUD-27011, Part B.) HUD will calculate the appropriate percentage that will be reimbursed in accordance with the performance incentives.

Sincerely,


Ira G. Peppercorn
General Deputy Assistant
    Secretary for Housing


Attachments

# HUD SCHEDULE OF STANDARD ATTORNEY'S FEES

| State | Nonjudicial Foreclosure | Judicial Foreclosure | Bankruptcy Clearance | Possessory Action | Deed-in-Lieu |
|---|---|---|---|---|---|
| AK | $1,000 | | $750 | $350 | $250 |
| AL | $500 | - | $750 | $350 | $300 |
| AR | $500 | $750 | $750 | $250 | $250 |
| AZ | $500 | $500 | $750 | $250 | $200 |
| CA | $600 | - | $750 | $500 | $250 |
| CO | $700 | $550 | $750 | $250 | $200 |
| CT | - | $750 | $750 | $350 | $275 |
| DC | $500 | - | $750 | $350 | $300 |
| DE | - | $650 | $750 | $300 | $275 |
| FL | - | $1,000 | $750 | $350 | $300 |
| GA | $500 | - | $750 | $350 | $300 |
| GU | $1,200 | - | $750 | $350 | $250 |
| HI | - | $1,850 | $750 | $350 | $250 |
| IA | $500 | $725 | $750 | $300 | $250 |
| ID | $400 | - | $750 | $350 | $250 |
| IL | - | $800 | $750 | $300 | $250 |
| IN | - | $750 | $750 | $300 | $250 |
| KS | - | $750 | $750 | $300 | $200 |
| KY | - | $750 | $750 | $350 | $300 |
| LA | - | $750 | $750 | $300 | $200 |
| MA | - | $1,200 | $750 | $600 | $275 |
| MD | $750 | - | $750 | $350 | $300 |
| ME | - | $1,200 | $750 | $500 | $275 |
| MI | $500 | $700 | $750 | $300 | $250 |
| MN | $500 | $800 | $750 | $300 | $250 |
| MO | $550 | $550 | $750 | $300 | $200 |
| MS | $500 | - | $750 | $350 | $300 |
| MT | $575 | - | $750 | $350 | $250 |
| NC | $500 | - | $750 | $350 | $300 |
| ND | - | $800 | $750 | $300 | $250 |
| NE | $500 | $750 | $750 | $300 | $250 |
| NH | $750 | - | $750 | $400 | $275 |
| NJ | - | $1,000 | $750 | $350 | $275 |
| NM | - | 550 | $750 | $250 | $200 |
| NV | $550 | - | $750 | $350 | $250 |
| NY | $750 | 1100 | $750 | $700 | $275 |
| OH | - | $800 | $750 | $300 | $250 |

# HUD SCHEDULE OF STANDARD ATTORNEY'S FEES

| State | Nonjudicial Foreclosure | Judicial Foreclosure | Bankruptcy Clearance | Possessory Action | Deed-in-Lieu |
|---|---|---|---|---|---|
| OK | - | $600 | $750 | $250 | $200 |
| OR | $550 | - | $750 | $350 | $250 |
| PA | - | $800 | $750 | $400 | $275 |
| PR | - | $625 | $750 | $275 | $275 |
| RI | $600 | - | $750 | $500 | $275 |
| SC | - | $750 | $750 | $350 | $300 |
| SD | $500 | $700 | $750 | $300 | $250 |
| TN | $500 | - | $750 | $350 | $300 |
| TX | $450 | - | $750 | $300 | $200 |
| UT | $425 | $550 | $750 | $250 | $200 |
| VA | $500 | - | $750 | $350 | $300 |
| VI | - | $625 | $750 | $275 | $275 |
| VT | - | $700 | $750 | $350 | $275 |
| WA | $550 | - | $750 | $350 | $250 |
| WI | - | $800 | $750 | $300 | $250 |
| WV | $500 | - | $750 | $350 | $300 |
| WY | $600 | - | $750 | $350 | $250 |



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

**August 24, 2001**

**MORTGAGEE LETTER 2001-19**

## TO:  ALL APPROVED MORTGAGEES

**ATTENTION:**      **Single Family Servicing Managers**

**SUBJECT:**      **Single Family Foreclosure Policy and Procedural Changes:**
**Non-Judicial Foreclosure in Hawaii;**
**First Legal Action to Commence Foreclosure in GU, IA, SD, & VI;**
**Reasonable Diligence for Acquiring Possession;**
**Update to HUD's Schedule of Allowable Attorney Fees; and**
**Update to HUD's Foreclosure Time Frames**

The purpose of this Mortgagee Letter is to provide guidance for several policy and procedural changes related to the acquisition of title and possession, and in the preparation and filing of Single Family Mortgage Insurance Claims.  Specifically, in response to several recent inquiries, this mortgagee letter clarifies under what circumstances non-judicial foreclosure will be acceptable in Hawaii.  In addition, this mortgagee letter provides updates to HUD's Reasonable Diligence Time Frames and Schedule of Attorney Fees for all jurisdictions.  The Department is also confirming its procedure for measuring compliance of the Reasonable Diligence time requirement where lenders must commence legal actions to acquire possession of property.

