```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


DAVID and MARIANNE RIVERA,       :
individually and on behalf of    :   HONORABLE JOSEPH E. IRENAS
all those similarly situated,    :   CIVIL ACTION NO. 09-021 (JEI/JS)
                                 :
              Plaintiffs,        :            OPINION
                                 :
     v.                          :
                                 :
COUNTRYWIDE HOME LOANS,          :
                                 :
              Defendant.         :
```

**APPEARANCES:**

LAW OFFICE OF LEWIS G. ADLER
By:  Roger C. Mattson, Esq.
     Lewis G. Adler, Esq.
26 Newton Avenue
Woodbury, New Jersey 08096
     Counsel for Plaintiffs

BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
By:  Martin C. Bryce, Esq.
     Mariah E. Murphy, Esq.
Plaza 1000, Main Street
Suite 500
Voorhees, New Jersey 08043
     Counsel for Defendant


**IRENAS**, Senior District Judge:

In a prior opinion and order, this Court dismissed without prejudice Plaintiffs' "hopelessly muddled, misstated, and mangled Amended Complaint," with leave to file a Motion to Amend the Complaint.  *Rivera v. Washington Mutual Bank, et al.*, 637 F. Supp.2d 256, 258 (D.N.J. 2009).  Plaintiffs have now filed their Motion to Amend, which Defendant Countrywide Home Loans

("Countrywide") opposes.[1]  Familiarity with this Court's prior opinion is presumed.  For the reasons set forth herein, the Motion will be denied and the case will be dismissed with prejudice.[2]

## I.

Plaintiffs' proposed Second Amended Complaint is still not a model of clarity.[3]  However, one ambiguity has been remedied.  As explained in the previous opinion, the Amended Complaint did not identify what payments Plaintiffs alleged were illegal:

> While the Amended Complaint seems to suggest that Plaintiffs seek repayment of "sums" they paid on Washington Mutual's proof of claim filed in the second bankruptcy case, such an allegation cannot possibly be true. The proof of claim was clearly limited to Plaintiffs' pre-petition arrears. Payment of the amount claimed by Washington Mutual in the proof of claim would not result in the mortgage and lis pendens being discharged because Plaintiffs were behind in their post-petition mortgage payments as well.
>
> The "sums" to which the Amended Complaint refers more likely means a payoff amount that Plaintiffs paid Countrywide to refinance their mortgage. However, the Court has no way of determining what any payoff statement said, how much Plaintiffs paid, or whether

---

[1]  The proposed Second Amended Complaint has dropped all other defendants named in the prior complaint.

[2]  This Opinion and accompanying Order are subject to the Court's prior jurisdictional holdings.  *See Rivera*, 637 F. Supp.2d at 262-64, 265 n.17.

[3]  Fed. R. Civ. P. 8(a)(2) directs that a pleading "must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Even on his second attempt, Plaintiffs' counsel has fallen far short of this mark.

any of the fees generated over the years in the bankruptcy process were included in a payoff amount.

*Rivera,* 637 F. Supp.2d at 265. The proposed Second Amended Complaint alleges, in relevant part,

> 50. An order was entered [by the bankruptcy court on] July 17, 2007 allowing Plaintiffs to obtain credit to refinance their mortgage.
>
> 51. The Defendant added the accumulated foreclosure fees of $1550.00, foreclosure costs of $1898.44, 'Bankruptcy fees' of $1025.00 and 'Bankruptcy costs' of $225.00 to the Plaintiffs' account for payment as they were accrued.
>
> 52. The Defendant demanded payment of the accumulated foreclosure fees of $1550.00, foreclosure costs of $1898.44, 'Bankruptcy fees' of $1025.00 and 'Bankruptcy costs' of $225.00 in its payoff demand to Plaintiffs on or about July 2007.[4]
>
> 53. The Plaintiffs paid the sums demanded by Countrywide in full on or about July 2007 upon the refinance of their mortgage with a new lender inclusive of all the accumulated foreclosure fees of $1550.00, foreclosure costs of $1898.44, 'Bankruptcy fees' of $1025.00 and 'Bankruptcy costs' of $225.00.
>
> 54. The total sums paid inclusive of foreclosure fees, foreclosure costs, bankruptcy fees and bankruptcy costs by the Plaintiff [sic] were $4698.44 which was $2517.02 in excess of the amounts allowed in the foreclosure judgment.
>
> 55. The Defendant then dismissed the foreclosure action with prejudice and discharged the mortgage and Lis Pendens on or about August 2, 2007.