1. <u>**Non-Judicial Foreclosure in Hawaii**</u>.

At the time HUD Handbook 4330.4, REV-1, was updated in September 1994, the most common form of foreclosure in Hawaii was judicial foreclosure.  Therefore, there was no reference to the use of non-judicial foreclosure in Hawaii.  However, the Department did not intend to prohibit the payment of claims where the mortgagee obtains title through non-judicial foreclosure in jurisdictions where this was a common form of foreclosure.  In Hawaii a number of mortgagees have begun to use this foreclosure method as a result of the increased willingness of title insurance companies to issue policies for non-judicial foreclosure sales.  Consequently, this Mortgagee Letter clarifies that non-judicial foreclosure is an acceptable foreclosure method in Hawaii, and establishes a reasonable diligence time frame and attorney fee schedule for this foreclosure method.

Effective for all Hawaiian cases where the first legal action to initiate non-judicial foreclosure occurs on or after October 1, 2001, mortgagees' performance in prosecuting non-judicial foreclosures will be measured according to the reasonable diligence time frames provided in Attachment 2.  Also, effective for all Hawaiian cases where the first legal action to initiate non-judicial foreclosure occurs on or after October 1, 2001, mortgagees must follow the updated Schedule of Attorney Fees in Attachment 3.  The Department is updating Appendix 6 in Handbook 4330.4, REV-1, to reflect that, in the case of non-judicial foreclosures in Hawaii, publication of a notice of intent to foreclose is the first public action required by law to initiate foreclosure and a mortgage is the typical security instrument used.  The updated list in Attachment 1 replaces the list in Appendix 6, Handbook 4330.4, REV-1.

For cases where the first legal action to initiate an Hawaiian non-judicial foreclosure was taken before October 1, 2001, the Department will pay claims for insurance benefits as long as the mortgagee conveys good and marketable title, which is accompanied by title evidence acceptable to the Department.  The expectation is that a non-judicial foreclosure should be less time-consuming and expensive to complete than a judicial foreclosure.  Consequently, the Department may require reimbursement if the costs claimed or the time to prosecute the foreclosure proceeding are excessive.

## 2.   Update of First Legal Action to Commence Foreclosure in GU, IA, SD, & VI

The Department recently reviewed the guidance it gave in Appendix 6 of Handbook 4330.4, REV-1, on what is the first legal action to commence foreclosure.  As a result of this review, the Department has determined that it is necessary to update Appendix 6 to specify the first public action for foreclosure methods inadvertently left off the list.   The updated list identifies the first public action for judicial foreclosures in the Virgin Islands and for non-judicial foreclosures in Guam, Iowa, and South Dakota.  The updated list as provided in Attachment 1 replaces the list in Appendix 6, Handbook 4330.4, REV-1.

## 3.   Reasonable Diligence for Acquiring Possession

HUD regulation 24 CFR 203.356(b) provides that mortgagees "must exercise reasonable diligence in prosecuting the foreclosure proceedings to completion and in acquiring title to and possession of the property."  This regulation also states that HUD will provide mortgagees with time frames in which they must complete reasonable diligence.  Prior to the issuance of this Mortgagee Letter, the outstanding guidance listing the state by state time frames was provided in Appendix 7, HUD Handbook 4330.4, Rev-1, dated September 1994.  These time frames identified the time between the first public legal action required by the jurisdiction to commence foreclosure and the date that the foreclosure deed (Sheriff's, Trustee's, etc.) or certificate of title is recorded.  The Department does not require mortgagees to acquire possession within these time frames when a separate eviction or possessory action is necessary.

When a separate legal action is necessary to gain possession, the Department expects the lender to begin such action immediately after completion of the foreclosure.  However, the Department has noted that some lenders are seriously delaying commencement of necessary eviction or possessory actions notwithstanding the reasonable diligence requirement in 24 CFR

203.356(b).  Consequently, lenders must take the first public legal action to initiate the eviction or possessory action within thirty calendar days of foreclosure completion.  This requirement is effective for all cases where foreclosure completion occurs after the date of this Mortgagee Letter.

Lenders are cautioned that compliance with this time requirement for initiating legal action only partially satisfies a lender's obligation under 24 CFR 203.356(b) to use reasonable diligence to acquire possession.  The thirty day time requirement is only for initiating the legal action, not completing the action.  At this time, the Department is not issuing time frames in which lenders must acquire possession because of wide differences in time periods depending upon the location of the property and other factors outside of the lender's control such as sheriff's scheduling and the weather.