As will be discussed *infra*, Plaintiffs' proposed Second

---

[4] While the proposed Second Amended Complaint has various exhibits attached to it, the "payoff demand" is not among them.

Amended Complaint is still quite mangled with respect to the alleged wrongful conduct and legal claims it purports to assert. However, this core allegation is now clear: Plaintiffs assert that they overpaid Countrywide by $2517.02.

## II.

Fed. R. Civ. P. 15(a)(2) states that "[t]he court should freely give leave [to amend a pleading] when justice so requires."  "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be freely given."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Relevant to the instant Motion, "amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  *Alvin v. Suzuki*, 227 F.3d 107, 122 (3d Cir. 2000).  Thus, in determining futility, the Court must "accept all factual allegations as true, construe the [proposed amended] complaint in the light most favorable to the plaintiff[s], and determine, whether under any reasonable reading of the [proposed amended] complaint, the plaintiff[s] may be entitled to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).   The

4

proposed amended complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible.  *Id.* at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

### III.

While Plaintiffs' proposed Second Amended Complaint spans 31 pages, the entire complaint is based on the simple disparity between the fees and costs listed in the foreclosure judgment and the figures included in Countrywide's payoff statement. According to Plaintiffs, the attorneys fees and costs in Countrywide's payoff statement should have been identical to the fees and costs in the foreclosure judgment, therefore Plaintiffs conclude, there must have been an overcharge.  For the reasons that follow, such factual allegations do not state a claim upon which relief may be granted.

The Court begins, as it did before, with the alleged wrongful conduct.  Plaintiffs allege that Countrywide "overcharged" them in the following manner:

> a) they charged attorneys fees and costs in excess of those actually incurred; The [sic] proof of claim dated November 8, 2002 provided that the pre-petition foreclosure attorneys fees was $1300.00.  The final judgment of foreclosure provided for reimbursement of

5

attorneys fees of $1,597.42. A fee of $297.42 over the amount actually incurred.

b) costs of suit charged to Plaintiffs were excessive in violation of statute and court rule; as the court noted in its decision of July 10, 2009, the final judgment provided for costs of suit of $584.00 in accordance with the New Jersey Statutes and Rules. The proof of claim dated November 8, 2002 sought pre-petition foreclosure costs of $1487.00. The claim was $903 in excess of the amount allowed under the judgment and rules. This problem becomes even greater as reflected in the proof of claim dated May 27, 2004 as the demand for pre-petition foreclosure costs increased to $1,898.44.

c) FHA regulations limit attorney fees see 24 CFR 203.552(B) [sic] to a maximum of $1300 in New Jersey for actions commenced after October 1, 2001 and before September 1, 2005. The final judgment of foreclosure provided for reimbursement of attorneys fees of $1,597.42. A fee of $297.42 over the amount actually incurred. This problem becomes even greater as reflected in the proof of claim dated May 27, 2004 as the demand for pre-petition foreclosure fees increased to $1550.

Proposed Second Amend. Compl. ¶ 66.

Subparagraphs (a) and (c) fail to allege facts that could support a conclusion that Countrywide overcharged Plaintiffs. Both subparagraphs rely on the disparity between the foreclosure judgment and the proofs of claim[5] to support an inference that there must have been an overcharge. But such an inference is not

---

[5] As noted already, Plaintiffs' claim is that Countrywide's payoff statement included excess fees and costs. Plaintiffs explain in their briefs that "the proofs of claim are simply evidence of the addition of the illegal post judgment [sic] charges to the Plaintiffs' account which was paid in full." Pls' Reply Br. at 4. Plaintiffs apparently believe that the attorneys fees and costs sought in the proofs of claim were later incorporated into the payoff statement.

logically possible.  This Court has already held that the attorneys fees included in the foreclosure judgment were exactly correct.  *See Rivera*, 637 F. Supp.2d at 266.  Because the higher figure-- the $1,597.42 in attorneys fees included in the foreclosure judgment-- is correct, there can be no inference of an overcharge.[6]  Indeed, on the facts alleged, the only permissible inference would be that Countrywide sought in its proofs of claim *less* than that to which it was legally entitled under the foreclosure judgment.  Thus, the alleged wrongful conduct in subparagraphs (a) and (c) simply cannot support an inference of an overcharge.