Pursuant to 24 CFR 203.365(c), lenders must retain in the claim review file supporting documentation that they acted with reasonable diligence to acquire possession of the property.  Lenders will be required to provide written documentation to justify any delays in initiating the legal action to acquire possession.  Lenders who do not provide adequate documentation will be required to reimburse the Department for debenture interest paid by HUD for the period after "the particular required action should have been taken."  See 24 CFR 203.365(c)(1) and 203.402(k).  Although it is impossible to specify all types of appropriate documentation, supporting documentation may include attorney's correspondence or copies of court records.

4.     **Effective Dates for HUD's Reasonable Diligence Foreclosure Time Frames**

The Department is revising the reasonable diligence foreclosure time frames for several jurisdictions.  Effective for all cases where the first legal action to initiate foreclosure occurs on or after October 1, 2001, mortgagees' performance in prosecuting foreclosures will be measured according to the reasonable diligence time frames provided in Attachment 2.  For cases where the first legal action occurred prior to October 1, 2001, mortgagees shall continue to follow the reasonable diligence time frames identified in Appendix 7 of Handbook 4330.4, REV-1.

5.     **Effective Dates for HUD's Schedule of Attorney Fees**

The Department has decided to revise the attorney fees that it will pay for various legal actions.  The revised fees are provided in Attachment 3.

**Foreclosures**

The update to HUD's Schedule of Attorney Fees, as provided in Attachment 3, will become effective for all cases where the first legal action to initiate foreclosure occurs on or after October 1, 2001.  In the interim, mortgagees shall continue to follow the HUD Schedule of Attorney Fees that was issued with Mortgagee Letter 98-26 on September 22, 1998.

**Bankruptcy Actions**

The HUD Schedule of Attorney Fees will become effective for all bankruptcy clearances undertaken on or after October 1, 2001.  A bankruptcy clearance begins when a petition for release of the bankruptcy stay is submitted to the bankruptcy court. Bankruptcy clearances begun prior to the effective date shall be reimbursed according to HUD's Schedule of Attorney Fees that was issued with Mortgagee Letter 98-26 on September 22, 1998.

**Possessory Actions (Evictions)**

The HUD Schedule of Attorney Fees will become effective for all possessory actions undertaken on or after October 1, 2001.  Possessory actions begun prior to the effective date shall be reimbursed according to HUD's Schedule of Attorney Fees that was issued with Mortgagee Letter 98-26 on September 22, 1998.

**Deeds-in-Lieu of Foreclosure**

The HUD Schedule of Attorney Fees will become effective for all deeds-in-lieu recorded in HUD's name on or after October 1, 2001.  In the interim, mortgagees shall continue to follow HUD Schedule of Attorney Fees that was issued with Mortgagee Letter 98-26 on September 22, 1998.

Sincerely,


_____
John C. Weicher
Assistant Secretary for Housing-
 Federal Housing Commissioner

Attachments

# HUD SCHEDULE OF STANDARD ATTORNEY'S FEES – EFFECTIVE 10/1/2001

| STATE | NONJUDICIAL FORECLOSURE | JUDICIAL FORECLOSURE | BANKRUPTCY CLEARANCE | POSSESSORY ACTION | DEED-IN-LIEU |
|---|---|---|---|---|---|
| AK | $1,200 | | $750 | $350 | $350 |
| AL | $550[1] | | $750 | $350 | $350 |
| AR | $600 | | $750 | $250 | $350 |
| AZ | $625 | | $750 | $250 | $350 |
| CA | $600 | | $750 | $500 | $350 |
| CO | $800 | | $750 | $250 | $350 |
| CT | | $1300[2] | $750 | $350 | $350 |
| DC | $600[1] | | $750 | $350 | $350 |
| DE | | $950 | $750 | $300 | $350 |
| FL | | $1,200 | $750 | $350 | $350 |
| GA | $600[1,3] | | $750 | $350 | $350 |
| GU | $1,200 | | $750 | $350 | $350 |
| HI | $1,200 | $1,850 | $750 | $500 | $350 |
| IA | $550 | $850 | $750 | $300 | $350 |
| ID | $600 | | $750 | $350 | $350 |
| IL | | $1,100[5] | $750 | $300 | $350 |
| IN | | $1,000 | $750 | $300 | $350 |
| KS | | $850 | $750 | $300 | $350 |
| KY | | $1,100 | $750 | $350 | $350 |
| LA | | $900 | $750 | $300 | $350 |
| MA | | $1,250 | $750 | $600 | $350 |
| MD | $800[1,3] | $800 | $750 | $350 | $350 |
| ME | | $1,250 | $750 | $500 | $350 |
| MI | $650[6] | | $750 | $300 | $350 |
| MN | $650 | | $750 | $300 | $350 |
| MO | $650 | | $750 | $300 | $350 |
| MS | $550[1] | | $750 | $350 | $350 |
| MT | $600 | | $750 | $350 | $350 |
| NC | $550[1] | | $750 | $350 | $350 |
| ND | | $900 | $750 | $300 | $350 |
| NE | $600[7] | $850 | $750 | $300 | $350 |
| NH | $900 | | $750 | $400 | $350 |
| NJ | | $1,300 | $750 | $350 | $350 |
| NM | | $900 | $750 | $250 | $350 |
| NV | $600 | | $750 | $350 | $350 |
| NY | | $1,250[8] | $750 | $700 | $350 |
| OH | | $1,100 | $750 | $300 | $350 |
| OK | | $900[5] | $750 | $250 | $350 |
| OR | $675 | | $750 | $350 | $350 |
| PA | | $1,250[9] | $750 | $400 | $350 |
| PR | | $1,100[10] | $750 | $275 | $350 |