While subparagraph (b) does not suffer from the same infirmity as (a) and (c), it nonetheless fails to support a reasonable inference that Countrywide overcharged Plaintiffs.  As already explained, Plaintiffs would like this Court to infer wrongdoing by Countrywide based on the basic observation that the payoff statement's fees and costs exceed those of the foreclosure judgment.  But the foreclosure judgment and the payoff statement

---

[6] Stated differently, Plaintiffs' allegations only support an inference of an overcharge if the figure in the foreclosure judgment is incorrect.  While the Court need not reach the issue, it is worth noting that exercising jurisdiction over such claim would likely run afoul of the *Rooker-Feldman* doctrine.  *See In re Madera,* -- F.3d --, 2009 WL 3764025 at *2 (3d Cir. Nov. 12, 2009) ("a claim is barred by *Rooker-Feldman* . . . if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong.") (internal citation and quotation omitted).

were separated in time by more than five years.[7]  Several factually and legally significant events took place in the interim which preclude any reasonable conclusion that the figures in the foreclosure judgment and the payoff statement should be identical.

Plaintiffs filed their first chapter 13 case approximately a month after the foreclosure judgment was entered.  *Rivera,* 637 F. Supp.2d at 259.  After the petition date but before confirmation of Plaintiffs' chapter 13 plan, Plaintiffs made at least two mortgage payments of $1,402.82.  *Id.*  Later, the bankruptcy court confirmed the plan, which allowed Plaintiffs to cure their pre-petition arrears on the mortgage by making 56 monthly payments of $953, while still paying their post-petition mortgage payments outside the plan.  *Id.*  However, Plaintiffs were not able to keep up with their either their current mortgage payments or their arrears payments, and after some motion practice,[8] the bankruptcy court entered an Ex-Parte Order Dismissing the Case.  *Rivera*, 637 F. Supp.2d at 260.

Shortly thereafter, Plaintiffs filed a second chapter 13 petition. *Rivera*, 637 F. Supp.2d at 260.  Then they made eight post-petition payments on their mortgage before their chapter 13

---

[7] The date of the foreclosure judgment is June 4, 2002. Plaintiffs allege that they received the payoff statement in July, 2007.

[8] *See Rivera*, 637 F. Supp.2d at 259-60.

8

plan was confirmed. *Id.* The second chapter 13 plan was like the first; providing for pre-petition arrears payments to be made through the plan (53 monthly payments of $1000), while post-petition payments were to be made outside the plan. *Id.* Plaintiffs made some payments but then fell behind again. *Id.* Extensive motion practice ensued over the following six months. *See id.* at 260-61.

Then Plaintiffs submitted a modified chapter 13 plan, which the bankruptcy court confirmed. *Rivera*, 637 F. Supp.2d at 261. The same pattern of missed payments and motion practice resumed, *see id.*, until Plaintiffs obtained financing and paid off their mortgage with Countrywide in July, 2007.

Based on these facts, no reasonable factfinder could expect the fees and costs in the payoff statement to equal the fees and costs in the foreclosure judgment. Plaintiffs are generally correct that if they had successfully made their payments under their chapter 13 plan, Countrywide could only have recovered the amounts due on the foreclosure judgment.[9] But over the course of five years in bankruptcy, Plaintiffs were unable to fulfill their obligations under their plans, despite numerous opportunities to do so.

The mere discrepancy between the foreclosure judgment and Countrywide's payoff statement does not support a reasonable

---

[9] *See In re Lipscomb*, 2006 Bankr. LEXIS 4087 at *13-16 (Bankr. D.N.J. May 17, 2006).

9

inference that Countrywide overcharged Plaintiffs.  All five of the claims in the proposed Second Amended Complaint[10] are based on this discrepancy, therefore all five claims lack facial plausibility.

**IV**.

For the reasons set forth above, amending the Amended Complaint would be futile because all of the proposed claims fail to state a claim upon which relief may be granted.  Plaintiffs' Motion to Amend will be denied, and the case will be dismissed with prejudice.  The Court will issue an appropriate order.

December 3, 2009                             s/ Joseph E. Irenas
                                             JOSEPH E. IRENAS, S.U.S.D.J.

---

[10]  The claims are breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, violation of the New Jersey Consumer Fraud Act, and violation of the New Jersey Truth in Consumer Contract, Warranty, and Notice Act.