| | | | | |
|---|---|---|---|---|
| RI | $900 | | $750 | $500 | $350 |
| SC | | $800 | $750 | $350 | $350 |
| SD | $550 | $850 | $750 | $300 | $350 |
| TN | $550[1] | | $750 | $350 | $350 |
| TX | $550 | | $750 | $300 | $350 |
| UT | $600 | $550 | $750 | $250 | $350 |
| VA | $600[1,3] | | $750 | $350 | $350 |
| VI | | $1,100 | $750 | $275 | $350 |
| VT | | $950 | $750 | $350 | $350 |
| WA | $675 | | $750 | $350 | $350 |
| WI | | $1,100 | $750 | $300 | $350 |
| WV | $550[1,3] | | $750 | $350 | $350 |
| WY | $600 | | $750 | $350 | $350 |

**Footnotes:**

(1)    The fee covers the combined attorney's and notary's fees

(2)    This fee applies to strict foreclosures.  If the foreclosure orders a Foreclosure by Sale, the fee will be $1500.

(3)    The fee covers both the attorney's fee and the trustee's commission (or statutory fee).

(4)    The fee includes reimbursement of any fee for the attorney's certificate of title.

(5)    The fee increases by $100 if foreclosure is achieved by summary judgment.

(6)    The fee increases to $1050 for a nonjudicial foreclosure for a case in which the attorney provides services for "proceedings subsequent" that involve registered land.

(7)    This fee relates to the exercise of the power of sale under a deed of trust.

(8)    This fee applies to foreclosures other than those conducted in New York City  and Long Island.  A fee of $1800 applies to foreclosures conducted in the five boroughs of New York City (Bronx, Brooklyn/Kings, Manhattan, Queens and Staten Island) and in Long Island (Nassau and Suffolk Counties).

(9)    The fee covers certain additional legal actions necessary to complete the foreclosure, including motions to postpone or relist a sale and motions to reassess damages.

(10)    In addition to the allowable foreclosure fee, $150 is allowed for a notary fee for completed foreclosures.  However, if a deed of judicial sale cannot be executed contemporaneously with the foreclosure sale, $300 is allowed for the notary fee.

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-8000

ASSISTANT SECRETARY FOR HOUSING-
FEDERAL HOUSING COMMISSIONER

July 12, 2005

**MORTGAGEE LETTER 2005-30**

**TO:**          **All Approved Mortgagees**

**ATTENTION:**   **Single Family Servicing Managers**

**SUBJECT:**     **Single Family Foreclosure Policy and Procedural Changes:**
   **Reasonable Diligence Requirements;**
   **Update to HUD's Schedule of Allowable Attorney Fees; and**
   **Update to HUD's Foreclosure Time Frames**

   This Mortgagee Letter provides updates to HUD's reasonable diligence time frames and the schedule of attorney fees for all jurisdictions.

### REASONABLE DILIGENCE REQUIREMENTS AND EFFECTIVE DATES

   When foreclosure of a defaulted loan is necessary, HUD regulation 24 CFR 203.356(b) provides that mortgagees "must exercise reasonable diligence in prosecuting the foreclosure proceedings to completion and in acquiring title to and possession of the property." That regulation also states that HUD will make available to mortgagees a time frame that constitutes "reasonable diligence" for each state. This Mortgagee Letter provides an update to the state foreclosure time frames and attorney's fee schedules that were provided in Mortgagee Letter 2001-19, dated August 24, 2001. The updates are as follows:

Foreclosures

   Attachment 1 provides listings of the first legal action necessary to initiate foreclosure on a mortgage and of the typical security instrument used in each state. Reasonable diligence time frames for completing foreclosure and acquisition of title in each state are provided in Attachment 2. These time frames identify the time between the first legal action required by the jurisdiction to commence foreclosure and the date that the foreclosure deed (Sheriff's, Trustee's, etc. or certificate of title) is recorded. Delays in completing foreclosure due to bankruptcy are treated as exceptions and are not included in the time frames.

The revised time frames provided in Attachment 2 will be effective for all cases where the first legal action to initiate foreclosure occurs on or after September 1, 2005.

<u>Acquiring Possession</u>

When a separate legal action is necessary to gain possession following foreclosure, an automatic extension of the reasonable diligence time frame will be allowed for the actual time necessary to complete the possessory action provided that the mortgagee begins such action promptly. Mortgagees must take the first public legal action to initiate the eviction or possessory action within thirty calendar days of foreclosure completion to qualify for this extension of the reasonable diligence time frame.

The Department is not issuing time frames for completing possessory actions because of wide differences in time periods depending upon the location of the property and other factors outside of the mortgagee's control.

<u>Bankruptcies</u>

When a borrower files bankruptcy after foreclosure proceedings have been instituted, an extension of the reasonable diligence time frame for foreclosure and acquisition of the property will be allowed. However, the mortgagee must ensure that all necessary bankruptcy-related legal actions are handled in a timely and effective manner. The case must be promptly referred to a bankruptcy attorney after the bankruptcy is filed and the mortgagee must monitor the action to ensure that the case is timely resolved. The time frame for completing legal action on a bankruptcy will vary based on the chapter under which the bankruptcy is filed.

<u>Chapter 7 Bankruptcy Filings</u>

HUD does not reimburse for legal expenses associated with a current FHA-insured mortgage. Where the mortgagee cannot proceed with foreclosure action because of a Chapter 7 Bankruptcy, the case shall be resolved through dismissal, termination of the automatic stay or trustee abandonment of all interest in the secured property. The mortgagee's claim review file must document that the case was promptly referred to the mortgagee's foreclosure attorney after the bankruptcy filing.

In general, the additional time allowed for the Chapter 7 Bankruptcy delay for meeting the reasonable diligence requirement shall not exceed 90 days from the date of the bankruptcy filing. Any delay beyond 90 days from the date of bankruptcy filing must be supported by documentation that the delay was not due to the failure of the mortgagee to timely notify its bankruptcy attorney or by any failure of the mortgagee's attorney.

Chapter 13 (and Chapter 11 and 12) Bankruptcy Filings

> HUD does not reimburse for legal expenses associated with a current FHA-insured mortgage. Where the mortgagee cannot proceed with foreclosure action because of a Chapter 13 (or Chapter 11 or 12) Bankruptcy, the case shall be resolved through dismissal, termination of the automatic stay or trustee abandonment of all interest in the secured property. The mortgagee's claim review file must document that the case was promptly referred to the mortgagee's attorney after the bankruptcy filing.

> In addition to prompt and accurate notification to the bankruptcy court, the mortgagee shall closely monitor the payments required by the bankruptcy court. If the borrower becomes 60 days delinquent in payments required under a Chapter 13 (or Chapter 11 or 12) plan, the lender must ensure that prompt legal action is taken to resolve the matter.

> In general, the additional time allowed for the Chapter 13 (or Chapter 11 or 12) Bankruptcy delay for meeting the reasonable diligence requirement shall not exceed 90 days from the date of the payments under the bankruptcy plan became 60 days delinquent. Any delay beyond 90 days from the date of the account became 60 days delinquent under the terms of the bankruptcy plan must be supported by documentation that the delay was not due to the failure of the mortgagee to timely notify its bankruptcy attorney or by any failure of the mortgagee's attorney.

Non-compliance

Mortgagees are responsible for "self-curtailment" of interest on single-family claims where reasonable diligence or reporting requirements are not met. Self-curtailment shall be accomplished by identification of the interest curtailment date on Form HUD-27011, Item 31. Explanation and examples are provided in Attachment 4.

## SCHEDULE OF ATTORNEY FEES AND EFFECTIVE DATES

The Department has revised the attorney fees that will be considered as reasonable and customary for various legal actions for purposes of calculating the maximum amount HUD will reimburse in an insurance claim. The updated fee schedules are provided in Attachment 3.

These fees cover the customary legal services performed in each type of action. In all cases, the amount claimed for attorney fees shall reasonably relate to the work actually performed. In the event a legal action is stopped for a loss mitigation option, a reinstatement or a payment in full, the attorney fees that the borrower is required to pay shall be commensurate with the work actually completed to that point and the amount charged may not be in excess of the fee that HUD has established as reasonable and customary for claim purposes.

Foreclosures

The update to HUD's Schedule of Attorney Fees, as provided in Attachment 3, will be effective for all cases where the first legal action to initiate foreclosure occurs on or after September 1, 2005.  In the interim, mortgagees shall continue to follow the HUD Schedule of Attorney Fees that was issued with Mortgagee Letter 2001-19, dated August 24, 2001.

Bankruptcy Actions

The update to HUD's Schedule of Attorney Fees will be effective for all bankruptcy clearances undertaken on or after September 1, 2005.  These fees represent maximum allowable amounts for customary and routine legal services performed in each type of bankruptcy filing.  Mortgagee claims for legal fee reimbursement must be reasonably related to the amount of work that the bankruptcy attorney actually performed.

A bankruptcy clearance begins when a petition for release of the bankruptcy stay is submitted to the bankruptcy court.  Bankruptcy clearances begun prior to the effective date shall be reimbursed according to HUD's Schedule of Attorney Fees that was issued with Mortgagee Letter 2001-19, dated August 24, 2001.

Possessory Actions (Evictions)

The update to HUD's Schedule of Attorney Fees will be effective for all possessory actions undertaken on or after September 1, 2005.  Possessory actions begun prior to the effective date shall be reimbursed according to HUD's Schedule of Attorney Fees that was issued with Mortgagee Letter 2001-19, dated August 24, 2001.

Deeds-in-Lieu of Foreclosure

The update to HUD's Schedule of Attorney Fees will be effective for all deeds-in-lieu recorded in HUD's name on or after September 1, 2005.  In the interim, mortgagees shall continue to follow HUD's Schedule of Attorney Fees that was issued with Mortgagee Letter 2001-19, dated August 24, 2001.

Questions regarding this Mortgagee Letter may be directed to HUD's National Servicing Center at (888) 297-8685.

Sincerely,

_____

Brian D. Montgomery
Assistant Secretary for Housing-
   Federal Housing Commissioner

Attachments

| RI | $950 | | Varies[13] | $525 | $400 |
|---|---|---|---|---|---|
| SC | | $850 | Varies[13] | $375 | $400 |
| SD | $600 | $900 | Varies[13] | $325 | $400 |
| TN | $600[1] | | Varies[13] | $375 | $400 |
| TX | $600 | | Varies[13] | $325 | $400 |
| UT | $650 | $600 | Varies[13] | $275 | $400 |
| VA | $650[1,3] | | Varies[13] | $375 | $400 |
| VI | | $1,150 | Varies[13] | $300 | $400 |
| VT | | $1,000 | Varies[13] | $375 | $400 |
| WA | $725 | | Varies[13] | $375 | $400 |
| WI | | $1,150 | Varies[13] | $325 | $400 |
| WV | $600[1,3] | | Varies[13] | $375 | $400 |
| WY | $650 | | Varies[13] | $375 | $400 |

**Footnotes:**

(1)     The fee covers the combined attorney's and notary's fees

(2)     This fee applies to strict foreclosures.  If the foreclosure orders a Foreclosure by Sale, the fee will be $1,550.

(3)     The fee covers both the attorney's fee and the trustee's commission (or statutory fee).

(4)     The fee includes reimbursement of any fee for the attorney's certificate of title.

(5)     The fee increases by $100 if foreclosure is achieved by summary judgment.

(6)     In addition to the allowable foreclosure fee, an auctioneer's fee of up to $250 is allowed for the services of a state licensed auctioneer requested by the lender and approved by the court.

(7)     The fee increases to $1,100 for a nonjudicial foreclosure for a case in which the attorney provides services for "proceedings subsequent" that involve registered land.

(8)     The fee includes the notary's fee.  An additional fee of $250 is allowed for an attorney court appearance for a foreclosure hearing.

(9)     This fee relates to the exercise of the power of sale under a deed of trust.

(10)    This fee applies to foreclosures other than those conducted in New York City  and Long Island.  A fee of $1,850 applies to foreclosures conducted in the five boroughs of New York City (Bronx, Brooklyn/Kings, Manhattan, Queens and Staten Island) and in Long Island (Nassau and Suffolk Counties).

(11)    The fee covers certain additional legal actions necessary to complete the foreclosure, including motions to postpone or relist a sale and motions to reassess damages.

(12)    In addition to the allowable foreclosure fee, $150 is allowed for a notary fee for completed foreclosures.  However, if a deed of judicial sale cannot be executed contemporaneously with the foreclosure sale, $300 is allowed for the notary fee.

(13)    This fee assumes that all required procedural steps have been completed.  The maximum attorney's fee varies based on the chapter under which the bankruptcy action is filed.
- For Chapter 7 bankruptcies, the maximum allowable fee is $650.
- For Chapter 11, 12 and 13 bankruptcies, the maximum allowable fee is $1,000.

## HUD SCHEDULE OF STANDARD ATTORNEY'S FEES – EFFECTIVE 9/1/2005

| STATE | NONJUDICIAL FORECLOSURE | JUDICIAL FORECLOSURE | BANKRUPTCY CLEARANCE | POSSESSORY ACTION | DEED-IN-LIEU |
|---|---|---|---|---|---|
| AK | $1,250 | | Varies[13] | $375 | $400 |
| AL | $600[1] | | Varies[13] | $375 | $400 |
| AR | $650 | | Varies[13] | $275 | $400 |
| AZ | $675 | | Varies[13] | $275 | $400 |
| CA | $650 | | Varies[13] | $525 | $400 |
| CO | $850 | | Varies[13] | $275 | $400 |
| CT | | $1,350[2] | Varies[13] | $375 | $400 |
| DC | $650[1] | | Varies[13] | $375 | $400 |
| DE | | $1,000 | Varies[13] | $325 | $400 |
| FL | | $1,250 | Varies[13] | $375 | $400 |
| GA | $650[1,3] | | Varies[13] | $375 | $400 |
| GU | $1,250 | | Varies[13] | $375 | $400 |
| HI | $1,250 | $1,900 | Varies[13] | $525 | $400 |
| IA | $600 | $900 | Varies[13] | $325 | $400 |
| ID | $650 | | Varies[13] | $375 | $400 |
| IL | | $1,150[5] | Varies[13] | $325 | $400 |
| IN | | $1,050[6] | Varies[13] | $325 | $400 |
| KS | | $900 | Varies[13] | $325 | $400 |
| KY | | $1,150 | Varies[13] | $375 | $400 |
| LA | | $950 | Varies[13] | $325 | $400 |
| MA | $1,300 | | Varies[13] | $625 | $400 |
| MD | $850[1,3] | $850 | Varies[13] | $375 | $400 |
| ME | | $1,300 | Varies[13] | $525 | $400 |
| MI | $700[7] | | Varies[13] | $325 | $400 |
| MN | $700 | | Varies[13] | $325 | $400 |
| MO | $700 | | Varies[13] | $325 | $400 |
| MS | $600[1] | | Varies[13] | $375 | $400 |
| MT | $650 | | Varies[13] | $375 | $400 |
| NC | $600[8] | | Varies[13] | $375 | $400 |
| ND | | $950 | Varies[13] | $325 | $400 |
| NE | $650[9] | $900 | Varies[13] | $325 | $400 |
| NH | $950 | | Varies[13] | $425 | $400 |
| NJ | | $1,350 | Varies[13] | $375 | $400 |
| NM | | $950 | Varies[13] | $275 | $400 |
| NV | $650 | | Varies[13] | $375 | $400 |
| NY | | $1,300[10] | Varies[13] | $725 | $400 |
| OH | | $1,150 | Varies[13] | $325 | $400 |
| OK | | $950[5] | Varies[13] | $275 | $400 |
| OR | $725 | | Varies[13] | $375 | $400 |
| PA | | $1,300[11] | Varies[13] | $425 | $400 |
| PR | | $1,150[12] | Varies[13] | $300 | $400 |

# Exhibit G

*8018587207*



| Multistate | NOTE | FHA Case No. |
|---|---|---|
| | | FH-3513745786-734 |

January 31, 2000
(Date)

2203 Beacon Hill Drive, Sicklerville, NJ   08081
(Property Address)

**1. PARTIES**
   "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
Shelter Mtge. Co., LLC dba Guaranty Northeast Mtge

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
   In return for a loan received from Lender, Borrower promises to pay the principal sum of   One Hundred Thirty
Five Thousand Nine Hundred Sixty and No/100

Dollars (U.S. $ 135,960.00        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of Eight
percent (            8.000 %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
   Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as
this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
   **(A) Time**
      Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
March 1st        , 2000     . Any principal and interest remaining on the first day of February
2030      , will be due on that date, which is called the "Maturity Date."
   **(B) Place**
      Payment shall be made at P.O. Box 245014, Milwaukee, WI  53224
                                                    or at such place as Lender may designate in writing
by notice to Borrower.
   **(C) Amount**
      Each monthly payment of principal and interest will be in the amount of U.S. $ 997.63                . This
amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest
and other items in the order described in the Security Instrument.
   **(D) Allonge to this Note for payment adjustments**
      If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this
Note. [Check applicable box]

   ☐ Graduated Payment Allonge        ☐ Growing Equity Allonge        ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**
   Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four                             percent ( 4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
David A. Rivera                          -Borrower

_____ (Seal)
Marianne M. Rivera                       -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

Without Recourse,
Pay to the Order Of
Guaranty Bank, S.S.B.

Shelter Mtge  Co., L.L.C. dba Guaranty Northeast Mtge.
By Shelter Mortgage Corporation,
Its Managing Member

Marie E. Czerwinski
Assistant Vice President

PAY TO THE ORDER OF

without recourse.

GUARANTY BANK SSB

Marie E. Czerwinski
Assistant Vice President

Pay to the order of
Without Recourse
Fleet Mortgage Corp.

By _____
Document Executing Officer



* 8 0 1 8 5 8 7 2 0 7 E B 0 *

| LOAN #1: | 8018587207 | LOAN #2: | 401025459 | SEQ#: | | NEW JERSEY |
| MERS ID#: | | | | | | |

## *ALLONGE*

This Allonge is attached to and made a part of that certain Note or Bond, or Lost Note Affidavit in lieu of that certain Note or Bond,

Dated:              1/31/00

Made By:         **DAVID A. RIVERA AND MARIANNE M. RIVERA**, Mortgagors/Trustors

To:                  **SHELTER MTGE. CO., LLC DBA GUARANTY NORTHEAST MTGE.**, Mortgagee/Beneficiary

In the Amount of :   $135,960.00

Property Address :   **2203 BEACON HILL DRIVE, SICKLERVILLE, NJ 08081**

Pay to the order of

## Countrywide Home Loans, Inc.

without recourse.

**WASHINGTON MUTUAL BANK (fka Washington Mutual Bank, FA),   successor to Washington Mutual Home Loans, Inc., successor by merger to Fleet Mortgage Corp.**

BY: _____
                        C. Fetner
            Its: Authorized Representative

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY: *Michele Sjolander*

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

# Exhibit H

EXHIBIT A

Return to:
GUARANTY BANK, S.S.B.
P.O. BOX 245016
Milwaukee, WI 53224-9516
Attn: Doc Control Dept.

CERTIFIED
True Copy

———————— [Space Above This Line For Recording Data] ————————

State of New Jersey
This instrument was prepared by:
Nancy L. Paillard

## MORTGAGE

FHA Case No.
FH-351 3745786-734

THIS MORTGAGE ("Security Instrument") is given on    January 31, 2000
The Mortgagor is David A. Rivera and Marianne M. Rivera

("Borrower"). This Security Instrument is given to    Shelter Mtge. Co., LLC dba Guaranty
Northeast Mtge

which is organized and existing under the laws of    Delaware                              , and
whose principal office and mailing address is 527 Plymouth Road, Ste. 405, Plymouth Meeting,
PA  19462                              ("Lender"). Borrower owes Lender the principal sum of
One Hundred Thirty Five Thousand Nine Hundred Sixty and No/100
                              Dollars (U.S. $ 135,960.00              ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which
provides for monthly payments, with the full debt, if not paid earlier, due and payable on February 1st ,
2030                              . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

**EXHIBIT A**        Legal Description Continued

ᴱᵡᴴᴵᴰᴵᵀ ₐ

**Borrowers:**        David A. Rivera
                      Marianne M. Rivera


**Property Address:** 2203 Beacon Hill Drive
                      Sicklerville, NJ  08081


See attached legal description

of Borrower's covenants and agreements under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, Section 1 et seq., and upon such modification, shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security Instrument is $135,960.00                                                      . For these purposes, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in

Camden County, New Jersey:

See attached legal description

Tax Key Number: Block 15812, Lot 1C2203
which has the address of  2203 Beacon Hill Drive, Sicklerville,                [Street, City],
New Jersey  08081                              [Zip Code]  ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended

DOC #:043002  APPL #:0006909170 LOAN #:0006909170
-4R(NJ) (9608)      UM31 9608.02                Page 2 of 8                      Initials:

from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property.

Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.



**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| [X] Condominium Rider | [ ] Growing Equity Rider | [ ] Other [specify] |
| [ ] Planned Unit Development Rider | [ ] Graduated Payment Rider | |

Initials 

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____(Seal)
                                                  David A. Rivera                    -Borrower

                                                  _____(Seal)
_____          Marianne M. Rivera                 -Borrower

_____(Seal)           _____(Seal)
                        -Borrower                                                     -Borrower

_____(Seal)           _____(Seal)
                        -Borrower                                                     -Borrower

_____(Seal)           _____(Seal)
                        -Borrower                                                     -Borrower

STATE OF NEW JERSEY,                                    Burlington  County ss:

   On this  31st   day of  January      ,   2000     , before me, the subscriber, personally appeared
David A. Rivera and Marianne M. Rivera

                                                                              who, I am satisfied,
are    the person(s) named in and who executed the within instrument, and thereupon acknowledged that    they
signed, sealed and delivered the same as    their      act and deed, for the purposes therein expressed.

                                                  _____
                                                  Notary Public

                                                      CAROLINE M. MILLER
                                                    Notary Public of New Jersey
                                                  My Commission Expires Dec. 29, 2002
                                                           ID # 2106598

DOC #:043008  APPL #:0006909170   LOAN #:0006909170
    -4R(NJ) (9608)     UM31 9608.02                   Page 8 of 8

# CONDOMINIUM RIDER

FHA Case No.

FH-3513745786-734

THIS CONDOMINIUM RIDER is made this 31st                day of January                  ,
2000        , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note ("Note") to Shelter Mtge. Co., LLC dba Guaranty
Northeast Mtge

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

2203 Beacon Hill Drive, Sicklerville, New Jersey  08081

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:    Stonebridge Run Condominium

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project
("Owners Association") holds title to property for the benefit or use of its members or shareholders, the
Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of
Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a
"master" or "blanket" policy insuring all property subject to the condominium documents,
including all improvements now existing or hereafter erected on the Property, and such policy is
satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against
the hazards Lender requires, including fire and other hazards included within the term "extended
coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the
provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of
one-twelfth of the yearly premium installments for hazard insurance on the Property,

FHA Multistate Condominium Rider - 10/95

-586U (9705)    UM31 9705.02

Page 1 of 2           Initials:_____

VMP MORTGAGE FORMS - (800)521-7291

DOC #:300091
APPL #:0006909170
LOAN #:0006909170
INV #:





and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

C.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this Paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)
David A. Rivera                -Borrower

_____ (Seal)
Marianne M. Rivera             -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

-586U (9705)    UM31 9705.02           Page 2 of 2

DOC #:300092   APPL #:0006909170   LOAN #:0006909170